IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, ET AL. | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | Civil Action No. 3:20-cv-00223 |
| | § | |
| THE STATE OF TEXAS | § | |
| *Defendant* | § | |

## <u>DEFENDANT'S MOTION TO DISMISS<br>PLAINTIFFS' AMENDED MASTER COMPLAINT</u>

TO THE HONORABLE JUDGE JEFFREY V. BROWN:

This is a lawsuit brought against the State of Texas by over 100 plaintiffs complaining that the State of Texas' design, construction, maintenance and operation of IH-10 caused flooding and damaged Plaintiffs' property without just compensation during Tropical Storms Harvey and Imelda. *See Doc. 43*.

As explained below, while tragic that Plaintiffs endured flooding from historic rain events, this Court should dismiss Counts 1 (Texas state law inverse condemnation claim) and 2 (federal inverse condemnation claim) for four main reasons.[1] First, Plaintiffs have failed to state a federal constitutional claim, and cannot do so against the State. Second, Plaintiffs are time-barred from bringing any claim based on Tropical Storm Harvey. Third, the State still retains sovereign immunity from liability for any of Plaintiffs' federal claims. Fourth, Plaintiffs have failed to state valid federal and state inverse condemnation claims.

---

[1] While Plaintiffs' Master Amended Complaint alleges a class action and 3 other causes of actions against the State (Count 3 – Procedural Due Process violation; Count 4 – Substantive Due Process violation; and Count 5 – Declaratory Judgment), this motion only seeks to dismiss Plaintiffs' first two counts, and thus will not cover the class action allegation or the other counts presented in Plaintiffs' Amended Master Complaint.

## I. INTRODUCTION

Plaintiffs are the owners of real and personal property that lies north of IH-10 (also known as East Freeway) in Chambers, Jefferson and Liberty counties (referred to as the "Operative Geographic Area"). *See Doc. 43* at ¶¶35(a), 36. A photo of the Operative Geographic Area is provided below:



*See Doc. 43* at *14 (providing aerial of the Operative Geographic Area). Plaintiffs acknowledge that prior to August 2017, their properties suffered flooding from heavy rainfall events. *See Doc. 43* at ¶53.

The Operative Geographic Area, along with other areas of Texas, was greatly impacted with heavy rainfall and flooding during two historic rain events: Tropical Storms Harvey (August 2017) and Imelda (September 2019). *See Doc. 43* at ¶¶22, 24. Both storms generated enough rain to put the northern IH-10 lanes under water and prevent the use of those lanes. *See Doc. 43* at ¶¶22, 24. Plaintiffs claim that the flooding of their properties was due to the design, maintenance, construction and operation of IH-10, including the concrete barrier that divides the east- and west-bound traffic. *See Doc. 43* at ¶¶11, 19. Specifically, they claim that the concrete barrier acted as a

dam, preventing flood waters from moving onto the southern lanes of IH-10. *See Doc. 43* at ¶¶16, 17. Thus, they allege, the flood waters exited IH-10 and impacted their real and personal property. *See Doc. 43* at ¶¶22–24. Plaintiffs also allege that they attempted to have the Texas Department of Transportation remove the concrete barrier prior to Imelda, which did not occur. *See Doc. 43* at ¶¶54, 56.

Initially, 47 Plaintiffs filed suit against the State on May 26, 2020, in Chambers County, Texas. *See Doc 3-2*. Those Plaintiffs alleged inverse condemnation claims under both the Fifth Amendment to the United States Constitution and art. I, sec. XVII of the Texas Constitution. *See Doc. 3-2* at ¶¶2, 34–70. The State filed an answer in state court on June 22, 2020. *See Doc. 3-5*. On June 29, 2020, the State removed the case to federal court based on federal question jurisdiction under 28 U.S.C. § 1441(a) and supplemental jurisdiction under 28 U.S.C. § 1367. *See Doc. 1*.

Pursuant to the Court's instruction Rule 6, the State sent a letter to Plaintiffs' counsel stating its intent to file a Motion to Dismiss under Rule 12(c) on July 20, 2020. *See Ex. A*. The parties initially conferred on July 21 about the State's letter. The parties again conferred via telephone on July 27, 2020, about the State's letter and exchanged emails regarding case law supporting their positions on July 27 and July 28, 2020. Plaintiffs had until August 3, 2020, to file an amended complaint but have chosen against doing so.

