IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, ET AL. | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | Civil Action No. 3:20-cv-00223 |
| | § | |
| THE STATE OF TEXAS | § | |
| *Defendant* | § | |

## THE STATE'S REPLY TO PLAINTIFFS' OPPOSITION TO THE STATE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED MASTER COMPLAINT

TO THE HONORABLE JUDGE JEFFREY V. BROWN:

Defendant the State of Texas ("State"), files this Reply to Plaintiff's Opposition to the State's Motion to Dismiss Plaintiffs' First Amended Master Complaint [Doc. 43].

### I.   INTRODUCTION

In their opposition to the State's Motion to Dismiss, Plaintiffs make the following arguments: (1) 42 U.S.C. § 1983 does not provide jurisdiction for Plaintiffs' Fifth Amendment Takings claims; (2) the Fifth Amendment is self-executing; and (3) they have pled valid federal and state claims. *See Doc. 45*. However, these arguments cannot stand. Section 1983 supports removal jurisdiction and is the only way for the Plaintiffs to bring their federal claims against the State. The Fifth Amendment is not self-executing, and even if the Court believed Plaintiffs did not have to bring their claims under § 1983, Plaintiffs have still pled their federal claims incorrectly because they solely rely on the Fifth Amendment, as opposed to the Fourteenth Amendment. Plaintiffs have still failed to plead valid federal claims because of the State's immunity to liability. Plaintiffs have failed to

plead valid federal claims because the State exercised legitimate police power. Plaintiffs have still failed to plead valid state constitutional claims because they have not pled the proper intent.

Plaintiffs also ask for the opportunity to replead. However, because Plaintiffs willingly chose not to amend after being informed by the State of their pleadings' deficiencies, Plaintiffs should not have the opportunity to amend. Therefore, the State respectfully asks the Court to grant its Motion to Dismiss.[1]

## II.   ARGUMENT AND AUTHORITIES

### A.   42 U.S.C. § 1983 does support removal jurisdiction for Plaintiff's Fifth Amendment claims.

Plaintiffs argue that 42 U.S.C. § 1983 does not support removal jurisdiction for Plaintiffs' Fifth Amendment claims by claiming that § 1983 only provides a remedy that cannot be enforced against the State and thus the State improperly removed the case. *Doc. 45* at 2–3. However, the State properly removed the case.[2]

The Supreme Court has held that "the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist." *Wisconsin Dept. of Corrections v. Schacht*, U.S. 381, 386 (1998). The Supreme Court's reasoning rests on the idea that at the time of removal, the State's

---

[1] Plaintiffs additionally request that if the Court determines it lacks jurisdiction to adjudicate the case to remand the action to Texas state court *in toto*. Doc. 45 at 23. The State believes that because the parties have fully briefed this issue, the federal and state claims are so intertwined on the merits, and for judicial efficiency, the Court should exercise supplemental jurisdiction over the state inverse condemnation claims.

[2] Whether the Court believes the State's or the Plaintiffs' arguments regarding the applicability of section 1983, it's clear that the State removed based on a federal question, since Plaintiffs alleged a federal inverse condemnation claim under the Fifth Amendment.

participation would not automatically place the case outside the authority of the federal court if, for example, the State choose to defend on the merits or argues that it is not a person under § 1983. *Id*. at 390. Indeed, other courts have exercised jurisdiction to decide motions to dismiss based on a governmental entity's argument that it is not a person under § 1983 when a case has been removed from state to federal court. *See, e.g., id*.; *Lapides v. Board of Regents of Uni. Sys. of Georgia*, 535 U.S. 613, 613, 617 (2002) (Supreme Court holding that the plaintiff did not bring a valid § 1983 claim after the Board of Regents sought to dismiss that claim); *Gates v. Texas Dept. of Family and Protective Servs.*, No. A–09–CV–018–LY, 2009 WL 10699662, at *1 (W.D.Tex., 2009) (court dismissing the plaintiff's § 1983 claim against the Texas Department of Family and Protective Services after it consented to removal).