On August 5, 2020, the State filed its Motion to Dismiss the initial 47 Plaintiffs' claims under Rule 12(c). *See Doc. 6*. On August 26, 2020, the initial 47 Plaintiffs filed their response to the State's Motion. *See Doc. 12*. On September 2, 2020, the State filed its reply. *See Doc. 15*. On February 22, 2021, Magistrate Judge Edison published a memorandum and recommendation denying the State's Motion. *See Doc. 26*. On March 8, 2021, the State filed objections to Magistrate Judge Edison's recommendation. *See Doc. 28*. On March 26, 2021, the initial 47 Plaintiffs filed

their response to the State's objections. *See Doc. 34.* On March 30, 2021, this Court signed an order accepting Magistrate Judge Edison's recommendation. *See Doc. 35.*

While awaiting a ruling on the State's Motion to Dismiss in this case, 3 other lawsuits were filed, all alleging the same factual allegations (with the exception of the location of property in two cases) and the same Counts 1 and 2 as the 47 Plaintiffs. *See*; The first (*Sonnier*) was filed in Chambers County on November 16, 2020. *See Kevin Sonnier, et al. v. State*, No. 3:20-cv-00379 (S.D. Tex.) at *Doc. 1-2.* The State removed this case to the Southern District of Texas, Galveston Division on December 16, 2020. *See Sonnier* at *Doc. 1.* The second (*Boudreaux*) was filed in Jefferson County on March 1, 2021. *See Boudreaux, et. al v. State*, No. 4:21-cv-01521 (E.D. Tex.) at *Doc. 2.* The State removed this case to the Eastern District of Texas, Beaumont Division on April 7, 2021. *See Boudreaux* at *Doc. 1.* The final case (*Southeast*) was filed in Liberty County on March 4, 2021. *See Southeast Texas Olive, LLC, et al. v. State*, No. 3:21-cv-00104 (E.D. Tex.) at *Doc. 2.* The State removed this case to the Eastern District of Texas, Beaumont Division on April 7, 2021. *See Southeast* at *Doc. 1.*

Subsequent to the Court's ruling on the State's Motion to Dismiss in this case, the plaintiffs in *Boudreaux* and *Southeast* filed unopposed motions to transfer venue from the Eastern District of Texas, Beaumont Division, to the Southern District of Texas, Galveston Division. *See Boudreaux* at *Doc. 7; Southeast* at *Doc. 7.* Orders granting the transfer occurred on April 26, 2021, transferring both cases to the Southern District of Texas.[2] *See Boudreaux* at *Doc. 8; Southeast* at *Doc. 8.*

---

[2] Somehow, *Boudreaux* ended up being transferred to the Southern District of Texas, Houston Division. *See Boudreaux at Doc. 9.* The Hon. Judge Hanks assigned Magistrate Judge Edison to the case, allowing Magistrate Judge Edison to consolidate that along with the other cases. *See Boudreaux at Doc. 10.*

On May 14, 2021, the State filed an agreed motion to consolidate all four cases into this case. *See Doc. 39*. The State also filed that same day a Motion to Modify the Court's order on the State's Motion to Dismiss so that it would include language permitting a permissive interlocutory appeal. *See Doc. 40*.[3] On May 17, 2021, Magistrate Judge Edison signed an order consolidating all 4 lawsuits into this case. *See Doc. 41*.

Plaintiffs filed their Original Master Complaint on May 28, 2021. *See Doc. 42.* That same day, Plaintiffs filed their Amended Master Complaint. *See Doc. 43*. The parties have agreed to refile its briefing on whether Counts 1 and 2 (the state and federal inverse condemnation claims) should be dismissed so that any ruling is made applicable to Plaintiffs' Amended Master Complaint, as these were the counts in front of the Court during the initial Motion to Dismiss. Therefore, the State respectfully requests that this Court dismiss Counts 1 and 2 of Plaintiffs' claims in their entirety and with prejudice under Federal Rule of Civil Procedure 12(c).

## II.     STANDARDS OF REVIEW

### A.     Fed. R. Civ. P. 12(c).

Any party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

"[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 n. 8 (5th Cir.2000)). In ruling,

---

[3] Magistrate Judge Edison has yet to rule on the State's Motion to Modify, because the parties agreed to enter into stipulations regarding the State's Motion to Dismiss Counts 1 and 2 (or file substantively the same motion) subsequent to the filing of a master complaint so that the ruling could apply to the master complaint. The State's Motion to Modify will be moot if the language requested appears in the ruling on this motion.

the district court is confined to the pleadings and must accept all allegations contained therein as true. *Hughes*, 278 F.3d at 420. A plaintiff's obligation to demonstrate his entitlement to relief requires more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the plaintiff's complaint must plead sufficient factual allegations to raise a right to relief that is more than speculative. *Id.* at 555.