**B.     42 U.S.C. § 1983 is the correct procedural vehicle to bring Plaintiffs' federal claims.**

Plaintiffs argue that their federal claims do not arise under § 1983. However, their arguments do not have merit. Section 1983 is the only vehicle by which a constitutional violation against a state actor can be alleged. *See Knick v. Township of Scott, Penn.*, 139 S.Ct. 2162, 2170 (U.S. 2019). Plaintiffs fail to show how their case is different than the cases by the State where Fifth Amendment takings claims were brought under § 1983 against governmental entities. *See Doc. 6* at 5 (citing to *Knick*, 139 S.Ct. at 2170; *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 175 n. 1 (1985); *Redburn v. City of Victoria,* 898 F.3d 486, 491 (5th Cir. 2018); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 2018 WL 3977879, at *2 (S.D. Miss. 2018)

(*aff'd* 937 F.3d 454, 456–57 (5th Cir. 2019, *cert. denied* Mar. 30, 2020)); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 515 (6th Cir. 2004); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)). Therefore, Plaintiffs' federal claims based on the Fifth Amendment must be pled through § 1983. Their failure to do so means their claims should be dismissed.[3]

**C.     Plaintiffs cannot bring their federal claims directing under the Constitution, but, even if they could, Plaintiffs' federal claims are still incorrectly pled and must be dismissed.**

Plaintiffs' pleadings, even if they were not required to bring their claims under 42 U.S.C. § 1983 (which they are), are still incorrectly pled and subject to dismissal. Plaintiffs bring their claims *solely* under the Fifth Amendment. *See, e.g., Doc. 43* at ¶78. In an attempt to keep their claim afloat, Plaintiffs argue that the Fifth Amendment is self-executing. *See Doc. 12* at 4–5. This argument fails for two reasons.

First, the Fifth Amendment is only applicable to the federal government. *Fallbrook Irr. Dist. v. Bradley*, 164 U.S. 112, 158 (1896); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). As early as 1896, the Supreme Court stated the following:

> "There is no specific prohibition in the federal constitution which acts upon the states in regard to their taking private property for any but a public use. The fifth amendment, which provides, among other things, that such property shall not be taken for public use without just compensation, applies only to the federal government, as has many times been decided."

*Bradley*, 164 U.S. at. 158.

Second, even Plaintiffs concede in their opposition that the Fifth Amendment is only

---

[3] Plaintiffs have admitted that they are not seeking any damages based on Hurricane Harvey. *See Doc. 45* at 6 n. 5. Therefore, they have abandoned any claim for damages based on Hurricane Harvey.

made applicable to the States via the Fourteenth Amendment. *Knick*, 139 S.Ct. at 2170; *Williamson Cnty.*, 473 U.S. at 182; *First English*, 482 U.S. at 310 & n. 4; *Doc. 44* at 4, 16–17. Plaintiffs cite to *First English* to allege that the Fifth Amendment is self-executing and that *Lucky Tunes* addressed the Fifth Amendment takings claim separately. *See Doc. 44* at 4–5. However, both cases were not brought under the Fifth Amendment solely, but rather the Fourteenth Amendment. *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 310 & n. 4 (1987); *Lucky Tunes #3, L.L.C., v. Smith*, 812 F. App'x 176, 181 (5th Cir. 2020).

Plaintiffs do not mention the Fourteenth Amendment a single time in their complaint. *See Doc. 43*. To allow Plaintiffs' claim to survive would therefore bypass the constitutional protections provided to the States and render the Fourteenth Amendment useless. Therefore, the Fifth Amendment cannot be self-executing against the State. Because Plaintiffs failed to plead their claims correctly, Plaintiffs' claims must be dismissed.

**D.     Plaintiffs have still failed to state a federal claim because the State retains its immunity from liability.**

Plaintiffs argue that the State has waived its immunity from liability to Plaintiffs' federal takings claims. *See Doc. 45* at 16–19. However, the State has not waived that immunity. As the Fifth Circuit in *Bay Point* recognized, state sovereign immunity exists for Fifth Amendment takings claims, even after the Supreme Court's decision in *Knick*. *Bay Point*, 937 F.3d at 456–57. Indeed, Plaintiffs do not point to any Fifth Circuit case law to support its position that the State has waived its immunity from liability for federal

claims, instead relying on cases from New Mexico and South Dakota. *See Doc. 12* at 17.

Plaintiffs cites to the following statements in *Meyers* to bolster its argument that the State, in this case, is wrong in its analysis with respect to immunity from liability: "Texas merely states its conclusions about the structure of sovereign immunity and points to the pages in [] opinions that it claims as authority and gives no further explanation. Thus, there are large gaps in Texas's analysis." *Doc 45* at 16, n. 10 (citing to *Meyers v. Texas*, 410 F.3d 236, 251 (5th Cir. 2005)). However, the Fifth Circuit made these statements when examining the State's arguments regarding two separate immunities *from suit*. The Court in *Meyers* separately stated that the question of immunity of liability, which protects the state from judgments even if it has consented to the suit, is "an issue that must be decided according to that state's law." *See Meyers*, 410 F.3d at 255. Texas law only provides a waiver to takings claims brought under Art. I, § 17 of the Texas Constitution. Tex. Const. art. I, section XVII. Additionally, Plaintiffs cannot show a valid abrogation of the immunity from liability for federal claims, which they are required to show. *See Bay Point*, 937 F.3d at 456–57; *Quern v. Jordan*, 440 U.S. 332, 342 (1979) ("we simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States.").