### III.     ARGUMENT AND AUTHORITIES

**A.     Plaintiffs' federal claims should be dismissed.**

    **1.     As an initial matter, Plaintiffs' federal claims cannot be brought directly under the United States Constitution.**

As an initial matter, Plaintiffs couch their federal inverse condemnation claims as arising directly under the Fifth Amendment to the U.S. Constitution. This articulation of their causes of action, however, fails to state a claim against the State because it must be brought under 42 U.S.C. § 1983. And, because Plaintiffs were notified of this deficiency through the court's conference procedures and still refused to amend their Petition, the Court should dismiss the claims for failing to state a claim.

The Fifth Amendment to the Constitution is only applicable to the United States and federal actors. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).[4] The Fifth Amendment is made applicable to the States via the Fourteenth Amendment. *Knick v. Township of Scott, Penn.*, 139 S.Ct. 2162, 2170 (U.S. 2019); *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 175 n. 1 (1985). A claim for a constitutional violation against the States, however, generally cannot arise directly under the Constitution. *See Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) (per curiam). Instead, 42 U.S.C.

---

[4] Notably, Plaintiffs have failed to explain in their pleading how the State is a federal actor, which in and of itself is a cause to dismiss their federal claims. *See Jones*, 203 F.3d at 880.

§ 1983 is the only vehicle by which a constitutional violation can be alleged. *See, e.g., Knick*, 139 S.Ct. at 2170; *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) ("Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States."); *see also Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992), ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

Indeed, Fifth Amendment takings claims (both against states and local governments) are brought pursuant to § 1983. *See, e.g. Knick*, 139 S.Ct. at 2170; *Williamson Cnty.*, 473 U.S. at 182; *Redburn v. City of Victoria,* 898 F.3d 486, 491 (5th Cir. 2018); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 2018 WL 3977879, at *2 (S.D. Miss. 2018) (*aff'd* 937 F.3d 454, 456–57 (5th Cir. 2019, *cert. denied* Mar. 30, 2020)); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 515 (6th Cir. 2004); *Azul-Pacifico, Inc.*, 973 F.2d at 705.

Here, Plaintiffs fail to invoke § 1983 either as a jurisdictional ground or as a cause of action. *See Doc. 43.* Furthermore, because Plaintiffs are represented by counsel, their pleading is not entitled to a liberal construction ordinarily afforded to a *pro se* litigant. *See Beasley v. McCotter,* 798 F.2d 116, 118 (5th Cir. 1986). And because Plaintiffs have refused to amend their claims after the Court's required pre-motion conference, their federal claims should be dismissed without getting into a § 1983 analysis.

## 2. Plaintiffs' federal claims should be dismissed because the State is not a person under § 1983.

Even if the Plaintiffs had alleged their federal inverse condemnation claims under § 1983, those claims would be unable to move forward. Section 1983 states that "[e]very person" who, under color of law, subjects a citizen to deprivation of his federal rights shall be liable to that

citizen. 42 U.S.C. § 1983. However, the State is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, Plaintiffs' federal claims against the State fail to state a claim upon which relief can be granted and should be dismissed.

### 3. Any federal claim based on Hurricane Harvey is barred by the statute of limitations.

Section 1983 does not include or state a time period to calculate statute of limitations. *See* 42 U.S.C. § 1983. Therefore, federal courts use the state's statute of limitations for personal injury claims—which in Texas is two years—when determining whether a § 1983 claim is filed within the statute's limitations period. *Redburn*, 898 F.3d at 496. Federal courts, though, do use the federal standard to determine the accrual of a claim – the time by which the claim starts to run for limitations purposes. *See id*. Under this accrual standard, a plaintiff's claim accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know he has been injured. *See id*. (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995)).