**E.     The State exercised legitimate police power, and thus Plaintiffs' claims should be dismissed.**

To maintain their federal inverse condemnation claims, Plaintiffs argue that the police power doctrine does not protect the State from liability. *Doc. 45* at 11–13. However, this argument fails. To bring a federal inverse condemnation claim, a plaintiff must allege

that they have a compensable protected property interest. *In re Downstream Addicks*, 146 Fed.Cl. 566, 576–77 (Fed. Cl. 2020); *In re Upstreams Addicks*, 146 Fed.Cl. 219, 246 (Fed. Cl. 2019) (a plaintiff must establish that they hold "a property interest for purposes of the Fifth Amendment."). Plaintiffs do not contest that state law defines property interests, and thus a court must look to state law to determine whether a plaintiff possesses property rights purported to have been taken. *In re Downstream Addicks*, 146 Fed.Cl. at 577. In Texas, all property is held subject to the valid exercise of the police power. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex.,1984) (citing to *Lombardo v. City of Dallas,* 73 S.W.2d 475, 478 (1934)). As the Federal Circuit recognized, "Texas courts have also consistently recognized efforts by the State to mitigate against flooding as a legitimate use of the police powers." *In re Downstream Addicks*, 146 Fed.Cl. at 578. Plaintiffs themselves acknowledge these efforts by the State. *See Doc. 43* at ¶17; *Doc. 45* at 13.

Plaintiffs rely on *In re Upstreams Addicks* to support their against legitimate police power, and ask this Court to look to both decisions in that case in ruling against the State, claiming similarity between them and the present case. *See Doc. 45* at 11. However, *In re Upstreams Addicks* is not similar to Plaintiffs' case. First, evidence showed that the U.S. Army Corps of Engineers, beginning in the early 1970s, knew that its dams would flood private lands. *In re Upstreams Addicks*, 146 Fed.Cl. at 234. Plaintiffs cannot point to such evidence in this case, outside of its conclusory statements that TXDOT knew the concrete barrier would create a dam-effect and flood property, or that it planned for years to flood Plaintiffs' property. *See Doc. 43*. Second, the U.S. Army Corps of Engineers made conscious decisions during Hurricane Harvey about when to release water according to its

2012 Water Control Manual. *In re Upstreams Addicks*, 146 Fed.Cl. at 240 – 41. In this case, Plaintiffs have failed to plead (and cannot plead) how the State made conscious decisions to release water onto their properties because the flood waters were outside the State's control. Finally, with respect to police power, the Court *In re Upstreams Addicks* specifically pointed to the U.S. Army Corps of Engineers' knowledge and decision-making before Harvey. *In re Upstreams Addicks*, 146 Fed.Cl. at 263–64. Here, though, Plaintiffs lack the pleadings to show the State's knoweldge and decision-making showed it *knew* Plaintiffs' property would flood. Therefore, this Court should not rely on *In re Upstreams Addicks*, and Plaintiffs have not pled a valid federal compensable and protected property interest; thus, their claims should be dismissed.

**F.   Plaintiffs have not plead valid state inverse condemnation claims because it cannot show the requisite intent**.

Plaintiffs argue that they have pled state inverse condemnation claims, pointing to multiple statements it believes proves the intent element. *See Doc. 45* at 20–22. However, the statements Plaintiffs point do not satisfy the pleading requirement necessary to survive the State's Motion to Dismiss.

In considering whether the contains sufficient facts, accepted as true, to state a claim for relief that is plausible on its face, a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Therefore, a plaintiff's obligation to demonstrate his entitlement to relief requires more than just labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the plaintiff's complaint

must plead sufficient factual allegations to raise a right to relief that is more than speculative. *Id.* at 555.