In this case, Plaintiffs allege that Tropical Storm Harvey impacted the Geographical Operation Area in August 2017. *See Doc 43* at ¶¶22, 35(b). Plaintiffs were aware that they suffered an injury via flooding during that time. *See Doc. 43* at ¶¶22–23, 28–29, 31, 33, 53. Therefore, the latest date by which the Plaintiffs could have timely filed their claim for flooding based on Hurricane Harvey was August 2019. The first of Plaintiffs' petition was filed about 9 months later, on May 26, 2020. *See Doc. 3-2*. Consequently, any federal claim based on Tropical Storm Harvey is barred by statute of limitations and should be dismissed.

### 4. Plaintiffs' federal claims should be dismissed because the State retains immunity from liability against the federal claims.

Plaintiffs' federal claims are subject to dismissal because the State enjoys sovereign immunity against such claims. In Texas, sovereign immunity takes two forms: immunity from suit

and liability. *See Meyers v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005); *Tex. Parks & Wildlife Dep't v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A state can waive its immunity from suit by removing to federal court. *Meyers*, 410 F.3d at 255. While the State waived immunity from suit when it removed Plaintiffs' claims to federal court, it did not waive immunity from liability and is entitled to present it as a defense. *See id*. The Fifth Circuit recently held that sovereign immunity was retained by a state agency for a claim brought under the Takings Clause, even after the Supreme Court's ruling in *Knick*. *See Bay Point*, 937 F.3d at 456–57.

Plaintiffs have not described in their complaint how the State's immunity from liability has been waived for their federal claims. *See Doc. 43*. The State enjoys sovereign immunity from § 1983 claims. *See, e.g. Quern v. Jordan*, 440 U.S. 332, 342 (1979) ("we simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States.") Therefore, Plaintiffs' federal claims are barred by the State's sovereign immunity and must be dismissed.

**5. Plaintiffs have failed to plead a valid federal inverse condemnation claim.**

Regardless of whether Plaintiffs should have brought their claim under § 1983 (or bring them directly under the U.S. Constitution[5]), Plaintiffs still would fail to state a claim because the Plaintiffs cannot establish that they have a compensable protected property interest.

To bring a federal inverse condemnation claim, a plaintiff must allege that they have a compensable protected property interest. *In re Downstream Addicks*, 146 Fed.Cl. 566, 576–77 (Fed. Cl. 2020). State law defines property interests, and thus a court must look to state law to determine whether a plaintiff possesses property rights purported to have been taken. *Id*. at 577.

---

[5] The State anticipates the Plaintiffs to make the argument that they could bring their federal claims directly under the Fifth Amendment to the U.S. Constitution. However, as mentioned *supra*, Plaintiffs cannot show that the State is a federal actor. *See Jones*, 203 F.3d at 880.

Federal law, however, could also identify property rights protected by the U.S. Constitution, and so a court should examine whether federal common law provides a property right in the event state law does not. *Id*. at 581.

Here, Plaintiffs fail to state a claim because they have not alleged a specific protected property interest in their petition that is compensable in a federal inverse condemnation case, instead only stating that "[e]ach Plaintiff has protected property rights." *Doc. 43* at ¶81.

Moreover, Plaintiffs cannot allege a protected property interest in uncontrollable flooding resulting from an Act of God, either under state or federal law. *See In re Downstream Addicks*, 146 Fed.Cl. at 577, 581. First, the State's efforts to control and mitigate against flooding (such as the design, construction, maintenance and operation of IH-10 and concrete barriers) are legitimate uses of its police power, which is an exemption to takings liability and damages in Texas. *Id*. at 578. Second, Texas and federal courts have rejected the theory that damages resulting from Acts of God, such as Tropical Storms Harvey and Imelda, would rise to the level of an inverse condemnation claim. *Id*. at 578–79 (citing to various Texas cases and rejecting the inverse condemnation claim brought by plaintiffs). Third, a plaintiff does not have the right to be free from flood waters outside the State's control. *Id*. at 583; *U.S. v. Sponenbarger*, 308 U.S. 246, 265, 266 (1939); *Teegarden v. U.S.*, 42 Fed.Cl. 252, 257 (Fed. Cl. 1998). Plaintiffs can hardly argue that the immense amount of rainfall from Harvey and Imelda that caused the flooding was within the State's control. Therefore, because Plaintiffs have failed to state a compensable and protected property interest, Plaintiffs' federal inverse claims should be dismissed.