Here, the statements Plaintiffs rely on to allege it has sufficient factual allegations on the intent element of state inverse condemnation claims are legal conclusions. For example, Plaintiffs allege the State "knew that its actions would cause or were causing damage to Plaintiffs' properties." *Doc. 43* at ¶20. However, Plaintiffs fail to explain how the State knew that building a concrete barrier at some point in the past (since Plaintiffs do not even state when these barriers were erected in relation to Harvey) would create a "dam effect" during Harvey, or that the barriers themselves were the reason behind the flooding. Instead, Plaintiffs' allegations are legal conclusions attempted to be camouflaged as factual allegations.

Plaintiffs additionally argue that because "*they* know where *their* properties are located, *they* know they were flooded because of the State's design, construction, maintenance, and operation of the IH-10 traffic median barrier," they have satisfied pleading the intent element. *Doc. 45* at 22 (emphasis added). However, the focus for the intent element is not on what Plaintiffs know, but rather what the State knows. *See Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799–800 (Tex. 2016). If the State didn't know where these Plaintiffs' properties were in relation to I-10 or that its design, construction, maintenance, and operation of the highway would cause flooding of Plaintiffs' specific properties, there is no way to impose that knowledge onto the State or allow Plaintiffs' claims to survive.

In addition, Plaintiffs argue that state law authority regarding what needs to be pled to maintain a viable state inverse claim is inapplicable in this Court. *Doc. 44* at 19–22. This argument must fail. A federal court exercising pendant or supplemental jurisdiction under 28 U.S.C. § 1367(d) over state law claims, must apply the substantive law of the state in which it sits. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Therefore, the State's citations to Texas state law is applicable, and this Court should rely on Texas state law when determining whether Plaintiffs have pled valid state inverse condemnation claims.

### G. Plaintiffs should not have the opportunity to re-plead.

As a last-ditch effort, Plaintiffs ask this Court to give them the opportunity to replead. However, this Court should deny that request. Pursuant to the Court's Local Rule of Practice 6, the State sent a letter to counsel for Plaintiff on July 20, 2020 stating the bases and intent to file a motion to dismiss, and informed Plaintiffs that they had 14 days to amend their complaint. *See Doc. 6* at Ex. A. August 3, 2020 was the deadline to file an amended complaint, and Plaintiffs failed to do so. Multiple amendments have occurred since, both prior to and after consolidation. *See, e.g., Docs. 27; 32; 43*. Under the same local rule, "the non-movant shall not be allowed to amend its pleading unless the non-movant's case survives the motion and the non-movant obtains leave to amend from the court." *Galveston District Court Rules of Practice,* Rule 6. Therefore, Plaintiffs should not be permitted to amend their complaint.

## CONCLUSION

For these reasons, the State of Texas respectfully requests that this Court grant its Motion to Dismiss Plaintiffs' First Amended Master Complaint, dismissing all claims against them with prejudice. The State further requests any and all such other relief to which the State may show itself entitled, including costs and attorneys' fees.

<div style="margin-left: 50%">

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

ESTEBAN S.M. SOTO
Chief, Transportation Division

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Attorney-in-Charge
Assistant Attorney General
Southern Dist. No. 3339635
State Bar No. 24077840
ESTEBAN S.M. SOTO
Chief, Transportation Division
Southern Dist. No. 1014954
State Bar. No. 24052282
LISA MCCLAIN MITCHELL
Assistant Attorney General
Southern Dist. No. 572948
State Bar No. 90001724
Transportation Division

</div>

P.O. Box 12548
Austin, Texas 78711-2548
512-936-1175 (Azeredo)
512-475-4054 (Soto)
512-936-1431 (Mitchell)
512-936-0888 – Fax
Email: glorieni.azeredo@oag.texas.gov
Email: esteban.soto@oag.texas.gov
Email: lisa.mitchell@oag.texas.gov

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that on June 15, 2021, a true and correct copy of the foregoing document has been sent to the following:

**Via E-Serve**
Daniel H. Charest
E. Lawrence (Larry) Vincent
Russell Herman
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
469-444-5002 – Fax
Email: dcharest@burnscharest.com
Email: lvincent@burnscharest.com
Email: rherman@burnscharest.com

*Counsel for Plaintiffs*

**Via E-Serve**
Charles Irvine
Mary Conner
Irvine & Conner, PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
713-524-5165 – Fax
Via Email: charles@irvineconner.com
Via Email: mary@irvineconner.com

*Counsel for Plaintiffs*

**Via E-Serve**
Lawrence G. Dunbar
Dunbar Harder, PLLC
10590 West Office Drive, Suite 2000
Houston, Texas 77042
713-782-4646
713-782-5544 – Fax
Via Email: ldunbar@dunbarharder.com

*Counsel for Plaintiffs*

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Assistant Attorney General