**B.    Plaintiffs' state law inverse condemnation claims should be dismissed for failure to state a claim that waives the State's sovereign immunity.**

In addition to federal inverse condemnation claims, Plaintiffs also allege state law inverse condemnation claims. *See Doc. 43* at ¶¶44–76. Sovereign immunity shields a government entity,

such as the State of Texas, from suits for money damages on claims arising out of the exercises of governmental functions, unless the immunity has been expressly waived. *See Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, LLC*, 442 S.W.3d 297, 300 (Tex. 2014). The burden is on the party suing the government to establish that immunity has been waived. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Here, to establish a waiver of immunity, Defendant must state a valid constitutional taking claim against the State by pleading and proving that the State intentionally performed certain acts that resulted in a taking of their property for public use. *See Dahl v. State*, 92 S.W.3d 856, 862 (Tex. App.—Houston [14th Dist.] 2002, no pet.)

The focus in most Texas inverse condemnation jurisprudence is on the state actor's *mens rea*. *See Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799–800 (Tex. 2016) To bring an inverse condemnation claim under the Texas Constitution, a plaintiff must allege that the State had subjective knowledge that its actions would cause specific harm to a specific piece of property or knows that the harm is substantially certain to result. *Id*. at 800. Without this, an inverse condemnation claim in Texas fails. *See, e.g., id*.; *City of Keller v. Wilson*, 168 S.W.3d 802, 829–30 (Tex. 2005) (finding no taking where plaintiff failed to show that the City knew its improvements would flood despite engineering reports); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (finding no taking where the City did not know the plaintiffs' land was damaged).

In this case, Plaintiffs have failed to plead this element. First, Plaintiffs have not alleged that the State *knew* its actions with respect to IH-10 would harm Plaintiffs' specific properties via flooding or that there was *any intent to harm* Plaintiffs' specific properties via flooding. *See Doc. 43*. Second, and importantly, Plaintiffs acknowledge that they cannot meet this element. Plaintiffs argue instead "for the extension, modification or reversal of existing Texas law" by requesting the Court to use the federal standard for intent and knowledge. *See Doc. 43* at ¶¶49–53.

Third, Plaintiffs fail to specify where their properties are specifically located in relation to IH-10, only generally stating that their properties lie within the Operative Geographic Area. *Doc. 43* at ¶11, 35(a). Without explaining where specifically their properties are, Plaintiffs have no ability to show that the State knew or intended their properties would flood. Additionally, to the extent that Plaintiffs allege that the failure to implement design changes between Harvey and Imelda supports their state takings claim (such as in *Doc. 43*, ¶¶54–56), that cannot support a claim in Texas because only affirmative conduct by the State will support a claim. *Kerr*, 499 S.W.3d at 799.

The Plaintiffs also cannot show that the State knew that any harm was substantially certain to result. Plaintiffs point to federal and state regulations in support of this claim. *See Doc. 43* at ¶59–71. However, Plaintiffs have failed to allege why or how understanding such regulations was "necessarily an incident to, or necessarily a consequential result of" the State's actions such that a takings claim arises. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). In addition, the Supreme Court of Texas has stated that this kind of allegation, alone, does not prove the intent requirement. *Keller*, 168 S.W.3d at 821. Because Plaintiffs have failed to adequately plead inverse condemnation claims under the Texas Constitution, these claims should be dismissed.

## C.    Plaintiffs should not be permitted to amend their complaint.

The initial 47 Plaintiffs filed a 23-page, 70-paragraph Original Complaint. *See Doc. 3-2.* Pursuant to the Court's Local Rule of Practice 6, the State sent a letter to counsel for Plaintiff stating the bases and intent to file a motion to dismiss, and informed the 47 Plaintiffs that they had 14 days to amend their complaint. *See Ex. A.* The parties conferred briefly via telephone on July 21, 2020. The parties again conferred on July 27, 2020 and more information was exchanged on July 27 and 28, 2020 regarding the necessity to plead their federal claims under § 1983 (though

the 47 Plaintiffs stated they would not be amending their complaint). The parties again conferred on August 3, 2020, in which Plaintiffs confirmed their decision to not amend. August 3, 2020 was the deadline to file an amended complaint, and Plaintiffs failed to do so. Multiple amendments have occurred since, both prior to and after consolidation. *See, e.g., Docs. 27; 32; 43.* Therefore, Plaintiffs should not be permitted to amend their complaint.

## CONCLUSION

For these reasons, the State of Texas respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Original Complaint, dismissing all claims against them with prejudice. The State further requests any and all such other relief to which the State may show itself entitled, including costs and attorneys' fees.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

ESTEBAN S.M. SOTO
Chief, Transportation Division

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Attorney-in-Charge
Assistant Attorney General

Southern Dist. No. 3339635
State Bar No. 24077840
ESTEBAN S.M. SOTO
Chief, Transportation Division
Southern Dist. No. 1014954
State Bar. No. 24052282
LISA MCCLAIN MITCHELL
Assistant Attorney General
Southern Dist. No. 572948
State Bar No. 90001724
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548
512-936-1175 (Azeredo)
512-475-4054 (Soto)
512-936-1431 (Mitchell)
512-936-0888 – Fax
Email: glorieni.azeredo@oag.texas.gov
Email: esteban.soto@oag.texas.gov
Email: lisa.mitchell@oag.texas.gov

COUNSEL FOR DEFENDANT

# CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to the Court's Local Rule of Practice 6, the State sent a letter to counsel for Plaintiff stating the bases and intent to file a motion to dismiss, and informed Plaintiffs that they had 14 days to amend their complaint. *See Ex. A.* The parties conferred briefly via telephone on July 21, 2020. The parties again conferred on July 27, 2020 and more information was exchanged on July 27 and 28, 2020 regarding the necessity to plead their federal claims under § 1983 (though Plaintiffs stated they would not be amending their complaint). The parties again conferred on August 3, 2020, in which Plaintiffs confirmed their decision to not amend.

I also hereby certify that on June 1, 2021 I spoke with counsel for Plaintiff regarding the potential need for refiling the State's Motion to Dismiss with corrected factual citations to the Amended Master Complaint and an update to the procedural history of the case, instead of stipulations as discussed during a status conference with Magistrate Judge Edison on May 14, 2021. On June 2, 2021, the parties conferred and reached an agreement about seeking permission from the Court to re-file briefing with corrected factual citations to the Amended Master Complaint and an update to the procedural history of the case. That same day, the parties contacted Magistrate Judge Edison about the parties' agreement, and Magistrate Judge Edison agreed to proceed on that agreement.

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Assistant Attorney General

## CERTIFICATE OF SERVICE

This is to certify that on June 4, 2021, a true and correct copy of the foregoing document and all attachments referred to in the notice, have been sent to the following:

**Via E-Serve**
Daniel H. Charest
E. Lawrence (Larry) Vincent
Russell Herman
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
469-444-5002 – Fax
Email: dcharest@burnscharest.com
Email: lvincent@burnscharest.com
Email: rherman@burnscharest.com

*Counsel for Plaintiffs*

**Via E-Serve**
Lawrence G. Dunbar
DUNBAR HARDER, PLLC
10590 West Office Drive, Suite 2000
Houston, Texas 77042
713-782-4646
713-782-5544 – Fax
Email: ldunbar@dunbarharder.com

*Counsel for Plaintiffs*

**Via E-Serve**
Charles Irvine
Mary Conner
IRVINE & CONNER, PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
713-524-5165 – Fax
Email: charles@irvineconner.com
Email: mary@irvineconner.com

*Counsel for Plaintiffs*

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Assistant Attorney General

# EXHIBIT

# A



July 20, 2020

**Via E-Mail**
E. Lawrence (Larry) Vincent
lvincent@burnscharest.com
Daniel H. Charest
dcharest@burnscharest.com
900 Jackson Street, Suite 500
Dallas, Texas 75202

RE:  Civil Action No. 3:20-cv-00223; *Richard Devillier, et al v. The State of Texas*; Filed in the U.S. District Court for the Southern District of Texas – Galveston Division.

Dear Mr. Vincent,

Pursuant to the Southern District of Texas, Galveston District Court's Local Rule of Practice 6, this letter is to inform you of the State of Texas' intent to file a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(c) ("State's Motion"), to provide you and your clients the basis of the State's Motion, and to provide you the requisite fourteen (14) days to amend your pleading. Based on a preliminary analysis of Plaintiffs' petition, the State expects to file a motion to dismiss on the bases outlined below.

## I.  Plaintiffs' Claims

Plaintiffs allege that TXDOT's design, construction, maintenance and operation of IH-10 between Texas State Highway 61 to the west and the Chambers County line to the east and north to include a concrete median barrier created a "dam effect" that caused flooding and damages to Plaintiffs' real property north of IH-10 after Tropical Storms Harvey (in 2017) and Imelda (in 2019) in violation of both the U.S. and Texas' Constitutions. *See* Plaintiffs' Original Petition at ¶¶12, 15–32.[1]

## II.  Plaintiffs' Federal Inverse Condemnation Claims Are Subject to Dismissal.

The Plaintiffs appear to bring federal claims based on flooding during both Tropical Storms Harvey and Imelda under the Fifth Amendment to the U.S. Constitution. *See generally* Plaintiffs' Original Petition. These claims are subject to dismissal because: (1) Plaintiffs cannot bring a claim directly under the U.S. Constitution; (2) Plaintiffs' claims based on Tropical Storm Harvey are barred by statute of limitations; (3) the State has sovereign immunity against damages; (4) The State is not

---

[1] Plaintiffs' Original Petition is found within Doc. 1.2 in the federal pleadings. However, for ease of reading, the State will refer to the Original Petition rather than Doc. 1.2.

a person for purposes of 42 U.S.C. § 1983; and (5) Plaintiffs have failed to adequately plead a federal inverse condemnation claim.

*Plaintiffs' Fail to State a Constitutional Claim:* Plaintiffs do not couch their federal inverse condemnation claim as a 42 U.S.C. § 1983 ("section 1983") claim. Section 1983, however, is the only vehicle by which a constitutional violation, such as an inverse condemnation claim under the Takings Clause of the Fifth Amendment, can be brought against a State or state agency. *See, e.g., Knick v. Township of Scott, Penn.*, 139 S.Ct. 2162, 2170 (U.S., 2019); *see also Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992), ("Plaintiff has no cause of action directly under the United States Constitution. . . . [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

*Plaintiffs' Claims Related to Harvey Are Time-Barred*: Federal courts use the state's statute of limitations for personal injury claims—which in Texas is two years—when determining whether a section 1983 claim is filed within the statute's limitations period. Under the applicable accrual standard, a plaintiff's claim accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know he has been injured. In this case, Plaintiffs allege that Tropical Storm Harvey impacted the Geographical Operation Area in August 2017. *See* Plaintiffs' Original Petition at ¶¶23, 32(b). Plaintiffs were aware that they suffered an injury via flooding during that time. *See* Plaintiffs' Original Petition at ¶¶23–24, 28–31, 39. Therefore, the latest date by which the Plaintiffs could have timely filed their claim was August 2019. Instead, Plaintiffs' petition was filed on May 26, 2020. Consequently, any federal claim based on Tropical Storm Harvey is barred by statute of limitations and subject to dismissal.

*Plaintiffs' Federal Claims Are Barred by Sovereign Immunity:* As mentioned above, a federal inverse condemnation claim against the State must be brought under section 1983. Plaintiffs' federal claims are subject to dismissal because the State enjoys sovereign immunity against such claims. "Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id*; *Kentucky v. Graham*, 473 U.S. 159, 169 (2005). In Texas, sovereign immunity takes two forms: immunity from suit and liability. *See Meyers v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005). While the State waived immunity from suit when it removed Plaintiffs' claims to federal court, it did not waive immunity from liability. *Id*. The Fifth Circuit recently held that sovereign immunity was retained by a state agency for a claim brought under the Takings Clause, even after the Supreme Court's ruling in *Knick. See Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456–57 (5th Cir. 2019, *cert. denied* Mar. 30, 2020). Therefore, Plaintiffs' federal claims are barred by the State's sovereign immunity and must be dismissed.

*The State is not a "Person" under 42 U.S.C. § 1983:* Furthermore, section 1983 states that "[e]very person" who, under color of law, subjects a citizen to deprivation of his federal rights shall be liable to that citizen. 42 U.S.C. § 1983. However, a state is not a "person" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, Plaintiffs' federal claims against the State fail to state a claim upon which relief can be granted.

*Plaintiffs Fail to State a Valid Inverse Condemnation Claim*: Even if Plaintiffs could bring a section 1983 claim against the State, Plaintiffs' federal action still would fail to state a claim because the Plaintiffs cannot establish that they have a compensable protected property interest. To bring a federal inverse condemnation claim, a plaintiff must allege that they have a compensable protected property interest. *In re Downstream Addicks*, 146 Fed.Cl. 566, 576– 77 (Fed. Cl. 2020). State law defines property interests, and thus a court must look to state law to determine whether a plaintiff possesses property rights purported to have been taken. *Id*. at 577. Federal law, however, could also identify property rights protected by the U.S. Constitution, and so a court should examine whether federal common law provides a property right in the event state law does not. *Id*. at 581. Here, Plaintiffs fail to state a claim because they have not alleged a specific protected property interest in their petition, instead only stating that "[e]ach Plaintiff has protected property rights." Plaintiffs' Original Petition at ¶59.

Moreover, Plaintiffs will not be able to amend their pleadings to identify a protected property interest in uncontrollable flooding resulting from an Act of God, either under state or federal law. *In re Downstream Addicks*, 146 Fed.Cl. at 577, 581. First, the State's efforts to control and mitigate against flooding is legitimate use of police power, which is an exemption to takings liability and damages in Texas. *Id*. at 578. Second, Texas courts have rejected the theory that damages resulting from Acts of God rise to the level of Takings claim. *Id*. at 578–79 (citing to various Texas cases). Third, a plaintiff does not have the right to be free from flood waters outside the State's control. *Id.* at 583; *U.S. v. Sponenbarger*, 308 U.S. 246, 265, 266 (1939); *Teegarden v. U.S.*, 42 Fed.Cl. 252, 257 (Fed. Cl. 1998). Therefore, Plaintiffs' federal inverse claims are subject to dismissal based on these grounds.

## III.    Plaintiffs' State Inverse Condemnation Claims Are Subject to Dismissal.

Plaintiffs also bring claims under the Texas Constitution. These claims likewise are subject to dismissal for a failure to adequately plead a valid inverse condemnation claim.

To bring an inverse condemnation claim under the Texas Constitution, a plaintiff must allege that the State had subjective knowledge that its actions would cause specific harm to a specific piece of property or knows that the harm is substantially certain to result. *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 800 (Tex. 2016). Without this, an inverse condemnation claim in Texas fails. *See, e.g., City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (finding no taking where the City did not know the plaintiffs' land was damaged).

In this case, Plaintiffs have failed to plead this element. Plaintiffs have not alleged that the State knew their specific properties would be harmed or that there was any intent to harm their specific properties. In fact, Plaintiffs acknowledge that they cannot meet this element because they bring an argument "for the extension, modification or reversal of existing Texas law" by requesting the Court to use the federal standard for intent and knowledge instead of existing Texas law. *See* Plaintiffs' Original Petition at ¶¶49–52. In addition, Plaintiffs fail to specify where their properties are specifically located in relation to IH-10, only generally stating that their properties lie somewhere north of IH-10 between Texas State Highway 61 to the west and the Chambers County line to the east and north. Plaintiffs' Original Petition at ¶11. To the extent that Plaintiffs allege that the failure to implement design changes between Harvey and Imelda supports their takings claim (such as in

¶¶40-42), that cannot support a claim in Texas because only affirmative conduct will support a claim. *Kerr*, 499 S.W.3d at 799.

Also, the Plaintiffs cannot show that the State knew that any harm was substantially certain to result. Plaintiffs point to federal and state regulations in support of this claim. *See* Plaintiffs' Original Petition at ¶¶44–48. However, Plaintiffs have failed to allege why or how understanding such regulations was "necessarily an incident to, or necessarily a consequential result of" the State's actions such that a takings claim arises. *See City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). Because Plaintiffs have failed to adequately plead inverse condemnation claims under the Texas Constitution, these claims are subject to dismissal.

## IV.    Conclusion

Please let me know when you can be available for a telephone conference to discuss the State's anticipated motion to dismiss. Please be advised that Plaintiffs have a right to amend their pleadings under Judge Brown's Individual Rules. Per Rule 6, Plaintiffs' "amended pleading must be filed within 14 days of the date of [this] letter." Under this Rule, if Plaintiffs do not amend by this date, she "shall not be allowed to amend [their] pleading unless [their] case survives the motion and [they] obtains leave to amend from the court." In the spirit of Judge Brown's Individual Rules, if you believe you have pled any claims not addressed above, I ask that you advise me as soon as possible so I can address them via an amended letter.

Sincerely,

/s/ *Glorieni Azeredo*

GLORIENI AZEREDO
Assistant Attorney General
glorieni.azeredo@oag.texas.gov
Transportation Division
(512) 936-1175
(512) 936-0888 – Fax

CC:
CHARLES IRVINE *via email:* charles@irvineconner.com
MARY CONNER *via email:* mary@irvineconner.com
LAWRENCE G. DUNBAR *via email:* ldunbar@dunbarharder.com