STATE'S
EXHIBIT

A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

RICHARD & WENDY DEVILLIER, ET AL.,　　§

Plaintiffs,　　§

v.　　§　　CIVIL ACTION NO. 3:20-cv-00223

THE STATE OF TEXAS,　　§

Defendant.　　§

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS

TO:　Defendant The State of Texas by and through its counsel of record Glorieni M. Azeredo, Lisa McClaim Mitchell, Office of the Attorney General of Texas, 300 W. 15th St., MC-020, Transportation Division, Austin, Texas 78711-2548, glorieni.azeredo@oag.texas.gov, lisa.mitchell@oag.texas.gov.

Plaintiffs serve this First Set of Requests for Admissions on Defendant The State of Texas, and request Defendant respond in compliance with the Federal Rules of Civil Procedure.

## GENERAL INSTRUCTIONS

1.　　With regard to these requests for admissions, you must (a) specifically admit or deny each request including those asking you to admit or deny an opinion, an issue of fact, or a request requiring the application of law to fact; (b) you must either answer the request with an unqualified "Admit" or "Deny," or explain in detail the reason(s) that you cannot admit or deny the request; and (c) your response must fairly meet the substance of the request—you may qualify an answer (or deny a request in part) only when good faith requires. Lack of information or knowledge is not a proper response unless you attest that a reasonable inquiry was made but the information known or easily obtainable is insufficient to enable you to specifically admit or deny the request.

2.　　To the extent any of the requests are objectionable in whole or in part, each objection must be stated with particularity, including reasons for the objection and the categories of documents to which the objection applies. The request must be answered to the extent it is not objectionable.

1

3.    In interpreting these requests, definitions, and instructions: any masculine, feminine, or neutral term includes all other genders; the singular includes the plural and vice versa; and "or," "and," "and/or," and "including" shall be read to bring within the scope of the request the broadest amount of information.

4.    If you refuse to answer any request based on an assertion of privilege, specifically set forth the nature and basis of the privilege claimed.

## DEFINITIONS

5.    "You" or "your," means Defendant The State of Texas and every person or agency acting or purporting to act on its behalf (including but not limited to the Texas Department of Transportation), including any of its officials, employees, agents, representatives, or attorneys (except to the extent the attorney-client privilege exists).

6.    "TxDOT" means the Texas Department of Transportation.

7.    "FHWA" means the Federal Highway Administration.

8.    "FEMA" means the Federal Emergency Management Agency.

9.    "NFIP" means the National Flood Insurance Program.

10.    "IH-10" means Interstate Highway 10, the southernmost cross-country highway in the American Interstate Highway System.

11.    "Petition" means and refers to *Plaintiffs' Original Petition*, filed in this action, and any amendments or supplements thereto.

12.    When capitalized, the term "Projects" means Federal Aid Project IR 10-8(134)824, and Federal Aid Project NH 1602(470).  All other references to, or use of, the term "project" shall carry the same meaning as used in your Project Development Process Manual, available at http://onlinemanuals.txdot.gov/txdotmanuals/pdp/index.htm.

13. Federal Aid Project IR 10-8(134)824 means all efforts performed in connection with or evidencing the design, construction, operation, and maintenance of IH-10 pursuant to CSJ 0508-03-066 and CSJ 0739-01-029.

14. Federal Aid Project NH 1602(470) means all efforts performed in connection with or evidencing the design, construction, operation, and maintenance of IH-10 pursuant to 0739-01-039 and CSJ 0739-02-160.

15. "Operative Geographic Area" means the area in Chambers County, Texas that is encompassed by Texas State Highway 61 on the west, by the Chambers County line on the north and east, and by IH-10 on the east and south.

16. "TxDOT HYDRAULIC DESIGN MANUAL" means the publication prepared by your agency, the Texas Department of Transportation, as updated Sept. 2019 and available at http://onlinemanuals.txdot.gov/txdotmanuals/hyd/hyd.pdf (last accessed April 23, 2020).

17. "Harvey" means the hurricane/tropical storm denoted as FEMA Incident DR-4332 and described and discussed at https://www.fema.gov/disaster/4332 and the links on that page.

18. "Imelda" means the hurricane/tropical storm denoted as FEMA Incident DR-4332 and described and discussed at https://www.fema.gov/disaster/4466 and the links on that page.

19. "MSL," "msl," or "mean sea level" means the average location of the interface between ocean and atmosphere over a period of time sufficiently long so that all random and periodic variations of short duration average to zero as measured by the North American Vertical Datum of 1988 ("NAVD 88").

20. "Special Flood Hazard Area" is defined as set forth at https://www.fema.gov/special-flood-hazard-area.

21. "Base Flood Elevation" is defined as set forth at https://www.fema.gov/base-flood-elevation.

22.     All other terms contained in a request that are **Capitalized and in bold font** shall be defined and applied as each is defined in the Glossary of Hydrology Terms, Chapter 4, Section 15 of your TxDOT HYDRAULIC DESIGN MANUAL. Any other term in these requests which you find unclear shall be defined and applied as it is defined and/or used in the TxDOT HYDRAULIC DESIGN MANUAL.

## REQUESTS FOR ADMISSION

### Part A: General requests.

**Request for Admission No. 1.**     Admit the fact that the definition of a floodplain encroachment, as used with regard to the NFIP, includes the modification or addition of traffic median barriers.

**Request for Admission No. 2.**     Admit the fact that the definition of a floodplain encroachment, as used with regard to the NFIP, includes the modification or addition of traffic median barriers whether the structure interferes with flood waters or not.

**Request for Admission No. 3.**     Admit the fact that you have possession of a map which shows the highest point of elevation in the Operative Geographic Area.

**Request for Admission No. 4.**     Admit the fact that you have possession of sufficient information from which you can determine the highest point of elevation in the Operative Geographic Area.

**Request for Admission No. 5.**     Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 1990 was below:

   a.  32 inches msl.
   b.  33 inches msl.
   c.  34 inches msl.
   d.  35 inches msl.
   e.  36 inches msl.
   f.  37 inches msl.
   g.  38 inches msl.
   h.  39 inches msl.
   i.  40 inches msl.

**Request for Admission No. 6.**     Admit the fact that the highest point of elevation in the Operative Geographic Area on January 1, 2016 was below:

   a.  32 inches msl.
   b.  33 inches msl.

4

    c.  34 inches msl.

    d.  35 inches msl.

    e.  36 inches msl.

    f.  37 inches msl.

    g.  38 inches msl.

    h.  39 inches msl.

    i.  40 inches msl.

**Request for Admission No. 7.**    Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 2017 was below:

    a.  32 inches msl.

    b.  33 inches msl.

    c.  34 inches msl.

    d.  35 inches msl.

    e.  36 inches msl.

    f.  37 inches msl.

    g.  38 inches msl.

    h.  39 inches msl.

    i.  40 inches msl.

**Request for Admission No. 8.**    Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 2019 was below:

    a.  32 inches msl.

    b.  33 inches msl.

    c.  34 inches msl.

    d.  35 inches msl.

    e.  36 inches msl.

    f.  37 inches msl.

    g.  38 inches msl.

    h.  39 inches msl.

    i.  40 inches msl.

**Request for Admission No. 9.**    Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Direct Runoff** throughout the Operative Geographic Area on January 1, 1990.

**Request for Admission No. 10.**    Admit the fact that you had possession of or access to

sufficient information from which you could have determined the direction of **Direct Runoff** throughout the Operative Geographic Area on January 1, 2016.

**<u>Request for Admission No. 11.</u>**      Admit the fact that you knew that **Direct Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 1990.

**<u>Request for Admission No. 12.</u>**      Admit the fact that you knew that **Direct Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 2016.

**<u>Request for Admission No. 13.</u>**      Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Surface Runoff** throughout the Operative Geographic Area on January 1, 1990.

**<u>Request for Admission No. 14.</u>**      Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Surface Runoff** throughout the Operative Geographic Area on January 1, 2016.

**<u>Request for Admission No. 15.</u>**      Admit the fact that you knew that the **Surface Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 1990.

**<u>Request for Admission No. 16.</u>**      Admit the fact that you knew that **Surface Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 2016.

**<u>Request for Admission No. 17.</u>**      Admit the fact that prior to January 1, 2015 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**<u>Request for Admission No. 18.</u>**      Admit the fact that prior to January 1, 2016 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**<u>Request for Admission No. 19.</u>**      Admit the fact that prior to January 1, 2017 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**<u>Request for Admission No. 20.</u>**      Admit the fact that prior to January 1, 2018 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**<u>Request for Admission No. 21.</u>**      Admit the fact that prior to January 1, 2019 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**<u>Request for Admission No. 22.</u>**      Admit the fact that TxDOT hydraulic engineers should review the potential liabilities stemming from the impact of any highway project on a **Floodplain**.

**<u>Request for Admission No. 23.</u>**      Admit the fact that the rehabilitation or maintenance of a roadway resulting in a higher profile must be checked for consistency with the federal

requirements regarding the impact of a highway on a **Floodplain**.

**Request for Admission No. 24.**      Admit the fact that compliance with 23 C.F.R. 650, Subpart A is required when a proposed project includes a new or expanded encroachment on a **Floodplain** regulated by FEMA.

**Request for Admission No. 25.**      Admit the fact that compliance with 23 C.F.R. 650, Subpart A is required when a proposed project contains the potential for adversely impacting private property on or near a **Floodplain**.

**Request for Admission No. 26.**      Admit the fact that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency.

**Request for Admission No. 27.**      Admit the fact that you have not negotiated a Memorandum of Understanding for hydraulic design with any federal agency.

**Request for Admission No. 28.**      Admit the fact that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency which permits any variance from any requirements imposed by federal regulations on a TxDOT project.

**Request for Admission No. 29.**      Admit the fact that you have not negotiated a Memorandum of Understanding for hydraulic design with any federal agency which permits any variance from any requirements imposed by federal regulations on any of your projects.

**Request for Admission No. 30.**      Admit the fact that Texas Water Code Chapter 16 Subchapter I requires TxDOT to work with communities to prevent flood damage and minimize impacts from its projects.

**Request for Admission No. 31.**      Admit the fact that Executive Order 11988 requires TxDOT to consider alternatives to its actions that will not impact a **Floodplain**.

**Request for Admission No. 32.**      Admit the fact that all drainage facilities must be designed for existing land use conditions.

**Request for Admission No. 33.**      Admit the fact that drainage design must include capacity to convey **Runoff** from all existing adjacent properties.

**Request for Admission No. 34.**      Admit the fact that TxDOT drainage projects must be designed so that they do not have a negative impact on facilities existing upstream of the project.

**Request for Admission No. 35.**      Admit the fact that TxDOT drainage projects must be designed so that they do not have a negative impact on facilities neighboring the project.

**Request for Admission No. 36.**      Admit the fact that a TxDOT proposed project must not induce flooding during the event for which it was designed.

**Request for Admission No. 37.**      Admit the fact that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for projects involving new drainage structures or replacement of existing structures.

**Request for Admission No. 38.**      Admit the fact that for the purposes of the standards and criteria

7

presented in the Texas Department of Transportation Hydraulic Design Manual, "risk" is defined as the consequences associated with the probability of flooding attributable to the project.

**Request for Admission No. 39.**     Admit the fact that for the purposes of the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual, "risk" includes the potential for property loss and hazard to life during the service life of IH-10.

**Request for Admission No. 40.**     Admit the fact that all sources of potential risk should be considered as part of the investigation for hydraulic structures for a TxDOT project in order to determine whether modified site-specific standards or criteria are appropriate for that project.

**Request for Admission No. 41.**     Admit the fact that the required documentation for the hydraulic analysis and design of a project includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**Request for Admission No. 42.**     Admit the fact that a report providing the contents described in the TxDOT document "Recommended Format for Drainage Reports" is required for any bridge replacement or rehabilitation project impacting NFIP floodplains mapped as Zone A or Zone AE.

**Request for Admission No. 43.**     Admit the fact that a detailed report providing the contents described in the TxDOT document "Recommended Format for Drainage Reports" is required for any roadway project impacting NFIP floodplains mapped as Zone A or Zone AE.

**Request for Admission No. 44.**     Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference.

**Request for Admission No. 45.**     Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference since the need for such records may not arise until years after the project has been completed.

**Request for Admission No. 46.**     Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference to provide justification of design decisions in cases of future litigation.

**Request for Admission No. 47.**     Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference to provide proof of intended compliance with regulations such as NFIP rules.

**Request for Admission No. 48.**     Admit as to each that the following documentation constitutes a part of a project's permanent file:

a. Drainage area map(s) showing boundaries, outfalls, and flow paths;

b. Documents demonstrating relevant watershed parameters;

c. Documents demonstrating the hydraulic assumptions and limitations;

d. Documents demonstrating the hydrologic method(s) used;

e. Documents demonstrating the hydrologic calculations;

f. Documents demonstrating peak discharges for design floods;

g. Documents demonstrating peak discharges for check floods;

h. Runoff hydrographs for design floods;

8

i.   Runoff hydrographs for check floods;

j.   Documents demonstrating the design criteria for culverts;

k.   Documents demonstrating the culvert hydraulic computations;

l.   Documents demonstrating the through-culvert velocities for design floods;

m.  Documents demonstrating the unconstructed and through-culvert velocities for check floods;

n.   Documents demonstrating the estimated distance upstream of any backwater effect;

o.   Documents demonstrating the magnitude and frequency of overtopping flood;

p.   Drainage area maps;

q.   Documents demonstrating locations where storm water will discharge from the project;

r.   Documents demonstrating the acres of disturbed area that will drain to each discharge point;

s.   Documents demonstrating the total acreage of the Project area.

**Request for Admission No. 49.**   Admit the fact that some hydrologic analysis is necessary for all highway drainage facilities.

**Request for Admission No. 50.**   Admit the fact that drainage design must include capacity to convey runoff from all existing adjacent properties.

**Request for Admission No. 51.**   Admit the fact that in the consideration of design work on existing roadways, the established patterns of drainage must be examined.

**Request for Admission No. 52.**   Admit the fact that the natural drainage pattern, including that beyond the vicinity of the proposed highway project, must be studied either to minimize or avoid damage to adjacent property.

**Request for Admission No. 53.**   Admit the fact that you do not own a flowage easement on the any of the properties owned by:

a.   Richard & Wendy Devillier;

b.   Steven & Rhonda Devillier;

c.   Barbara Devillier;

d.   David & Angela McBride;

e.   Bert Hargraves;

f.   Barney & Crystal Threadgill;

g.   David Ray;

h.   Gary Herman;

i.   Rhonda Glanzer;

j.   Chris & Darla Barrow;

k.   Dennis Dugat;

l.   Laurence Barron;

m.  Deanette Lemon;

n.  Jill Devillier White;

o.  Beverly Kiker;

p.  Yale Devillier;

q.  The Estate of Kyle H. Devillier;

r.  Charles Monroe;

s.  Jacob & Angela Fregia;

t.  Jerry & Mary Devillier;

u.  Zalphia Hankamer;

v.  Larry and Susan Bolich;

w.  Sheila Marino;

x.  William Meissner;

y.  Taylor McBride;

z.  Brian & Kathleen Abshier;

aa. Jina Daigle;

bb. Coulon Devillier;

cc. Hailey Ray Sr., Hailey Ray Jr. & Sheila Moor;

dd.  John Rhame;

ee. Alex & Tammy Hargraves;

ff.  William Devillier;

gg. Kyle & Allison Wagstaff;

*__Part B: Requests concerning Federal Aid Project IR 10-8(134)824.__*

__Request for Admission No. 54.__     Admit the fact that the lowest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 is higher than:

a.  32 inches msl.

b.  33 inches msl.

c.  34 inches msl.

d.  35 inches msl.

e.  36 inches msl.

10

    f.   37 inches msl.

    g.   38 inches msl.

    h.   39 inches msl.

    i.   40 inches msl.

**Request for Admission No. 55.**    Admit the fact that you were required to comply with the requirements of the National Flood Insurance Act in performing your work on Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 56.**    Admit the fact that you were required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 57.**    Admit the fact that you were required to comply with the requirements of 23 CFR Part 650 Subpart A in performing your work on Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 58.**    Admit the fact that your work on Federal Aid Project IR 10-8(134)82 affected the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 59.**    Admit the fact that your work on Federal Aid Project IR 10-8(134)82 raised the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 60.**    Admit the fact that your work on Federal Aid Project IR 10-8(134)82 resulted in the grade line of IH-10 rising to a msl level higher than the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 61.**    Admit the fact that your work on Federal Aid Project IR 10-8(134)82 installed a concrete traffic barrier that reaches a height greater than twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 62.**    Admit the fact that your work on Federal Aid Project IR 10-8(134)82 resulted in the top of the grade line of IH-10 rising to a msl level twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 63.**    Admit the fact that the Federal Aid Project IR 10-8(134)82 involved new drainage structures or the replacement of existing structures.

**Request for Admission No. 64.**    Admit the fact that work done for Federal Aid Project IR 10-8(134)824 was accomplished by you.

**Request for Admission No. 65.**    Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was performed by you.

**Request for Admission No. 66.**    Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was accomplished by your agents.

**Request for Admission No. 67.**    Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was performed by your agents.

**Request for Admission No. 68.**    Admit the fact that the work done pursuant to Federal Aid Project IR 10-8(134)824 was for a "public use" as that term is interpreted and applied under

Article I Section 17 of the Texas Constitution.

**<u>Request for Admission No. 69.</u>**        Admit the fact that the work done pursuant to Federal Aid Project IR 10-8(134)824 was for a "public use" as that term is interpreted and applied under the Fifth Amendment to the U.S. Constitution.

**<u>Request for Admission No. 70.</u>**        Admit the fact that FIRM panel 48071C0275E (effective May 4, 2015), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**<u>Request for Admission No. 71.</u>**        Admit the fact that FIRM panel 48071C0300E (effective May 4, 2015), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**<u>Request for Admission No. 72.</u>**        Admit the fact that FIRM panel 4803850355E (map revised August 6, 2002), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**<u>Request for Admission No. 73.</u>**        Admit the fact that one part of Federal Aid Project IR 10-8(134)824 was the installation of a traffic median barrier.

**<u>Request for Admission No. 74.</u>**  Admit the fact that you intended for the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 to be a permanent addition to IH-10.

**<u>Request for Admission No. 75.</u>**  Admit the fact that the top of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 reaches a vertical height above the elevation of IH-10 prior to the work done for that Project.

**<u>Request for Admission No. 76.</u>**  Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was in part to enhance public safety.

**<u>Request for Admission No. 77.</u>**  Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was in part to provide an evacuation route during a flooding emergency.

**<u>Request for Admission No. 78.</u>**  Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was to enhance public safety.

**<u>Request for Admission No. 79.</u>**  Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was to provide an evacuation route during a flooding emergency.

**<u>Request for Admission No. 80.</u>**  Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 to enhance public safety.

**<u>Request for Admission No. 81.</u>**  Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 to provide an evacuation route during a flooding emergency.

**Request for Admission No. 82.**  Admit the fact that you knew that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 would at least partially protect the eastbound lanes of IH-10 from flooding during a flooding emergency.

**Request for Admission No. 83.**  Admit the fact that you determined the weir-crest of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 84.**  Admit the fact that you determined the highest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 85.**  Admit the fact that as one part of Federal Aid Project IR 10-8(134)824 you studied the **Antecedent Conditions** of the Operative Geographic Area.

**Request for Admission No. 86.**  Admit the fact that as one part of Federal Aid Project IR 10-8(134)824 you studied the **Basic Hydrologic Data** of the Operative Geographic Area.

**Request for Admission No. 87.**  Admit the fact that you determined the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 88.**  Admit the fact that you determined the **Annual Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 89.**     Admit the fact that you determined the **Direct Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 90.**     Admit the fact that you prepared an **Event-Based Model** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 91.**     Admit the fact that you prepared a **Flood-Frequency Curve** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 92.**     Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 93.**     Admit the fact that you determined the **Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 94.**     Admit the fact that you determined the **Flood Peak** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 95.**     Admit the fact that you determined the **Flood Profile** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 96.**     Admit the fact that you determined the **Peak Stage** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

13

**Request for Admission No. 97.** Admit the fact that you determined the **Peak Flow** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 98.** Admit the fact that you determined the **Overland Flow** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 99.** Admit the fact that you determined the **Direct Excess** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 100.** Admit the fact that you determined the **Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 101.** Admit the fact that you determined the **Surface Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 102.** Admit the fact that you determined the **Direct Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 103.** Admit the fact that you determined the **Effective Precipitation** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 104.** Admit the fact that you prepared an **Event-Based Model** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 105.** Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 106.** Admit the fact that you determined the **Exceedance Probability** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 107.** Admit the fact that you determined the **Peak Stage** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 108.** Admit the fact that you determined the **Peak Flow** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 109.** Admit the fact that you determined the **Overland Flow** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 110.** Admit the fact that you determined the **Direct Excess** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 111.** Admit the fact that you determined the **Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 112.** Admit the fact that you determined the **Surface Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**Request for Admission No. 113.** Admit the fact that when you designed Federal Aid Project IR

14

10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area.

**Request for Admission No. 114.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area.

**Request for Admission No. 115.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 116.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 117.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 118.**        Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 119.**        Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 120.**        Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 121.**        Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 122.**        Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 123.**        Admit the fact that as you operate Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**Request for Admission No. 124.**        Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

15

**Request for Admission No. 125.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 126.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 127.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 128.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 129.**    Admit the fact that at the time you constructed it, you knew that the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824) would retain **Surface Runoff**.

**Request for Admission No. 130.**    Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**Request for Admission No. 131.**    Admit the fact that as you operate Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**Request for Admission No. 132.**    Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**Request for Admission No. 133.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10-8(134)824 would retain **Direct Runoff**.

**Request for Admission No. 134.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10-8(134)824 would retain **Direct Runoff**.

**Request for Admission No. 135.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 136.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from

16

which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 137.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10-8(134)824 would retain **Surface Runoff**.

**Request for Admission No. 138.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10-8(134)824 would retain **Surface Runoff**.

**Request for Admission No. 139.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 140.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 141.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 142.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 143.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 144.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 145.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 146.**    Admit the fact that when you constructed Federal Aid Project

17

IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 147.**      Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 148.**      Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 149.**      Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 150.**      Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 151.**      Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 152.**      Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 153.**      Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 154.**      Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 155.**      Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that

project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 156.**     Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 157.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 158.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 159.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 160.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 161.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 162.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 163.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 164.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 165.**     Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff.**

19

**Request for Admission No. 166.**      Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 167.**      Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff.**

**Request for Admission No. 168.**      Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 169.**      Applying the facts as alleged by Plaintiffs, admit that compliance with 23 C.F.R. 650, Subpart A was required with regard to your work on Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 170.**    Applying the facts as alleged by Plaintiffs, admit that Texas Water Code Chapter 16 Subchapter I required you to work with communities to prevent flood damage and minimize impacts from Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 171.**    Applying the facts as alleged by Plaintiffs, admit that compliance with Executive Order 11988 was required with regard to your work on Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 172.**    Applying the facts as alleged by Plaintiffs, admit that all drainage facilities for Federal Aid Project IR 10-8(134)82 should have been designed for existing land use conditions.

**Request for Admission No. 173.**    Applying the facts as alleged by Plaintiffs, admit that drainage design for Federal Aid Project IR 10-8(134)82 should have included capacity to convey **Runoff** from all existing adjacent properties.

**Request for Admission No. 174.**    Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it did not have a negative impact on facilities existing upstream of the project.

**Request for Admission No. 175.**    Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it did not have a negative impact on facilities neighboring the project.

**Request for Admission No. 176.**    Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it does not induce flooding during the event for which it was designed.

**Request for Admission No. 177.**    Applying the facts as alleged by Plaintiffs, admit that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design

20

Manual are the minimum standards and criteria acceptable for Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 178.**   Applying the facts as alleged by Plaintiffs, admit that all sources of potential risk should have been considered as part of the investigation for hydraulic structures for Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 179.**   Applying the facts as alleged by Plaintiffs, admit that the required documentation for Federal Aid Project IR 10-8(134)82 includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**Request for Admission No. 180.**   Applying the facts as alleged by Plaintiffs, admit that a report for Federal Aid Project IR 10-8(134)82 should have been completed as described in the TxDOT document "Recommended Format for Drainage Reports."

**Request for Admission No. 181.**     Applying the facts as alleged by Plaintiffs, admit that hydraulic reports for Federal Aid Project IR 10-8(134)82 should be retained in the District or Area Office project file for permanent reference.

**Request for Admission No. 182.**     Applying the facts as alleged by Plaintiffs, admit that some hydrologic analysis was necessary for Federal Aid Project IR 10-8(134)82.

**Request for Admission No. 183.**     Applying the facts as alleged by Plaintiffs, admit that in the consideration of design work for Federal Aid Project IR 10-8(134)82, the established patterns of drainage should have been examined.

**Request for Admission No. 184.**     Applying the facts as alleged by Plaintiffs, admit that for Federal Aid Project IR 10-8(134)82 the natural drainage pattern, including that beyond the vicinity of the proposed highway project, should have been studied either to minimize or avoid damage to adjacent property.

**Part C: Requests concerning Federal Aid Project NH 1602(470)**

**Request for Admission No. 185.**     Admit the fact that the lowest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) is higher than:

    a.   32 inches msl.

    b.   33 inches msl.

    c.   34 inches msl.

    d.   35 inches msl.

    e.   36 inches msl.

    f.   37 inches msl.

    g.   38 inches msl.

    h.   39 inches msl.

  i. 40 inches msl.

**Request for Admission No. 186.**  Admit the fact that you were required to comply with the requirements of the National Flood Insurance Act in performing your work on Federal Aid Project NH 1602(470).

**Request for Admission No. 187.**  Admit the fact that you were required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project NH 1602(470).

**Request for Admission No. 188.**  Admit the fact that you were required to comply with the requirements of 23 CFR Part 650 Subpart A in performing your work on Federal Aid Project NH 1602(470).

**Request for Admission No. 189.**  Admit the fact that your work on Federal Aid Project NH 1602(470) affected the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 190.**  Admit the fact that your work on Federal Aid Project NH 1602(470) raised the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 191.**  Admit the fact that your work on Federal Aid Project NH 1602(470) resulted in the grade line of IH-10 rising to a msl level higher than the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 192.**  Admit the fact that your work on Federal Aid Project NH 1602(470) installed a concrete traffic barrier that reaches a height greater than twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 193.**  Admit the fact that your work on Federal Aid Project NH 1602(470) resulted in the top of the grade line of IH-10 rising to a msl level twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**Request for Admission No. 194.** Admit the fact that the Federal Aid Project NH 1602(470) involved new drainage structures or the replacement of existing structures.

**Request for Admission No. 195.**  Admit the fact that as of January 1, 2015 construction work had not been completed for Federal Aid Project NH 1602(470).

**Request for Admission No. 196.**  Admit the fact that as of January 1, 2016 construction work had not been completed for Federal Aid Project NH 1602(470).

**Request for Admission No. 197.**  Admit the fact that as of January 1, 2017 construction work had not been completed for Federal Aid Project NH 1602(470).

**Request for Admission No. 198.**  Admit the fact that as of January 1, 2018 construction work had not been completed for Federal Aid Project NH 1602(470).

**Request for Admission No. 199.**  Admit the fact that as of January 1, 2019 construction work had not been completed for Federal Aid Project NH 1602(470).

**Request for Admission No. 200.**  Admit the fact that work done for Federal Aid Project NH 1602(470) was accomplished by you.

22

**Request for Admission No. 201.** Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was performed by you.

**Request for Admission No. 202.** Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was accomplished by your agents.

**Request for Admission No. 203.** Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was performed by your agents.

**Request for Admission No. 204.** Admit the fact that the work done pursuant to Federal Aid Project NH 1602(470) was for a "public use" as that term is interpreted and applied under Article I Section 17 of the Texas Constitution.

**Request for Admission No. 205.** Admit the fact that the work done pursuant to Federal Aid Project NH 1602(470) was for a "public use" as that term is interpreted and applied under the Fifth Amendment to the U.S. Constitution.

**Request for Admission No. 206.** Admit the fact that FIRM panel 48071C0275E (effective May 4, 2015), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**Request for Admission No. 207.** Admit the fact that FIRM panel 48071C0300E (effective May 4, 2015), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**Request for Admission No. 208.** Admit the fact that FIRM panel 4803850355E (map revised August 6, 2002), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**Request for Admission No. 209.** Admit the fact that one part of Federal Aid Project NH 1602(470) was the installation of a traffic median barrier.

**Request for Admission No. 210.** Admit the fact that you intended for the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) to be a permanent addition to IH-10.

**Request for Admission No. 211.** Admit the fact that the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) reaches a vertical height above the elevation of IH-10 prior to the work done for that Project.

**Request for Admission No. 212.** Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was in part to enhance public safety.

**Request for Admission No. 213.** Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was to enhance public safety.

**Request for Admission No. 214.** Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was in part to provide an evacuation route during a flooding emergency.

23

**Request for Admission No. 215.**      Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was to provide an evacuation route during a flooding emergency.

**Request for Admission No. 216.**      Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) to enhance public safety.

**Request for Admission No. 217.**      Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) to provide an evacuation route during a flooding emergency.

**Request for Admission No. 218.**      Admit the fact that you knew that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) would at least partially protect the eastbound lanes of IH-10 from flooding during a flooding emergency.

**Request for Admission No. 219.**      Admit the fact that you determined the weir-crest of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 220.**      Admit the fact that you determined the highest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 221.**      Admit the fact that as one part of Federal Aid Project NH 1602(470) you studied the **Antecedent Conditions** of the Operative Geographic Area.

**Request for Admission No. 222.**      Admit the fact that as one part of Federal Aid Project NH 1602(470) you studied the **Basic Hydrologic Data** of the Operative Geographic Area.

**Request for Admission No. 223.**      Admit the fact that you determined the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 224.**      Admit the fact that you determined the **Annual Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 225.**      Admit the fact that you determined the **Direct Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 226.**      Admit the fact that you prepared an **Event-Based Model** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 227.**      Admit the fact that you prepared a **Flood-Frequency Curve** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 228.**      Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 229.**      Admit the fact that you determined the **Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 230.**    Admit the fact that you determined the **Flood Peak** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 231.**    Admit the fact that you determined the **Flood Profile** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 232.**    Admit the fact that you determined the **Peak Stage** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 233.**    Admit the fact that you determined the **Peak Flow** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 234.**    Admit the fact that you determined the **Overland Flow** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 235.**    Admit the fact that you determined the **Direct Excess** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 236.**    Admit the fact that you determined the **Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 237.**    Admit the fact that you determined the **Surface Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 238.**    Admit the fact that you determined the **Direct Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 239.**    Admit the fact that you determined the **Effective Precipitation** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 240.**    Admit the fact that you prepared an **Event-Based Model** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 241.**    Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 242.**    Admit the fact that you determined the **Exceedance Probability** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 243.**    Admit the fact that you determined the **Peak Stage** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 244.**    Admit the fact that you determined the **Peak Flow** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 245.**    Admit the fact that you determined the **Overland Flow** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 246.**    Admit the fact that you determined the **Direct Excess** for

25

the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 247.**    Admit the fact that you determined the **Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 248.**    Admit the fact that you determined the **Surface Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**Request for Admission No. 249.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area.

**Request for Admission No. 250.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area.

**Request for Admission No. 251.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 252.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 253.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 254.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**Request for Admission No. 255.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 256.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 257.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 258.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

26

**Request for Admission No. 259.** Admit the fact that as you operate Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**Request for Admission No. 260.** Admit the fact that as you maintain Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**Request for Admission No. 261.** Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 262.** Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 263.** Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 264.** Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 265.** Admit the fact that as you operate Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**Request for Admission No. 266.** Admit the fact that as you maintain Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**Request for Admission No. 267.** Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Direct Runoff**.

**Request for Admission No. 268.** Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 269.** Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

27

**Request for Admission No. 270.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Surface Runoff**.

**Request for Admission No. 271.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Surface Runoff**.

**Request for Admission No. 272.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 273.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 274.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 275.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 276.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 277.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 278.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 279.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

28

**Request for Admission No. 280.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 281.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 282.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 283.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 284.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 285.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 286.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 287.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 288.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 289.**     Admit the fact that as you maintained Federal Aid Project

29

NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 290.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 291.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 292.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 293.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 294.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**Request for Admission No. 295.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 296.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**Request for Admission No. 297.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 298.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff.**

**Request for Admission No. 299.**     Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you were substantially certain that the traffic median

barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 300.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff.**

**Request for Admission No. 301.**     Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**Request for Admission No. 302.**     Applying the facts as alleged by Plaintiffs, admit that compliance with 23 C.F.R. 650, Subpart A was required with regard to your work on Federal Aid Project NH 1602(470).

**Request for Admission No. 303.**   Applying the facts as alleged by Plaintiffs, admit that Texas Water Code Chapter 16 Subchapter I required you to work with communities to prevent flood damage and minimize impacts from Federal Aid Project NH 1602(470).

**Request for Admission No. 304.**   Applying the facts as alleged by Plaintiffs, admit that compliance with Executive Order 11988 was required with regard to your work on Federal Aid Project NH 1602(470).

**Request for Admission No. 305.**   Applying the facts as alleged by Plaintiffs, admit that all drainage facilities for Federal Aid Project NH 1602(470) should have been designed for existing land use conditions.

**Request for Admission No. 306.**   Applying the facts as alleged by Plaintiffs, admit that drainage design for Federal Aid Project NH 1602(470) should have included capacity to convey **Runoff** from all existing adjacent properties.

**Request for Admission No. 307.**   Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it did not have a negative impact on facilities existing upstream of the project.

**Request for Admission No. 308.**   Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it did not have a negative impact on facilities neighboring the project.

**Request for Admission No. 309.**   Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it does not induce flooding during the event for which it was designed.

**Request for Admission No. 310.**   Applying the facts as alleged by Plaintiffs, admit that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for Federal Aid Project NH 1602(470).

**Request for Admission No. 311.**   Applying the facts as alleged by Plaintiffs, admit that all sources of potential risk should have been considered as part of the investigation for hydraulic structures

31

for Federal Aid Project NH 1602(470) .

**Request for Admission No. 312.**   Applying the facts as alleged by Plaintiffs, admit that the required documentation for Federal Aid Project NH 1602(470)  includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**Request for Admission No. 313.**   Applying the facts as alleged by Plaintiffs, admit that a report for Federal Aid Project NH 1602(470) should have been completed as described in the TxDOT document "Recommended Format for Drainage Reports."

**Request for Admission No. 314.**     Applying the facts as alleged by Plaintiffs, admit that hydraulic reports for Federal Aid Project NH 1602(470) should be retained in the District or Area Office project file for permanent reference.

**Request for Admission No. 315.**     Applying the facts as alleged by Plaintiffs, admit that some hydrologic analysis was necessary for Federal Aid Project NH 1602(470).

**Request for Admission No. 316.**     Applying the facts as alleged by Plaintiffs, admit that in the consideration of design work for Federal Aid Project NH 1602(470), the established patterns of drainage should have been examined.

**Request for Admission No. 317.**     Applying the facts as alleged by Plaintiffs, admit that for Federal Aid Project NH 1602(470)  the natural drainage pattern, including that beyond the vicinity of the proposed highway project, should have been studied either to minimize or avoid damage to adjacent property.

Dated: July 22, 2020.                              Respectfully submitted,


                                                   /s/ E. Lawrence Vincent
                                                   Daniel H. Charest
                                                   TX Bar No. 24057803
                                                   SDTX No. 934267
                                                   E. Lawrence Vincent
                                                   TX Bar No. 20585590
                                                   SDTX *readmission pending*
                                                   Russell Herman
                                                   TX Bar No. 24083169
                                                   SDTX No. 2383214
                                                   BURNS CHAREST LLP
                                                   900 Jackson Street, Suite 500
                                                   Dallas, Texas 75202
                                                   Tel: (469) 904-4550
                                                   Fax: (469) 555-4002
                                                   dcharest@burnscharest.com
                                                   lvincent@burnscharest.com
                                                   rherman@burnscharest.com

32

Charles Irvine
SBN: 24055716
Mary Conner
SBN: 24050440
IRVINE & CONNER, PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
713-524-5165 (fax)
charles@irvineconner.com
mary@irvineconner.com

Lawrence G. Dunbar
SBN: 06209450
DUNBAR HARDER, PLLC
10590 West Office Drive, Suite 2000
Houston, Texas 77042
713-782-4646
713-782-5544 (fax)
ldunbar@dunbarharder.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Defendant on July 22, 2020 pursuant to the Federal Rules of Civil Procedure.

*/s/ E. Lawrence Vincent*
E. Lawrence Vincent

33

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

RICHARD & WENDY DEVILLIER, ET AL.,    §

Plaintiffs,    §
   §
v.    §   CIVIL ACTION NO. 3:20-cv-00223
   §
THE STATE OF TEXAS,    §
   §
Defendant.    §

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

TO:   Defendant The State of Texas by and through its counsel of record Glorieni M. Azeredo, Lisa McClaim Mitchell, Office of the Attorney General of Texas, 300 W. 15th St., MC-020, Transportation Division, Austin, Texas 78711-2548, glorieni.azeredo@oag.texas.gov, lisa.mitchell@oag.texas.gov.

Plaintiffs serve this First Set of Interrogatories on Defendant The State of Texas request Defendant respond in compliance with the Federal Rules of Civil Procedure.

### GENERAL INSTRUCTIONS

1.     To the extent any of these interrogatories are objectionable in whole or in part, each objection must be stated with particularity, including the reasons for the objection, the request must be answered to the extent it is not objectionable.

2.     In interpreting these requests, definitions, and instructions: any masculine, feminine, or neutral term includes all other genders; the singular includes the plural and vice versa; and "or," "and," "and/or," and "including" shall be read to bring within the scope of the request the broadest amount of information.

3.     If you refuse to answer any request based on an assertion of privilege, specifically set forth the nature and basis of the privilege claimed.

PLAINTIFFS' FIRST SET OF INTERROGATORIES           1

4.      If you choose to answer an interrogatory by reference to public records, your business records, or from a compilation, abstract or summary of your business records, and the burden of deriving or ascertaining the answer from those records is substantially the same for Plaintiffs as for you, the records from which the answer may be derived or ascertained must be specified in sufficient detail to permit Plaintiffs to locate and identify them as readily as you could.

## DEFINITIONS

5.      "You" or "Your," means Defendant The State of Texas and every person or agency acting or purporting to act on its behalf (including but not limited to the Texas Department of Transportation), including any of its officials, employees, agents, representatives, or attorneys (except to the extent the attorney-client privilege exists).

6.      "TxDOT" means the Texas Department of Transportation.

7.      "FHWA" means the Federal Highway Administration.

8.      "FEMA" means the Federal Emergency Management Agency.

9.      "NFIP" means the National Flood Insurance Program.

10.      "IH-10" means Interstate Highway 10, the southernmost cross-country highway in the American Interstate Highway System.

11.      "Petition" means and refers to *Plaintiffs' Original Petition*, filed in this action, and any amendments or supplements thereto.

12.      "Projects" means Federal Aid Project IR 10-8(134)824, and Federal Aid Project NH 1602(470).

13.      Federal Aid Project IR 10-8(134)824 means all efforts performed in connection with or evidencing the design, construction, operation, and maintenance of IH-10 pursuant to CSJ 0508-03-066 and CSJ 0739-01-029.

PLAINTIFFS' FIRST SET OF INTERROGATORIES                                          2

14. Federal Aid Project NH 1602(470) means all efforts performed in connection with or evidencing the design, construction, operation, and maintenance of IH-10 pursuant to 0739-01-039 and CSJ 0739-02-160.

15. "Operative Geographic Area" means area in Chambers County, Texas that is encompassed by Texas State Highway 61 on the west, by the Chambers County line on the north and east, and by IH-10 on the east and south.

16. "TxDOT HYDRAULIC DESIGN MANUAL" means the publication prepared by the Texas Department of Transportation, as updated Sept. 2019 and available at http://onlinemanuals.txdot.gov/txdotmanuals/hyd/hyd.pdf (last accessed April 23, 2020).

17. "Harvey" means the hurricane/tropical storm denoted as FEMA Incident DR-4332 and described and discussed at https://www.fema.gov/disaster/4332 and the links on that page.

18. "Imelda" means the hurricane/tropical storm denoted as FEMA Incident DR-4332 and described and discussed at https://www.fema.gov/disaster/4466 and the links on that page.

19. "MSL," "msl," or "mean sea level" means the average location of the interface between ocean and atmosphere over a period of time sufficiently long so that all random and periodic variations of short duration average to zero as measured by the North American Vertical Datum of 1988 ("NAVD 88").

20. "Floodplain" means that land out-side of a stream channel described by the perimeter of the maximum probable flood under consideration for the project.

21. All other terms contained in a request that are **Capitalized and in bold font** shall be defined and applied as each is defined in the Glossary of Hydrology Terms, Chapter 4, Section 15 of the TxDOT HYDRAULIC DESIGN MANUAL. Any other term in these requests which you find unclear shall be defined and applied as it is defined and/or used in the TxDOT HYDRAULIC DESIGN MANUAL.

22.     The term "communication" means any oral or written statement, including but not limited to communications by text message, email, telephone, letters, internet, and face-to-face. Any written communication shall also be considered a "document" for purposes of these requests.

23.     The term "person" means any natural person, state agency, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, or other business, legal or governmental entity or association, including any directors, officers, employees, agents or representatives thereof.

24.     The terms "identify" or "describe," when referring to a person means to state:

      a.     The full name;

      b.     The present or last known residential address and residential telephone number;

      c.     The present or last known office address and office telephone number;

      d.     The occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request; and

      e.     In the case of any entity, identify the officer, employee, or agent most closely connected with the subject matter of the request and the officer who is responsive for supervising that officer or employee.

25.     The terms "identify" or "describe," when referring to a document or communication means to state:

      a.     The nature (e.g., letter, handwritten note) of the document;

      b.     The title or heading that appears on the document;

      c.     The date of the document and the date of each addendum, supplement, or other addition or charge;

      d.     The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction that document was prepared or delivered;

      e.     The present location of the document, and the name, address, position or title, and telephone number of the person or persons having custody of the document.

26.     "Relating to," "related to," "referred to," "evidencing," and "as respects" means discussing, describing, alluding to, referring to, pertaining to, in connection with, containing,

PLAINTIFFS' FIRST SET OF INTERROGATORIES                                          4

analyzing, studying, reporting on, commenting on, constituting, setting forth, considering, summarizing, or concerning, whether in whole or in part.

## INTERROGATORIES

**INTERROGATORY NO 1.** Identify each document relating to the hydrology of any portion of the Operative Geographic Area that you consulted, reviewed, analyzed, studied, or examined in connection with the design, construction, modification, or maintenance of either of the Projects.

**Response:**

**INTERROGATORY NO 2.** Identify each individual responsible for consulting, reviewing, analyzing, considering, studying, or examining any impact on the hydrology of any portion of the Operative Geographic Area by the design, construction, modification, or maintenance of either of the Projects.

**Response:**

**INTERROGATORY NO 3.** If you contend that the flooding on the property of any portion of the Operative Geographic Area during either Harvey or Imelda was not caused by the design, construction, modification, or maintenance of either of the Projects, state the factual basis for your contention and identify each document upon which you relied in providing your response.

**Response:**

**INTERROGATORY NO 4.** Identify any communication that you have received since January 1, 2015 regarding or referring to the flooding of any portion of the Operative Geographic Area.

**Response:**

PLAINTIFFS' FIRST SET OF INTERROGATORIES                                    5

**INTERROGATORY NO 5.** With regard to each Project, please identify the:

    a.   Design Engineer(s);

    b.   Consultant Engineer(s);

    c.   Contract Manager(s);

    d.   Project Manager(s); and

    e.   District Hydraulics Engineer(s).

**Response:**

**INTERROGATORY NO 6.** What are the highest and lowest values or measurements of the Base Flood Elevation for the Operative Geographic Area.

**Response:**

**INTERROGATORY NO 7.** Identify each person who provided information upon which you formulated your response to any discovery request served on you on July 22, 2020 and delineate those request(s) for which each person identified provided information.

**Response:**

PLAINTIFFS' FIRST SET OF INTERROGATORIES                                    6

Dated: July 22, 2020.                          Respectfully submitted,


                                               /s/ E. Lawrence Vincent
                                               Daniel H. Charest
                                               TX Bar No. 24057803
                                               SDTX No. 934267
                                               E. Lawrence Vincent
                                               TX Bar No. 20585590
                                               SDTX *readmission pending*
                                               Russell Herman
                                               TX Bar No. 24083169
                                               SDTX No. 2383214
                                               BURNS CHAREST LLP
                                               900 Jackson Street, Suite 500
                                               Dallas, Texas 75202
                                               Tel: (469) 904-4550
                                               Fax: (469) 555-4002
                                               dcharest@burnscharest.com
                                               lvincent@burnscharest.com
                                               rherman@burnscharest.com

                                               Charles Irvine
                                               SBN: 24055716
                                               Mary Conner
                                               SBN: 24050440
                                               IRVINE & CONNER, PLLC
                                               4709 Austin Street
                                               Houston, Texas 77004
                                               713-533-1704
                                               713-524-5165 (fax)
                                               charles@irvineconner.com
                                               mary@irvineconner.com

                                               Lawrence G. Dunbar
                                               SBN: 06209450
                                               DUNBAR HARDER, PLLC
                                               10590 West Office Drive, Suite 2000
                                               Houston, Texas 77042
                                               713-782-4646
                                               713-782-5544 (fax)
                                               ldunbar@dunbarharder.com

                                               *Counsel for Plaintiffs*


PLAINTIFFS' FIRST SET OF INTERROGATORIES                                    8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Defendant on July 22, 2020 pursuant to the Federal Rules of Civil Procedure.


*/s/ E. Lawrence Vincent*
E. Lawrence Vincent

STATE'S
EXHIBIT

B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, ET AL | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:20-CV-00223 |
| | § | |
| THE STATE OF TEXAS | § | |
| *Defendant* | § | |

**DEFENDANT THE STATE OF TEXAS'S OBJECTIONS AND
RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS**

TO:    Plaintiffs, Richard Allen Devillier, et al, by and through their attorneys of record, Daniel H. Charest / E. Lawrence (Larry) Vincent, 900 Jackson Street, Suite 500, Dallas, Texas 75202 and Charles Irvine / Mary Conner, Irvine & Conner, PLLC, 4709 Austin Street, Houston, Texas 77004 and Lawrence G. Dunbar, Dunbar Harder, PLLC, 10590 West Office Drive, Suite 2000, Houston, Texas 77042.

Pursuant to Federal Rules of Civil Procedure, Defendant hereby responds to Plaintiffs' First Set of Requests for Admissions.

Respectfully submitted,


KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

ESTEBAN S.M. SOTO
Chief, Transportation Division

/s/ *Glorieni M. Azeredo*

GLORIENI M. AZEREDO
Assistant Attorney General
Southern Dist. No. 3339635
State Bar No. 24077840
LISA MCCLAIN MITCHELL
Assistant Attorney General
Southern Dist. No. 572948
State Bar No. 90001724
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548
512-936-1175 (Azeredo)
512-936-1431 (Mitchell)
512-936-0888 – Fax
Email: glorieni.azeredo@oag.texas.gov
Email: lisa.mitchell@oag.texas.gov

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

This is to certify that on September 21, 2020, a true and correct copy of the foregoing document was sent to the following:

**Via E-Serve**
Daniel H. Charest
E. Lawrence (Larry) Vincent
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
469-444-5002 – Fax
Via Email: dcharest@burnscharest.com
Via Email: lvincent@burnscharest.com

*Counsel for Plaintiffs*

**Via E-Serve**
Lawrence G. Dunbar
Dunbar Harder, PLLC
10590 West Office Drive, Suite 2000
Houston, Texas 77042
713-782-4646
713-782-5544 – Fax
Via Email: ldunbar@dunbarharder.com

*Counsel for Plaintiffs*

**Via E-Serve**
Charles Irvine
Mary Conner
Irvine & Conner, PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
713-524-5165 – Fax
Via Email: charles@irvineconner.com
Via Email: mary@irvineconner.com

*Counsel for Plaintiffs*

/s/ *Glorieni M. Azeredo*
GLORIENI M. AZEREDO
Assistant Attorney General

## OBJECTIONS AND RESPONSES TO FIRST SET OF REQUESTS FOR ADMISSIONS

*Part A: General requests.*

**Request for Admission No. 1.**    Admit the fact that the definition of a floodplain encroachment, as used with regard to the NFIP, includes the modification or addition of traffic median barriers.

**RESPONSE: Admit.**

**Request for Admission No. 2.**    Admit the fact that the definition of a floodplain encroachment, as used with regard to the NFIP, includes the modification or addition of traffic median barriers whether the structure interferes with flood waters or not.

**RESPONSE: The State admits that the definition of a floodplain encroachment, as used with regard to the NFIP, includes the modification or addition of traffic median barriers. However, the State denies the remainder of the request.**

**Request for Admission No. 3.**    Admit the fact that you have possession of a map which shows the highest point of elevation in the Operative Geographic Area.

**RESPONSE: The State admits that TxDOT has possession of a map which shows the highest point of elevation in the Operative Geographic Area. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 4.**    Admit the fact that you have possession of sufficient information from which you can determine the highest point of elevation in the Operative Geographic Area.

**RESPONSE: The State admits that TxDOT has possession of sufficient information from which you can determine the highest point of elevation in the Operative Geographic Area. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 5.**    Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 1990 was below:

  a. 32 inches msl.

**RESPONSE: Deny.**

  b. 33 inches msl.

**RESPONSE: Deny.**

  c. 34 inches msl.

**RESPONSE: Deny.**

  d. 35 inches msl.

**RESPONSE: Deny.**

  e. 36 inches msl.

**RESPONSE: Deny.**

  f. 37 inches msl.

**RESPONSE: Deny.**

     g.  38 inches msl.

**RESPONSE: Deny.**

     h.  39 inches msl.

**RESPONSE: Deny.**

     i.  40 inches msl.

**RESPONSE: Deny.**

**Request for Admission No. 6.**   Admit the fact that the highest point of elevation in the Operative Geographic Area on January 1, 2016 was below:

     a.  32 inches msl.

**RESPONSE: Deny.**

     b.  33 inches msl.

**RESPONSE: Deny.**

     c.  34 inches msl.

**RESPONSE: Deny.**

     d.  35 inches msl.

**RESPONSE: Deny.**

     e.  36 inches msl.

**RESPONSE: Deny.**

     f.  37 inches msl.

**RESPONSE: Deny.**

     g.  38 inches msl.

**RESPONSE: Deny.**

     h.  39 inches msl.

**RESPONSE: Deny.**

     i.  40 inches msl.

**RESPONSE: Deny.**

**Request for Admission No. 7.**   Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 2017 was below:

     a.  32 inches msl.

**RESPONSE: Deny.**

     b.  33 inches msl.

**RESPONSE: Deny.**

     c.  34 inches msl.

**RESPONSE: Deny.**

    d.  35 inches msl.

**RESPONSE: Deny.**

    e.  36 inches msl.

**RESPONSE: Deny.**

    f.  37 inches msl.

**RESPONSE: Deny.**

    g.  38 inches msl.

**RESPONSE: Deny.**

    h.  39 inches msl.

**RESPONSE: Deny.**

    i.  40 inches msl.

**RESPONSE: Deny.**

**Request for Admission No. 8.**    Admit the fact that the highest point of elevation in the Operative Geographic Area on August 1, 2019 was below:

    a.  32 inches msl.

**RESPONSE: Deny.**

    b.  33 inches msl.

**RESPONSE: Deny.**

    c.  34 inches msl.

**RESPONSE: Deny.**

    d.  35 inches msl.

**RESPONSE: Deny.**

    e.  36 inches msl.

**RESPONSE: Deny.**

    f.  37 inches msl.

**RESPONSE: Deny.**

    g.  38 inches msl.

**RESPONSE: Deny.**

    h.  39 inches msl.

**RESPONSE: Deny.**

    i.  40 inches msl.

**RESPONSE: Deny.**

**Request for Admission No. 9.**        Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Direct Runoff** throughout the Operative Geographic Area on January 1, 1990.

**RESPONSE: The State admits that TxDOT had possession of or access to sufficient information from which it could have determined the direction of Direct Runoff for the property it owned in the Operative Geographic Area on January 1, 1990. The State denies it had possession of or access to sufficient information from which it could have determined the direction of Direct Runoff throughout the Operative Geographic Area on January 1, 1990. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 10.**        Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Direct Runoff** throughout the Operative Geographic Area on January 1, 2016.

**RESPONSE: The State admits that TxDOT had possession of or access to sufficient information from which it could have determined the direction of Direct Runoff for the property it owned in the Operative Geographic Area on January 1, 2016. The State denies it had possession of or access to sufficient information from which it could have determined the direction of Direct Runoff throughout the Operative Geographic Area on January 1, 2016. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 11.**     Admit the fact that you knew that **Direct Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 1990.

**RESPONSE: The State admits that TxDOT generally knew that Direct Runoff throughout the Operative Geographic Area flowed from north to south on January 1, 1990. The State also admits that it knew the Direct Runoff flowed from north to south on January 1, 1990 for property it owned. The State denies that it knew for certain that Direct Runoff throughout the Operative Geographic Area flowed from north to south on January 1, 1990. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 12.**     Admit the fact that you knew that **Direct Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 2016.

**RESPONSE: The State admits that TXxDOT generally knew the Direct Runoff throughout the Operative Geographic Area flowed from north to south on January 1, 2016. The State also admits that it knew the Direct Runoff flowed from north to south on January 1, 2016 for property it owned. The State denies that it knew for certain that Direct Runoff throughout the Operative Geographic Area flowed from north to south on January 1, 1990. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 13.**        Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Surface Runoff** throughout the Operative Geographic Area on January 1, 1990.

**RESPONSE: The State admits that TxDOT had possession of or access to sufficient information from which it could have determined the direction of Surface Runoff for the property it owned in the Operative Geographic Area on January 1, 1990. The State denies it had possession of or access to sufficient information from which it could have determined the direction of Surface Runoff throughout the Operative Geographic Area on January 1, 1990.**

**Request for Admission No. 14.**     Admit the fact that you had possession of or access to sufficient information from which you could have determined the direction of **Surface Runoff** throughout the Operative Geographic Area on January 1, 2016.

**RESPONSE: The State admits that it had possession of or access to sufficient information from which it could have determined the direction of Surface Runoff for the property it owned in the Operative Geographic Area on January 1, 2016. The State denies it had possession of or access to sufficient information from which it could have determined the direction of Surface Runoff throughout the Operative Geographic Area on January 1, 2016.**

**Request for Admission No. 15.**     Admit the fact that you knew that the **Surface Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 1990.

**RESPONSE: The State admits that TxDOT knew the Surface Runoff in the property it owns flowed from north to south on January 1, 1990. The State denies that it knew this throughout the Operative Geographic Area. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 16.**     Admit the fact that you knew that **Surface Runoff** throughout the Operative Geographic Area flowed from north to south on January 1, 2016.

**RESPONSE: The State admits that TxDOT knew the Surface Runoff in the property it owns flowed from north to south on January 1, 2016. The State denies that it knew this throughout the Operative Geographic Area. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 17.** Admit the fact that prior to January 1, 2015 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**RESPONSE: Deny.**

**Request for Admission No. 18.** Admit the fact that prior to January 1, 2016 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**RESPONSE: Deny.**

**Request for Admission No. 19.** Admit the fact that prior to January 1, 2017 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**RESPONSE: Deny.**

**Request for Admission No. 20.** Admit the fact that prior to January 1, 2018 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**RESPONSE: The State admits that TxDOT employees were told prior to January 1, 2018 by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 21.** Admit the fact that prior to January 1, 2019 you were told by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10.

**RESPONSE: The State admits that TxDOT employees were told prior to January 1, 2019 by citizens of Chambers County that their property had been flooded by rainfall runoff retained by the traffic median barrier installed in the center of IH-10. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 22.**    Admit the fact that TxDOT hydraulic engineers should review the potential liabilities stemming from the impact of any highway project on a **Floodplain**.

**RESPONSE: Admit.**

**Request for Admission No. 23.**    Admit the fact that the rehabilitation or maintenance of a roadway resulting in a higher profile must be checked for consistency with the federal

requirements regarding the impact of a highway on a **Floodplain**.

**RESPONSE: Admit.**

**Request for Admission No. 24.**    Admit the fact that compliance with 23 C.F.R. 650, Subpart A is required when a proposed project includes a new or expanded encroachment on a **Floodplain** regulated by FEMA.

**RESPONSE: Admit.**

**Request for Admission No. 25.**    Admit the fact that compliance with 23 C.F.R. 650, Subpart A is required when a proposed project contains the potential for adversely impacting private property on or near a **Floodplain**.

**RESPONSE: Admit.**

**Request for Admission No. 26.**    Admit the fact that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency.

**RESPONSE: Admit.**

**Request for Admission No. 27.**    Admit the fact that you have not negotiated a Memorandum of Understanding for hydraulic design with any federal agency.

**RESPONSE: The State admits that TxDOT has a Memorandum of Understanding with FHWA over NEPA compliance, which includes floodplains and hydraulic designs. The State admits that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request as to those entities.**

**Request for Admission No. 28.**    Admit the fact that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency which permits any variance from any requirements imposed by federal regulations on a TxDOT project.

**RESPONSE: The State admits that TxDOT has a Memorandum of Understanding with FHWA over NEPA compliance, which includes floodplains and hydraulic designs. The State admits that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request as to those entities.**

**Request for Admission No. 29.**    Admit the fact that you have not negotiated a Memorandum of Understanding for hydraulic design with any federal agency which permits any variance from any requirements imposed by federal regulations on any of your projects.

**RESPONSE: The State admits that TxDOT has a Memorandum of Understanding with FHWA over NEPA compliance, which includes floodplains and hydraulic designs. The State admits that TxDOT has not negotiated a Memorandum of Understanding for hydraulic design with any federal agency. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request as to those entities.**

**Request for Admission No. 30.**    Admit the fact that Texas Water Code Chapter 16 Subchapter I requires TxDOT to work with communities to prevent flood damage and minimize impacts from its projects.

**RESPONSE: The State objects to this request because it calls for a legal conclusion.**

**Request for Admission No. 31.**    Admit the fact that Executive Order 11988 requires TxDOT to consider alternatives to its actions that will not impact a **Floodplain**.

**RESPONSE: The State objects to this request because it calls for a legal conclusion.**

**Request for Admission No. 32.**    Admit the fact that all drainage facilities must be designed for existing land use conditions.

**RESPONSE: The State admits that at the time of design, all drainage facilities must be designed for existing land use conditions. The State denies the request to the extent it go beyond the time of design. After making a reasonable inquiry, the information the State knows or can readily obtain from other state agencies or governmental entities is insufficient to enable the State to admit or deny this request as to those entities.**

**Request for Admission No. 33.**    Admit the fact that drainage design must include capacity to convey **Runoff** from all existing adjacent properties.

**RESPONSE: Deny.**

Cause#20DCV0300 - Def's RRFA to Plfs - Page 13

**Request for Admission No. 34.**     Admit the fact that TxDOT drainage projects must be designed so that they do not have a negative impact on facilities existing upstream of the project.

**RESPONSE: The State admits that TXDOT drainage projects must be designed so that the projects do not cause an adverse flooding impact on facilities existing upstream of the project. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics.**

**Request for Admission No. 35.**     Admit the fact that TxDOT drainage projects must be designed so that they do not have a negative impact on facilities neighboring the project.

**RESPONSE: The State admits that TXDOT drainage projects must be designed so that the projects do not cause an adverse flooding impact on facilities neighboring the project. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics.**

**Request for Admission No. 36.**     Admit the fact that a TxDOT proposed project must not induce flooding during the event for which it was designed.

**RESPONSE: The State admits that a TXDOT proposed drainage project must not induce flooding during the event for which it was designed. The State denies this to the extent "a TxDOT proposed project" includes proposed projects outside drainage projects.**

**Request for Admission No. 37.** Admit the fact that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for projects involving new drainage structures or replacement of existing structures.

**RESPONSE: The State admits this response, but qualifies its admit by stating that the Hydraulic Design Manual provides a great deal of flexibility and interpretation to allow designer to appropriately manage a rang of situations.**

**Request for Admission No. 38.**     Admit the fact that for the purposes of the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual, "risk" is defined as the consequences associated with the probability of flooding attributable to the project.

**RESPONSE: Admit.**

**Request for Admission No. 39.** Admit the fact that for the purposes of the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual, "risk" includes the potential for property loss and hazard to life during the service life of IH-10.

**RESPONSE: Admit.**

**Request for Admission No. 40.** Admit the fact that all sources of potential risk should be considered as part of the investigation for hydraulic structures for a TxDOT project in order to determine whether modified site-specific standards or criteria are appropriate for that project.

**RESPONSE: The State admits this request but qualifies its admit by stating that, according to the TXDOT Hydraulic Design Manual Chapter 3, § 3, paragraphs 4 and 5, describe the risk assessment that projects will need to go through based on the type of project. In addition, the Hydraulic Design Manual states "[t]the nature and scope of hydraulic analysis and design work varies depending on**

Cause#20DCV0300 - Def's RRFA to Plfs - Page 14

the type of project being undertaken and on the hydrologic/hydraulic setting of the project."

**Request for Admission No. 41.** Admit the fact that the required documentation for the hydraulic analysis and design of a project includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**RESPONSE: The State admits that a key element of hydraulic documentation should typically include past performance of existing facilities at the subject location which may include the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason). The State denies that this is required or that it must include the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).**

**Request for Admission No. 42.** Admit the fact that a report providing the contents described in the TxDOT document "Recommended Format for Drainage Reports" is required for any bridge replacement or rehabilitation project impacting NFIP floodplains mapped as Zone A or Zone AE.

**RESPONSE: The State admits that a detailed report is required for any bridge replacement or rehabilitation project, and that the TXDOT document "Recommended Format for Drainage Reports" describes the expected content of a report in that context. The State denies the remainder of the admission.**

**Request for Admission No. 43.** Admit the fact that a detailed report providing the contents described in the TxDOT document "Recommended Format for Drainage Reports" is required for any roadway project impacting NFIP floodplains mapped as Zone A or Zone AE.

**RESPONSE: The State admits that a detailed report is required for any roadway project impacting NFIP floodplains mapped as Zone A or Zone AE, and that the TXDOT document "Recommended Format for Drainage Reports" describes the expected content of a report in that context. The State denies the remainder of the admission.**

**Request for Admission No. 44.** Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference.

**RESPONSE: Admit.**

**Request for Admission No. 45.** Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference since the need for such records may not arise until years after the project has been completed.

**RESPONSE: Admit.**

**Request for Admission No. 46.** Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference to provide justification of design decisions in cases of future litigation.

**RESPONSE: Admit.**

**Request for Admission No. 47.** Admit the fact that hydraulic reports for a project should be retained in the District or Area Office project file for permanent reference to provide proof of intended compliance with regulations such as NFIP rules.

**RESPONSE: Admit.**

**Request for Admission No. 48.**     Admit as to each that the following documentation constitutes a part of a project's permanent file:

a.    Drainage area map(s) showing boundaries, outfalls, and flow paths;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

b.    Documents demonstrating relevant watershed parameters;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

c.    Documents demonstrating the hydraulic assumptions and limitations;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

d.    Documents demonstrating the hydrologic method(s) used;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

e.    Documents demonstrating the hydrologic calculations;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

f.    Documents demonstrating peak discharges for design floods;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information**

g.    Documents demonstrating peak discharges for check floods;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

h.    Runoff hydrographs for design floods;

**RESPONSE: The State admits that this documentation constitutes a part of a project's permanent file where applicable. The State denies the request to the extent it assumes that every project would generate this information.**

i.    Runoff hydrographs for check floods;

**RESPONSE: The State admits that this documentation constitutes a part of a project's permanent file where applicable. The State denies the request to the extent it assumes that every project would generate this information.**

j.    Documents demonstrating the design criteria for culverts;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

k.    Documents demonstrating the culvert hydraulic computations;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

l.    Documents demonstrating the through-culvert velocities for design floods;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

m.    Documents demonstrating the unconstructed and through-culvert velocities for check floods;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

n.    Documents demonstrating the estimated distance upstream of any backwater effect;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

o.    Documents demonstrating the magnitude and frequency of overtopping flood;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

p.    Drainage area maps;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

q.    Documents demonstrating locations where storm water will discharge from the project;

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

r.    Documents demonstrating the acres of disturbed area that will drain to each discharge point;

**RESPONSE: The State admits that the documentation listed in r constitutes a part of a project's permanent file, but alternatively it could be included in the SW39 Summary Sheet. The State denies the request to the extent it assumes that every project would generate this information.**

s.    Documents demonstrating the total acreage of the Project area.

**RESPONSE: The State admits that this constitutes a part of a project's permanent file to the extent the project requires such information. The State denies the request to the extent it assumes that every project would generate this information.**

**Request for Admission No. 49.**    Admit the fact that some hydrologic analysis is necessary for all highway drainage facilities.

**RESPONSE: the State admits that some hydrologic analysis is necessary to design a highway drainage facility where the project is a new drainage facility or modification of an existing drainage facility. The State denies the request to the extent it refers to "all highway drainage facilities."**

Cause#20DCV0300 - Def's RRFA to Plfs - Page 17

**Request for Admission No. 50.** Admit the fact that drainage design must include capacity to convey runoff from all existing adjacent properties.

**RESPONSE: The State admits that drainage design must include capacity to convey runoff from all existing adjacent properties based on existing land use conditions at the time of the design. The State denies this to the extent it touches on future land use conditions for existing adjacent properties.**

**Request for Admission No. 51.** Admit the fact that in the consideration of design work on existing roadways, the established patterns of drainage must be examined.

**RESPONSE: The State denies this request to the extent the design work on existing roadways will not foreseeably impact the established patterns of drainage (such as restriping, illumination, or signage). The State admits this request otherwise.**

**Request for Admission No. 52.** Admit the fact that the natural drainage pattern, including that beyond the vicinity of the proposed highway project, must be studied either to minimize or avoid damage to adjacent property.

**RESPONSE: The State denies this request to the extent the natural drainage pattern would not be impacted in the proposed highway project (such as restriping, illumination, or signage). The State admits this request otherwise.**

**Request for Admission No. 53.**      Admit the fact that you do not own a flowage easement on the any of the properties owned by:

   a.    Richard & Wendy Devillier;

**RESPONSE: Admit.**

   b.    Steven & Rhonda Devillier;

**RESPONSE: Admit.**

   c.    Barbara Devillier;

**RESPONSE: Admit.**

   d.    David & Angela McBride;

**RESPONSE: Admit.**

   e.    Bert Hargraves;

**RESPONSE: Admit.**

   f.    Barney & Crystal Threadgill;

**RESPONSE: Admit.**

   g.    David Ray;

**RESPONSE: Admit.**

   h.    Gary Herman;

**RESPONSE: Admit.**

 i. Rhonda Glanzer;

**RESPONSE: Admit.**

 j. Chris & Darla Barrow;

**RESPONSE: Admit.**

 k. Dennis Dugat;

**RESPONSE: Admit.**

 l. Laurence Barron;

**RESPONSE: Admit.**

 m. Deanette Lemon;

**RESPONSE: Admit.**

 n. Jill Devillier White;

**RESPONSE: Admit.**

 o. Beverly Kiker;

**RESPONSE: Admit.**

 p. Yale Devillier;

**RESPONSE: Admit.**

 q. The Estate of Kyle H. Devillier;

**RESPONSE: Admit.**

 r. Charles Monroe;

**RESPONSE: Admit.**

 s. Jacob & Angela Fregia;

**RESPONSE: Admit.**

 t. Jerry & Mary Devillier;

**RESPONSE: Admit.**

 u. Zalphia Hankamer;

**RESPONSE: Admit.**

 v. Larry and Susan Bolich;

**RESPONSE: Admit.**

 w. Sheila Marino;

**RESPONSE: Admit.**

 x. William Meissner;

**RESPONSE: Admit.**

 y. Taylor McBride;

**RESPONSE: Admit.**

z.    Brian & Kathleen Abshier;

**RESPONSE: Admit.**

aa. Jina Daigle;

**RESPONSE: Admit.**

bb. Coulon Devillier;

**RESPONSE: Admit.**

cc. Hailey Ray Sr., Hailey Ray Jr. & Sheila Moor;

**RESPONSE: Admit.**

dd. John Rhame;

**RESPONSE: Admit.**

ee. Alex & Tammy Hargraves;

**RESPONSE: Admit.**

ff. William Devillier;

**RESPONSE: Admit.**

gg. Kyle & Allison Wagstaff;

**RESPONSE: Admit.**

**Part B: Requests concerning Federal Aid Project IR 10-8(134)824.**

**Request for Admission No. 54.**    Admit the fact that the lowest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 is higher than:

a.    32 inches msl.

**RESPONSE: Admit.**

b.    33 inches msl.

**RESPONSE: Admit.**

c.    34 inches msl.

**RESPONSE: Admit.**

d.    35 inches msl.

**RESPONSE: Admit.**

e.    36 inches msl.

**RESPONSE: Admit.**

f.    37 inches msl.

**RESPONSE: Admit.**

g.          38 inches msl.

**RESPONSE: Admit.**

h.          39 inches msl.

**RESPONSE: Admit.**

i.          40 inches msl.

**RESPONSE: Admit.**

**Request for Admission No. 55.**          Admit the fact that you were required to comply with the requirements of the National Flood Insurance Act in performing your work on Federal Aid Project IR 10-8(134)82.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 56.**          Admit the fact that you were required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State admits that it, through TxDOT, was required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project IR 10-8(134)82. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 57.**          Admit the fact that you were required to comply with the requirements of 23 CFR Part 650 Subpart A in performing your work on Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State admits to this request with the qualification that it, through TxDOT, was required to comply with the requirements of 23 CFR Part 650 Subpart A as it existed at the time of performing the work on Federal Aid Project IR 10-8(134)824. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 58.**          Admit the fact that your work on Federal Aid Project IR 10-8(134)82 affected the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits that it, through TxDOT's, work on Federal Aid Project IR 10-8(134)82 affected the Base Flood Elevation within the Operative Geographic Area. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 59.**     Admit the fact that your work on Federal Aid Project IR 10-8(134)82 raised the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 60.**     Admit the fact that your work on Federal Aid Project IR 10-8(134)82 resulted in the grade line of IH-10 rising to a msl level higher than the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 61.** Admit the fact that your work on Federal Aid Project IR 10- 8(134)82 installed a concrete traffic barrier that reaches a height greater than twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 62.**     Admit the fact that your work on Federal Aid Project IR 10-8(134)82 resulted in the top of the grade line of IH-10 rising to a msl level twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 63.**     Admit the fact that the Federal Aid Project IR 10-8(134)82 involved new drainage structures or the replacement of existing structures.

**RESPONSE: Admit.**

**Request for Admission No. 64.**     Admit the fact that work done for Federal Aid Project IR 10-8(134)824 was accomplished by you.

**RESPONSE: The State admits that the work done for Federal Aid Project IR 10- 8(134)824 was accomplished by TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 65.**     Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was performed by you.

**RESPONSE: The State admits that the work done for Federal Aid Project IR 10- 8(134)824 was performed by TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 66.**     Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was accomplished by your agents.

**RESPONSE: The State admits that the work done for Federal Aid Project IR 10- 8(134)824 was accomplished by TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 67.**      Admit the fact that work done pursuant to Federal Aid Project IR 10-8(134)824 was performed by your agents.

**RESPONSE: The State admits that the work done for Federal Aid Project IR 10- 8(134)824 was performed by TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 68.**      Admit the fact that the work done pursuant to Federal Aid Project IR 10-8(134)824 was for a "public use" as that term is interpreted and applied under Article I Section 17 of the Texas Constitution.

**RESPONSE: The State objects to this request as it calls for a legal conclusion.**

**Request for Admission No. 69.**      Admit the fact that the work done pursuant to Federal Aid Project IR 10-8(134)824 was for a "public use" as that term is interpreted and applied under the Fifth Amendment to the U.S. Constitution.

**RESPONSE: The State objects to this request as it calls for a legal conclusion.**

**Request for Admission No. 70.**      Admit the fact that FIRM panel 48071C0275E (effective May 4, 2015), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**RESPONSE: The State objects to this request because it mischaracterizes the timing of FIRM panel 48071C0275E and Federal Aid Project IR 10-8(134)824. FIRM Panel 48071C0275E was effective May 4, 2015, years after the completion of Federal Aid Project IR 10-8(134)824, and thus not applicable at the time of the project.**

**Request for Admission No. 71.**      Admit the fact that FIRM panel 48071C0300E (effective May 4, 2015), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**RESPONSE: The State objects to this request because it mischaracterizes the timing of FIRM panel 48071C0275E and Federal Aid Project IR 10-8(134)824. FIRM Panel 48071C0275E was effective May 4, 2015, years after the completion of Federal Aid Project IR 10-8(134)824, and thus not applicable at the time of the project.**

**Request for Admission No. 72.** Admit the fact that FIRM panel 4803850355E (map revised August 6, 2002), shows that a portion of Federal Aid Project IR 10-8(134)824 crosses a FEMA Special Flood Hazard Area.

**RESPONSE: The State objects to this request because it mischaracterizes the timing of FIRM panel 48071C0275E and Federal Aid Project IR 10-8(134)824. FIRM Panel 48071C0275E was effective May 4, 2015, years after the completion of Federal Aid Project IR 10-8(134)824, and thus not applicable at the time of the project.**

**Request for Admission No. 73.**    Admit the fact that one part of Federal Aid Project IR 10-8(134)824 was the installation of a traffic median barrier.

**RESPONSE: Admit.**

**Request for Admission No. 74.** Admit the fact that you intended for the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 to be a permanent addition to IH- 10.

**RESPONSE: The State admits that TxDOT intended for the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 to be a permanent addition to IH- 10. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 75.** Admit the fact that the top of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 reaches a vertical height above the elevation of IH-10 prior to the work done for that Project.

**RESPONSE: Admit.**

**Request for Admission No. 76.** Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was in part to enhance public safety.

**RESPONSE: Admit.**

**Request for Admission No. 77.** Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was in part to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 78.** Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was to enhance public safety.

**RESPONSE: Admit.**

**Request for Admission No. 79.** Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 was to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 80.** Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 to enhance public safety.

**RESPONSE: The State admits that it, through TxDOT, intended for the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824 to be a permanent addition to IH- 10. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 81.** Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 82.** Admit the fact that you knew that the installation of a traffic median barrier as one part of Federal Aid Project IR 10-8(134)824 would at least partially protect the eastbound lanes of IH-10 from flooding during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 83.** Admit the fact that you determined the weir-crest of the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: Deny.**

**Request for Admission No. 84.** Admit the fact that you determined the highest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project IR 10- 8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 85.** Admit the fact that as one part of Federal Aid Project IR 10- 8(134)824 you studied the **Antecedent Conditions** of the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 86.** Admit the fact that as one part of Federal Aid Project IR 10- 8(134)824 you studied the **Basic Hydrologic Data** of the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 87.** Admit the fact that you determined the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 88.** Admit the fact that you determined the **Annual Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 89.**     Admit the fact that you determined the **Direct Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 90.**     Admit the fact that you prepared an **Event-Based Model** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 91.**     Admit the fact that you prepared a **Flood-Frequency Curve** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: Deny.**

**Request for Admission No. 92.**     Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: Deny.**

**Request for Admission No. 93.**     Admit the fact that you determined the **Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 94.**     Admit the fact that you determined the **Flood Peak** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 95.**     Admit the fact that you determined the **Flood Profile** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits that Admit that the elevations that make up the Flood Profile were determined by TxDOT as one part of Federal Aid Project IR 10-8(134)824. After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny whether the Flood Profile was created by TxDOT.**

**Request for Admission No. 96.**     Admit the fact that you determined the **Peak Stage** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 97.**    Admit the fact that you determined the **Peak Flow** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 98.**    Admit the fact that you determined the **Overland Flow** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 99.**    Admit the fact that you determined the **Direct Excess** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 100.**    Admit the fact that you determined the **Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 101.**    Admit the fact that you determined the **Surface Runoff** for the **Design Flood** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 102.**    Admit the fact that you determined the **Direct Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 103.**    Admit the fact that you determined the **Effective Precipitation** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 104.**    Admit the fact that you prepared an **Event-Based Model** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 105.**    Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 106.**    Admit the fact that you determined the **Exceedance Probability** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 107.**    Admit the fact that you determined the **Peak Stage** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 108.**    Admit the fact that you determined the **Peak Flow** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 109.**    Admit the fact that you determined the **Overland Flow** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 110.**    Admit the fact that you determined the **Direct Excess** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 111.**    Admit the fact that you determined the **Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 112.**    Admit the fact that you determined the **Surface Runoff** for the **Design Storm** as one part of Federal Aid Project IR 10-8(134)824.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 113.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 114.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 115.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 116.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 117.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 118.**      Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 119.**      Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 120.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 121.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 122.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 123.**    Admit the fact that as you operate Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**RESPONSE: The State admits that after Tropical Storm Harvey, TxDOT knew as it operated Federal Aid Project IR 10- 8(134)824 the traffic median barrier installed as one part of that project will retain Direct Runoff. The State denies this request to the extent it refers to a time before Tropical Storm Harvey.**

**Request for Admission No. 124.** Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**RESPONSE: The State admits that after Tropical Storm Harvey, TxDOT knew as it maintained Federal Aid Project IR 10- 8(134)824 the traffic median barrier installed as one part of that project will retain Direct Runoff. The State denies this request to the extent it refers to a time before Tropical Storm Harvey.**

**Request for Admission No. 125.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 126.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 127.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 128.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 129.**    Admit the fact that at the time you constructed it, you knew that the traffic median barrier installed as one part of Federal Aid Project IR 10-8(134)824) would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 130.** Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 131.**    Admit the fact that as you operate Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 132.** Admit the fact that as you maintain Federal Aid Project IR 10-8(134)824, you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 133.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10- 8(134)824 would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 134.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10- 8(134)824 would retain **Direct Runoff**.

**RESPONSE: Deny.**

Cause#20DCV0300 - Def's RRFA to Plfs - Page 31

**Request for Admission No. 135.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 136.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 137.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10- 8(134)824 would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 138.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part Federal Aid Project IR 10- 8(134)824 would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 139.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 140.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 141.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 142.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 143.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 144.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 145.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 146.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 147.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 148.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 149.**      Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 150.**      Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 151.**      Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 152.**      Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 153.**      Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 154.**      Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 155.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 156.**     Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 157.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 158.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 159.**     Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.
**RESPONSE: Deny.**

**Request for Admission No. 160.**    Admit the fact that when you designed Federal Aid Project IR 10-8(134)824, you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 161.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 162.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 163.**     Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 164.**    Admit the fact that when you constructed Federal Aid Project IR 10-8(134)824, you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 165.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff.**

**RESPONSE: Deny.**

**Request for Admission No. 166.**    Admit the fact that when you operated Federal Aid Project IR 10-8(134)824 prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 167.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff.**

**RESPONSE: Deny.**

**Request for Admission No. 168.**    Admit the fact that as you maintained Federal Aid Project IR 10-8(134)824, prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 169.**    Applying the facts as alleged by Plaintiffs, admit that compliance with 23 C.F.R. 650, Subpart A was required with regard to your work on Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State admits to the remainder of the request with the qualification that it was required to comply with the requirements of 23 CFR Part 650 Subpart A as it existed at the time of performing the work on Federal Aid Project IR 10-8(134)824.**

**Request for Admission No. 170.**    Applying the facts as alleged by Plaintiffs, admit that Texas Water Code Chapter 16 Subchapter I required you to work with communities to prevent flood damage and minimize impacts from Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State objects to this request because it calls for a legal conclusion.**

**Request for Admission No. 171.** Applying the facts as alleged by Plaintiffs, admit that compliance with Executive Order 11988 was required with regard to your work on Federal Aid Project IR 10- 8(134)82.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 172.** Applying the facts as alleged by Plaintiffs, admit that all drainage facilities for Federal Aid Project IR 10-8(134)82 should have been designed for existing land use conditions.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 173.** Applying the facts as alleged by Plaintiffs, admit that drainage design for Federal Aid Project IR 10-8(134)82 should have included capacity to convey **Runoff** from all existing adjacent properties.

**RESPONSE: The State admits that drainage design for Federal Aid Project IR 10-8(134)82 should have included capacity to convey Runoff from all existing adjacent properties for the design year storm. The State denies this request to the extent it refers to anything outside the design year storm, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 174.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it did not have a negative impact on facilities existing upstream of the project.

**RESPONSE: The State admits that Federal Aid Project IR 10-8(134)82 should have been be designed so that the projects do not cause an adverse flooding impact on facilities existing upstream of the project. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 175.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it did not have a negative impact on facilities neighboring the project.

**RESPONSE: The State admits that Federal Aid Project IR 10-8(134)82 should have been be designed so that the projects do not cause an adverse flooding impact on facilities neighboring the project. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 176.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR 10-8(134)82 should have been designed so that it does not induce flooding during the event for which it was designed.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 177.** Applying the facts as alleged by Plaintiffs, admit that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State admits the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for Federal Aid Project IR 10-8(134)82 for the year the plans were sealed by the engineer of record. The State denies the request to the extent it refers to the Hydraulic Design Manual anytime outside the year the plans were sealed, since the Hydraulic Design Manual is updated, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 178.** Applying the facts as alleged by Plaintiffs, admit that all sources of potential risk should have been considered as part of the investigation for hydraulic structures for Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 179.** Applying the facts as alleged by Plaintiffs, admit that the required documentation for Federal Aid Project IR 10-8(134)82 includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. After making a reasonable inquiry, the information the State knows or can readily obtain is insufficient to enable the State to admit or deny this request.**

**Request for Admission No. 180.** Applying the facts as alleged by Plaintiffs, admit that a report for Federal Aid Project IR 10-8(134)82 should have been completed as described in the TxDOT document "Recommended Format for Drainage Reports."

**RESPONSE: The State admits that a report for Federal Aid Project IR 10-8(134)82 should have been completed as described in a document in accordance with the Hydraulic Design Manual applicable at that time of designing the project. The State denies this request to the extent it applies the current TxDOT document "Recommended Format for Drainage Reports" to the design of Federal Aid Project IR 10-8(134)82. The State also denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 181.** Applying the facts as alleged by Plaintiffs, admit that hydraulic reports for Federal Aid Project IR 10-8(134)82 should be retained in the District or Area Office project file for permanent reference.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 182.** Applying the facts as alleged by Plaintiffs, admit that some hydrologic analysis was necessary for Federal Aid Project IR 10-8(134)82.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 183.** Applying the facts as alleged by Plaintiffs, admit that in the consideration of design work for Federal Aid Project IR 10-8(134)82, the established patterns of drainage should have been examined.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 184.** Applying the facts as alleged by Plaintiffs, admit that for Federal Aid Project IR 10-8(134)82 the natural drainage pattern, including that beyond the vicinity of the proposed highway project, should have been studied either to minimize or avoid damage to adjacent property.

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**


**Part C: Requests concerning Federal Aid Project NH 1602(470)**

**Request for Admission No. 185.**    Admit the fact that the lowest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) is higher than:

a.    32 inches msl.

**RESPONSE: Admit.**

b.    33 inches msl.

**RESPONSE: Admit.**

c.    34 inches msl.

**RESPONSE: Admit.**

d.    35 inches msl.

**RESPONSE: Admit.**

e.    36 inches msl.

**RESPONSE: Admit.**

f.    37 inches msl.

**RESPONSE: Admit.**

g.    38 inches msl.

**RESPONSE: Admit.**

h.    39 inches msl.

**RESPONSE: Admit.**

i.    40 inches msl.

**RESPONSE: Admit.**

**Request for Admission No. 186.**    Admit the fact that you were required to comply with the requirements of the National Flood Insurance Act in performing your work on Federal Aid Project NH 1602(470).

Cause#20DCV0300 - Def's RRFA to Plfs - Page 39

**RESPONSE: The State admits that it, through TxDOT, was required to comply with the requirements of the National Flood Insurance Act in performing your work on Federal Aid Project NH 1602(470). The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 187.**     Admit the fact that you were required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project NH 1602(470).

**RESPONSE: The State admits that it, through TxDOT, was required to comply with the requirements of Presidential Executive Order 11988 in performing your work on Federal Aid Project NH 1602(470). The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 188.**     Admit the fact that you were required to comply with the requirements of 23 CFR Part 650 Subpart A in performing your work on Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 189.**     Admit the fact that your work on Federal Aid Project NH 1602(470) affected the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 190.**     Admit the fact that your work on Federal Aid Project NH 1602(470) raised the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 191.** Admit the fact that your work on Federal Aid Project NH 1602(470) resulted in the grade line of IH-10 rising to a msl level higher than the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 192.**     Admit the fact that your work on Federal Aid Project NH 1602(470) installed a concrete traffic barrier that reaches a height greater than twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 193.**     Admit the fact that your work on Federal Aid Project NH 1602(470) resulted in the top of the grade line of IH-10 rising to a msl level twelve inches (12") above the Base Flood Elevation within the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 194.**     Admit the fact that the Federal Aid Project NH 1602(470) involved new drainage structures or the replacement of existing structures.

**RESPONSE: Admit.**

**Request for Admission No. 195.**     Admit the fact that as of January 1, 2015 construction work had not been completed for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 196.**     Admit the fact that as of January 1, 2016 construction work had not been completed for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 197.**     Admit the fact that as of January 1, 2017 construction work had not been completed for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 198.**     Admit the fact that as of January 1, 2018 construction work had not been completed for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 199.**     Admit the fact that as of January 1, 2019 construction work had not been completed for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 200.**     Admit the fact that work done for Federal Aid Project NH 1602(470) was accomplished by you.

**RESPONSE: The State admits that the current work done for Federal Aid Project NH 1602(470) was accomplished by it through TXDOT and all contracted entities.**

**Request for Admission No. 201.**     Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was performed by you.

**RESPONSE: The State admits that the current work done for Federal Aid Project NH 1602(470) was performed by it through TXDOT and all contracted entities.**

**Request for Admission No. 202.**     Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was accomplished by your agents.

**RESPONSE: Admit.**

**Request for Admission No. 203.**     Admit the fact that work done pursuant to Federal Aid Project NH 1602(470) was performed by your agents.

**RESPONSE: Admit.**

**Request for Admission No. 204.**    Admit the fact that the work done pursuant to Federal Aid Project NH 1602(470) was for a "public use" as that term is interpreted and applied under Article I Section 17 of the Texas Constitution.

**RESPONSE: The State objects to this request as it calls for a legal conclusion.**

**Request for Admission No. 205.** Admit the fact that the work done pursuant to Federal Aid Project NH 1602(470) was for a "public use" as that term is interpreted and applied under the Fifth Amendment to the U.S. Constitution.

**RESPONSE: The State objects to this request as it calls for a legal conclusion.**

**Request for Admission No. 206.**    Admit the fact that FIRM panel 48071C0275E (effective May 4, 2015), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**RESPONSE: Admit.**

**Request for Admission No. 207.**    Admit the fact that FIRM panel 48071C0300E (effective May 4, 2015), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**RESPONSE: Admit.**

**Request for Admission No. 208.**    Admit the fact that FIRM panel 4803850355E (map revised August 6, 2002), shows that a portion of Federal Aid Project NH 1602(470) crosses a FEMA Special Flood Hazard Area.

**RESPONSE: Admit.**

**Request for Admission No. 209.**    Admit the fact that one part of Federal Aid Project NH 1602(470) was the installation of a traffic median barrier.

**RESPONSE: Admit.**

**Request for Admission No. 210.**    Admit the fact that you intended for the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) to be a permanent addition to IH-10.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 211.**    Admit the fact that the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) reaches a vertical height above the elevation of IH-10 prior to the work done for that Project.

**RESPONSE: Admit.**

**Request for Admission No. 212.**    Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was in part to enhance public safety.

**RESPONSE: Admit.**

**Request for Admission No. 213.**    Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was to enhance public safety.

**RESPONSE: Admit.**

**Request for Admission No. 214.**    Admit the fact that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was in part to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 215.**    Admit the fact that a benefit of the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) was to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny**

**Request for Admission No. 216.**    Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) to enhance public safety.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 217.**    Admit the fact that you intended for the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) to provide an evacuation route during a flooding emergency.

**RESPONSE: Deny.**

**Request for Admission No. 218.** Admit the fact that you knew that the installation of a traffic median barrier as one part of Federal Aid Project NH 1602(470) would at least partially protect the eastbound lanes of IH-10 from flooding during a flooding emergency.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 219.**    Admit the fact that you determined the weir-crest of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470).

**RESPONSE: Deny.**

**Request for Admission No. 220.**    Admit the fact that you determined the highest point of elevation of the top of the traffic median barrier installed as one part of Federal Aid Project NH 1602(470).

**RESPONSE: Deny.**

**Request for Admission No. 221.** Admit the fact that as one part of Federal Aid Project NH 1602(470) you studied the **Antecedent Conditions** of the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 222.** Admit the fact that as one part of Federal Aid Project NH 1602(470) you studied the **Basic Hydrologic Data** of the Operative Geographic Area.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 223.** Admit the fact that you determined the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 224.** Admit the fact that you determined the **Annual Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 225.** Admit the fact that you determined the **Direct Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 226.** Admit the fact that you prepared an **Event-Based Model** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 227.** Admit the fact that you prepared a **Flood-Frequency Curve** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: Deny.**

**Request for Admission No. 228.** Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: Deny.**

**Request for Admission No. 229.**      Admit the fact that you determined the **Exceedance Probability** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 230.**      Admit the fact that you determined the **Flood Peak** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 231.**      Admit the fact that you determined the **Flood Profile** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 232.**      Admit the fact that you determined the **Peak Stage** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 233.**      Admit the fact that you determined the **Peak Flow** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 234.**      Admit the fact that you determined the **Overland Flow** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 235.**      Admit the fact that you determined the **Direct Excess** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 236.**      Admit the fact that you determined the **Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 237.**    Admit the fact that you determined the **Surface Runoff** for the **Design Flood** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 238.**    Admit the fact that you determined the **Direct Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 239.**    Admit the fact that you determined the **Effective Precipitation** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 240.**    Admit the fact that you prepared an **Event-Based Model** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 241.**    Admit the fact that you prepared a **Flow-Duration Curve** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: Deny.**

**Request for Admission No. 242.**    Admit the fact that you determined the **Exceedance Probability** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 243.**    Admit the fact that you determined the **Peak Stage** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 244.**    Admit the fact that you determined the **Peak Flow** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 245.**    Admit the fact that you determined the **Overland Flow** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 246.**    Admit the fact that you determined the **Direct Excess** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 247.**    Admit the fact that you determined the **Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 248.**    Admit the fact that you determined the **Surface Runoff** for the **Design Storm** as one part of Federal Aid Project NH 1602(470).

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 249.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 250.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 251.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: Deny.**

**Request for Admission No. 252.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: Deny.**

**Request for Admission No. 253.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you determined the direction of **Direct Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: Deny.**

**Request for Admission No. 254.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you determined the direction of **Surface Runoff** throughout the Operative Geographic Area to be from north to south.

**RESPONSE: Deny.**

**Request for Admission No. 255.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 256.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 257.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 258.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 259.**    Admit the fact that as you operate Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 260.**    Admit the fact that as you maintain Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Direct Runoff**.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 261.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 262.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 263.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 264.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 265.**    Admit the fact that as you operate Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 266.**    Admit the fact that as you maintain Federal Aid Project NH 1602(470), you know that the traffic median barrier installed as one part of that project will retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 267.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Direct Runoff**.

**RESPONSE: The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 268.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 269.**      Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 270.**      Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 271.**      Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of Federal Aid Project NH 1602(470) would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 272.**      Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 273.**      Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 274.**      Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 275.**      Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 276.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 277.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 278.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 279.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 280.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 281.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you knew that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 282.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 283.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Admit.**

**Request for Admission No. 284.**                                        Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 285.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 286.**    Admit the fact that when you designed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 287.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 288.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 289.**    Admit the fact that as you maintained Federal Aid Project

NH 1602(470), prior to August 1, 2017, you had possession of or access to information from which you could have determined that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 290.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 291.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 292.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 293.**     Admit the fact that when you designed Federal Aid Project NH 1602(470), you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 294.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 295.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 296.**     Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff**.

**RESPONSE: Deny.**

**Request for Admission No. 297.**    Admit the fact that when you constructed Federal Aid Project NH 1602(470), you were substantially certain that that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 298.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff.**

**RESPONSE: Deny.**

**Request for Admission No. 299.**    Admit the fact that when you operated Federal Aid Project NH 1602(470) prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Direct Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 300.** Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff.**

**RESPONSE: Deny.**

**Request for Admission No. 301.**    Admit the fact that as you maintained Federal Aid Project NH 1602(470), prior to August 1, 2017, you were substantially certain that the traffic median barrier installed as one part of that project would retain **Surface Runoff** that would cause damage to a portion of the Operative Geographic Area.

**RESPONSE: Deny.**

**Request for Admission No. 302.**    Applying the facts as alleged by Plaintiffs, admit that compliance with 23 C.F.R. 650, Subpart A was required with regard to your work on Federal Aid Project NH 1602(470).

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State admits this to the extent "you" refers to it through TxDOT. The State denies this request to the extent "you" involves other state agencies or governmental entities.**

**Request for Admission No. 303.** Applying the facts as alleged by Plaintiffs, admit that Texas Water Code Chapter 16 Subchapter I required you to work with communities to prevent flood damage and minimize impacts from Federal Aid Project NH 1602(470).

**RESPONSE: The State objects to this request because it calls for a legal conclusion.**

**Request for Admission No. 304.** Applying the facts as alleged by Plaintiffs, admit that compliance with Executive Order 11988 was required with regard to your work on Federal Aid Project NH 1602(470).

**RESPONSE: The State objects to this request because it calls for a legal conclusion.**

**Request for Admission No. 305.** Applying the facts as alleged by Plaintiffs, admit that all drainage facilities for Federal Aid Project NH 1602(470) should have been designed for existing land use conditions.

**RESPONSE: The State admits that all drainage facilities for Federal Aid Project NH 1602(470) should have been designed for existing land use conditions at the time of the project's designs and the engineer's sealed plans. The State denies the request to the extent it refers to existing land uses after the time of design and sealed plans, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 306.** Applying the facts as alleged by Plaintiffs, admit that drainage design for Federal Aid Project NH 1602(470) should have included capacity to convey **Runoff** from all existing adjacent properties.

**RESPONSE: The State admits that drainage design for Federal Aid Project NH 1602(470) should have included capacity to convey Runoff from all existing adjacent properties based on the design storm year designed for. The State denies this request to the extent it refers to anything outside the design storm year planned for in Federal Aid Project NH 1602(470). The State also denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 307.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it did not have a negative impact on facilities existing upstream of the project.

**RESPONSE: The State admits that Federal Aid Project IR NH 1602(470) should have been be designed so that the projects do not cause an adverse flooding impact on facilities existing upstream of the project based on the design storm year planned for. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**
**Request for Admission No. 308.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it did not have a negative impact on facilities neighboring the project.

**RESPONSE: The State admits that Federal Aid Project IR NH 1602(470) should have been be designed so that the projects do not cause an adverse flooding impact on facilities neighboring the project based on the design storm year planned for. The State denies this request to the extent "negative impact" includes an impact outside of drainage, such as noise and aesthetics, and denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs.**

**Request for Admission No. 309.** Applying the facts as alleged by Plaintiffs, admit that Federal Aid Project IR NH 1602(470) should have been designed so that it does not induce flooding during the event for which it was designed.

Cause#20DCV0300 - Def's RRFA to Plfs - Page 55

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 310.** Applying the facts as alleged by Plaintiffs, admit that the standards and criteria presented in the Texas Department of Transportation Hydraulic Design Manual are the minimum standards and criteria acceptable for Federal Aid Project NH 1602(470).

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 311.** Applying the facts as alleged by Plaintiffs, admit that all sources of potential risk should have been considered as part of the investigation for hydraulic structures for Federal Aid Project NH 1602(470).

**RESPONSE: The State denies the request to the extent it seeks the State to admit to the facts as alleged by the Plaintiffs. The State otherwise admits the request.**

**Request for Admission No. 312.** Applying the facts as alleged by Plaintiffs, admit that the required documentation for Federal Aid Project NH 1602(470)  includes an evaluation of past performance of existing facilities at the subject location including the operation during flood events, structural response to flood events, failures, and maintenance required (and for what reason).

**RESPONSE: Admit.**

**Request for Admission No. 313.** Applying the facts as alleged by Plaintiffs, admit that a report for Federal Aid Project NH 1602(470) should have been completed as described in the TxDOT document "Recommended Format for Drainage Reports."

**RESPONSE: Admit.**

**Request for Admission No. 314.** Applying the facts as alleged by Plaintiffs, admit that hydraulic reports for Federal Aid Project NH 1602(470) should be retained in the District or Area Office project file for permanent reference.

**RESPONSE: Admit.**

**Request for Admission No. 315.** Applying the facts as alleged by Plaintiffs, admit that some hydrologic analysis was necessary for Federal Aid Project NH 1602(470).

**RESPONSE: Admit.**

**Request for Admission No. 316.** Applying the facts as alleged by Plaintiffs, admit that in the consideration of design work for Federal Aid Project NH 1602(470), the established patterns of drainage should have been examined.

**RESPONSE: Admit.**

**Request for Admission No. 317.** Applying the facts as alleged by Plaintiffs, admit that for Federal Aid Project NH 1602(470)  the natural drainage pattern, including that beyond the vicinity of the proposed highway project, should have been studied either to minimize or avoid damage to adjacent property.

**RESPONSE: Admit.**

**STATE'S EXHIBIT**

C

# *DRAINAGE ANALYSIS*

### *IH 10*
### *FROM WEST OF FM 1663 TO EAST OF BRUSH ISLAND ROAD*

### *CSJ: 0739-02-160 & 0739-01-039*

## *JEFFERSON/CHAMBERS COUNTIES*

### **Prepared for:**





Veronica N. Hodge   8-15-2016

**H & H RESOURCES, INC. (F-3678)**



**AUGUST 2016**

STATE 05217

# TABLE OF CONTENTS

**1    INTRODUCTION** ................................................................................................................ **1**

**1.1    PROJECT DESCRIPTION AND LOCATION** ............................................................ **1**

**1.2    PURPOSE** .................................................................................................................... **1**

**1.3    SCOPE OF WORK** ...................................................................................................... **1**

**1.4    ADDITIONAL PROJECT INFORMATION** .............................................................. **1**

**2    METHODOLOGY** ........................................................................................................... **2**

**2.1    HYDROLOGY** .............................................................................................................. **2**

**2.2    HYDRAULICS** ............................................................................................................. **4**

**3    CULVERT HYDRAULIC ANALYSIS** ....................................................................... **5**

**3.1    DESIGN FREQUENCY** ............................................................................................... **5**

**3.2    OUTFALL IDENTIFICATION** .................................................................................. **5**

**3.3    OUTFALL SUMMARY** .............................................................................................. **6**

3.3.1    Cross Culvert 1 ........................................................................................................6
3.3.2    Cross Culvert 2 ........................................................................................................6
3.3.3    Cross Culvert 5 ........................................................................................................7

**3.4    RESULTS SUMMARY** ............................................................................................... **7**

**4    FLOODPLAIN FILL** ...................................................................................................... **8**

**5    CONCLUSIONS AND RECOMMENDATIONS** ........................................................ **8**



STATE 05218

Drainage Analysis
IH 10 from West of FM 1663 to East of Brush Island Road                    CSJ: 0739-02-160 & 0739-01-039

## **APPENDICES**

APPENDIX A            MAYHAW BAYOU FIRM MAP

APPENDIX A-1         TxDOT CORRESPONDANCE FOR CULVERTS 3 AND 4

APPENDIX B            OVERALL DRAINAGE AREA MAP

APPENDIX C            HYDROLOGY COMPUTATIONS-RATIONAL AND HMS OUTPUT

APPENDIX D            CULVERT HYDRAULIC DATA SHEETS

APPENDIX E            FLOODPLAIN FILL CALCULATIONS

APPENDIX F            CD WITH ELECTRONIC FILES



STATE 05219

## 1    INTRODUCTION

### 1.1    Project Description and Location

The proposed work consists of the reconstruction of existing 2-12 feet lane roadway with 10 feet shoulders and 4 feet inside shoulder to 3-12 feet lanes with 10 feet outside and inside shoulders in each direction. The reconstruction will provide the additional lanes in the area of the existing depressed median.  The limits of the project for this phase of the project (Phase 1) extend along IH 10 from West of FM 1663 to East of Brush Island Road in Jefferson and Chambers County.

### 1.2    Purpose

The purpose of this report is to summarize the findings of the drainage analysis for the project. This study was performed for Stantec and the Texas Department of Transportation (TxDOT) by H & H Resources, Inc. (HHR).

### 1.3    Scope of Work

The scope of work for this Drainage Analysis consists of designing drainage structures including cross culverts to accommodate the proposed roadway improvements.

### 1.4    Additional Project Information

The limits of this project contain drainage cross culverts within the Mayhaw Bayou and Mayhaw Bayou Tributary watersheds.    There are five culverts located in the project limits, one bridge class culvert.  TxDOT considers Culverts 3 and 4 as being rehabilitated and did not include those structures in the drainage design scope of this study.  See correspondence from TxDOT in Appendix A-1.

Flow generally comes from north of IH-10 and drains southward. Flow north of the highway drains towards IH 10 into roadside ditches and through the existing cross culverts.



STATE 05220

## 2        METHODOLOGY

Methods used in the study are based on the TxDOT *Hydraulic Design Manual* dated August 2015.

### 2.1    Hydrology

The existing drainage areas were delineated using the project topography, aerial photography, lidar contours, as-built plans, and visual observations.  The proposed drainage areas are identical to the existing because the proposed roadway improvements occur at the median ditch and were delineated based on the proposed roadway profiles and cross section data.  The proposed drainage area map can be found in Appendix B.

The Rational Method is used for peak flow calculations for areas less than 200 acres and unaffected by complex hydrologic features (crossings 2 and 5).  The rational formula is identified as:

Q= CIA/Z (Equation 4-20 of TxDOT Hydraulic Manual)

Where:

Q= maximum rate of runoff (cfs)

C= runoff coefficient

I= average rainfall intensity (in/hr)

A= drainage area (ac)

Z= conversion factor, 1 for English

Rainfall Intensity:

I= $P_d/t_c$ (Equation 4-21)

Where:

$P_d$= Depth of rainfall (in) for AEP design storm of duration $t_c$

$t_c$= drainage area time of concentration (hr)

The values for $P_d$ are found in the USGS Atlas of Depth Duration Frequency of Precipitation Annual Maxima for Texas.

2



The peak flow discharges for Crossings 2 and 5 using the rational method are found in Appendix C.

While the Rational Method is sufficient for watersheds smaller than 200 acres, the larger drainage area (Crossing 1) requires the use of the hydrograph method to calculate peak flows. The hydrograph method is applicable to watersheds greater than 0.25 square miles, with main channel lengths between 1 and 50 miles. This method accounts for losses and transforms the remaining excess rainfall into a runoff hydrograph. H & H Resources, Inc. (HHR) was provided a HEC-HMS (v3.5) model developed by Jefferson County Drainage District No.6 (DD6) that included hydrology for Crossing 1 which is located under the jurisdiction of Drainage District 3 (DD3). This model was developed for a study titled 'Taylors Bayou Watershed "In-House Study" Report of 2001'. The model provided by DD6 appeared to have been modified from the original study to include gage data from Tropical Storm Allison (2001). The district's HMS model employed the NRCS Curve Number loss method and the Clark Unit Hydrograph transform method. Crossing 1 falls within the upper reaches of this model. However, it is a regional system model, and does not reflect the amount of detail available for this particular project site. In order to closely replicate their methodology, HHR used the same loss and transform methods in the HMS modeling but incorporated more detailed and up-to-date ground data (survey contours and Lidar contours from GIS for overland flow).

NRCS Curve Number loss method uses three parameters: initial abstraction, curve number, and percent impervious. The district model assumed no initial abstraction, since this is the more conservative assumption, HHR also assumed no initial abstraction. The Curve Number (CN) parameter is based on soil type, land use, and vegetative cover of a given drainage area. Existing landuse areas were delineated using aerial photography. The project site is predominately composed of Hydrologic Soil Group D soils, with minor instances of Group C. Using the landuse and soil groups, composite CN values were calculated using the recommended values in Table 4-20 (TxDOT Hydraulic Design Manual). Composite impervious values were also developed using the average percent impervious obtained from visual observation of aerial maps.

3



The Clark Unit Hydrograph transform method calls for two parameters: time of concentration (Tc), and storage coefficient (R). Time of concentration was calculated using the Kerby-Kirpich Method. This method employs two typical flow regimes, overland and channelized flow. The Kerby overland flow uses the dimensionless retardance coefficient for surface type and has an upper limit length of flow of 1200 feet. The Kirpich channel flow is considered flow beyond the maximum 1200 feet of overland or can be typically defined as the extent to where cross-section survey indicates, where channels are visible on aerials, or where channels on USGS quad sheets are indicated. The storage coefficient, was calculated using a relationship historically applied in the area and also observed in the DD6 HEC-HMS models.

R=1.6 * Tc

where:
R = Storage coefficient (hr)
$t_c$ = time of concentration (hr)

Because this terrain is flat and poorly drained, model results were particularly sensitive to even slight changes in slopes, times of concentrations, and storage values. Using the districts knowledge of the existing system performance, the gage model data provided, and engineering judgment the model was calibrated to reflect existing conditions as close as feasible.

Frequency storms were also developed for this HMS model using the USGS Atlas of Depth-Duration Frequency of Precipitation Annual Maxima for Texas (2004).

The larger watershed for crossing 1 assumed the same offsite flow to the culvert for existing and proposed conditions.  The additional two traffic lanes will have negligible increase in flow based on percent contribution to overall drainage area.  Therefore, existing and proposed flows were considered equal for purposes of analysis.

The additional two traffic lanes were included in the computations for crossings 2 and 5 due to the relative increase in flow to the overall drainage areas.

The project Drainage Area Map is included in **Appendix B**.

## 2.2    Hydraulics

HEC-RAS, version 4.1.0 and HY-8 version 7.30 were used as the primary hydraulic modeling tools to analyze the cross drainage structures.  The larger crossing (1) was modeled in HEC-RAS



STATE 05223

which incorporates a steady flow analysis based on the one-dimensional energy equation.  The smaller crossings (2 and 5) were modeled in HY-8 which automates culvert hydraulic computations utilizing a number of essential features for less complex culvert analysis.

## 3    CULVERT HYDRAULIC ANALYSIS

### 3.1    Design Frequency

IH 10 is classified as a freeway as stated in the project Design Summary Report (DSR).  Cross culverts under mainlanes were designed for a 50-yr flood event and frontage roads for a 10-yr flood event.  The 100-yr event was checked to ensure no adverse impact to surrounding insurable properties.  The larger cross culvert/channel was modeled in HEC-RAS (crossing 1) and the smaller crossings in HY-8 (crossing 2 and 5).

### 3.2    Outfall Identification

There are five cross culverts located within the Phase 1 project limits of IH 10.  The project alignment runs from northeast to southwest with Crossing 1 located at the eastern most end of the project limits.

**Table 3.2.1 Existing Cross Culverts**

| Existing Outfall Description | Approximate B/L Station | Existing Outfall Structure |
|---|---|---|
| Culvert 1 | 1119+31.27 | 8'x8' RCB |
| Culvert 2 | 1135+80.96 | 5'x3' RCB |
| Culvert 3 (not included in study) | 1172+35.71 | 9'x6' RCB |
| Culvert 4 (not included in study) | 1210+99.51 | 3-7'x4' RCB |
| Culvert 5 | 1263+34.68 | 5'x2' RCB |



STATE 05224

## 3.3    Outfall Summary

### 3.3.1 Cross Culvert 1

Cross Culvert 1, an existing 8'x8' RCB is located on the northeast end of the project limits and drains Mayhaw Bayou, a FEMA studied stream.  See **Appendix A** FIRM Map. Flow through this channel is generally northwest to southeast. Early in the project development discussions between TxDOT and DD6 included direction to use the models developed by the Drainage District in a report entitled "Taylors Bayou Watershed 'In-House Study' Report of 2001".  The HEC-RAS model developed in this report was used as a baseline for the hydraulic analysis. The culvert layout and flowlines were available through topographic survey and as-built information.  Cross culvert 1 drains roughly 1.57 square miles of primarily a mix of pasture and farm land and 1 acre residential development.  See **Appendix B** for Overall Drainage Area Map**.**  An existing 24" RCP connects to Cross Culvert 1 between the westbound frontage road and westbound mainlanes and will remain in place as it drains the separation area of IH 10.  Existing grate inlets between the westbound and eastbound mainlanes that drain the center median ditch will be removed to accommodate the proposed roadway improvements.  The 50-yr (0.02%) frequency WSEL does not overtop or pond any mainlanes in existing or proposed conditions.  The existing culvert will remain in place with the same size structure (8'x8' RCB) and no additional capacity will be added.  See Table 3.4.1 for WSEL comparisons.  See **Appendix D** for cross culvert hydraulic data sheet.

### 3.3.2 Cross Culvert 2

Cross culvert 2, an existing 5'x3' RCB is located west of the intersection of IH 10 and Brush Island Road and outfalls into a ditch along the eastbound mainlanes and leaves the TxDOT ROW into a channel parallel to Brush Island Road.  This culvert drains roughly 57 acres of undeveloped area northwest of IH10 as well as area within TxDOT ROW.  See **Appendix B** for Overall Drainage Area Map.  The 100-yr (0.01%) frequency and 50-yr (0.02%) frequency WSELs do not overtop or pond the IH 10 mainlanes in existing or proposed conditions at this location.    See Table 3.4.1 for WSEL comparisons.  This culvert will remain in place and no additional capacity will be added.  See **Appendix D** for cross culvert hydraulic data sheet.



STATE 05225

### 3.3.3 Cross Culvert 5

Cross culvert 5, an existing 5'x2' RCB, is located roughly 2100 feet northeast of FM 1663 and outfalls westward across the WBFR at a 30 degree skew within the ROW to a parallel ditch system.  This culvert drains an area of approximately 16.51 acres of commercial development east of IH10.  See **Appendix B** for Overall Drainage Area Map.  The 100-yr (0.01%) frequency and 50-yr (0.02%) frequency WSELs do not overtop or flood the IH 10 mainlanes for the proposed conditions. See **Table 3.4.1** for WSEL comparison.  This culvert will remain in place and no additional capacity will be added.  See **Appendix D** for cross culvert hydraulic data sheet.

## 3.4     Results Summary

A comparison of water surface elevations under existing and proposed conditions is provided in **Table 3.4.1** below. Hydraulic Data sheets for the above mentioned culverts can be found in **Appendix D**.



STATE 05226

Drainage Analysis
IH 10 from West of FM 1663 to East of Brush Island Road                                           CSJ: 0739-02-160 & 0739-01-039

**Table 3.4.1 Existing and Proposed WSEL Comparison**

| CULVERT ID | FREQ. YEAR | EXIST OR PROP | ALLOW HW (ELEV) | CULVERT STRUCTURE, SIZE, & LENGTH | HW (ELEV) (FT) |
|---|---|---|---|---|---|
| CROSS CULVERT 1 | 50 (DESIGN) | EXIST | 21.98 | EXIST 8'X8' RCB X 207' | 21.03 |
| | 100 | | | | 22.67 |
| | 50 (DESIGN) | PROP | 22.59 | EXIST 8'X8' RCB X 207' | 21.03 |
| | 100 | | | | 22.67 |
| CROSS CULVERT 2 | 50 (DESIGN) | EXIST | 20.90 | EXIST 5'X3' RCB X 133' | 18.02 |
| | 100 | | | | 18.23 |
| | 50 (DESIGN) | PROP | 22.00 | EXIST 5'X3' RCB X 133' | 18.06 |
| | 100 | | | | 18.28 |
| CROSS CULVERT 5 | 50 (DESIGN) | EXIST | 24.79 | EXIST 5'X2' X 293' RCB | 24.77 |
| | 100 | | | | 25.02 |
| | 50 (DESIGN) | PROP | 26.27 | EXIST 5'X2' X 293' RCB | 24.83 |
| | 100 | | | | 25.08 |

## 4    FLOODPLAIN FILL

Cross Culvert 1 is located within the 100-yr (Zone AE) floodplain of Mayhaw Bayou, a FEMA studied stream.  See **Appendix A** for FIRM map.  The 100-yr Zone AE width is roughly 600 ft at the IH 10 centerline and a base flood elevation (BFE) was estimated at the IH 10 centerline.  An estimate of floodplain fill lower than the BFE due to the construction of additional lanes in the area of the existing depressed median is provided in **Appendix E**.  There is an estimated 0.35 acre-ft of fill added to the floodplain that will be replaced with storage volume in the separation ditches.

## 5    CONCLUSIONS AND RECOMMENDATIONS

Based on the analysis described in this report, the existing cross-culverts will meet the design criteria for the proposed project limits of IH 10.

A CD containing all of the electronic files is included in **Appendix F**.



STATE 05227

# APPENDIX A

# MAYHAW BAYOU

# FIRM MAP

STATE 05228



## LEGEND

To obtain more detailed information in areas where Base Flood Elevations (BFEs) and/or floodways have been determined, users are encouraged to consult the Flood Profiles and Floodway Data tables contained within the Flood Insurance Study (FIS) report that accompanies this FIRM. Users should be aware that BFEs shown on the FIRM represent rounded whole-foot elevations and therefore may not exactly reflect the flood elevation data presented in the FIS. BFEs shown on the FIRM are intended for flood insurance rating purposes only and should not be used as the sole source of flood elevation information. Accordingly, flood elevation data presented in the FIS should be utilized in conjunction with the FIRM for purposes of construction and/or floodplain management.

ERM elevations listed on this map were obtained and/or developed to establish vertical control for determination of flood elevations and floodplain boundaries portrayed on this map. Users should be aware that the ERM elevations may have changed since the publication of this map. To obtain up-to-date elevation information on National Geodetic Survey (NGS) ERMs shown on this map, please contact the Information Services Branch of the NGS at (301) 713-3242, or visit their website at www.ngs.noaa.gov. Map users should seek verification of non-NGS ERM monument elevations when using these elevations for construction or floodplain management purposes.

## ELEVATION REFERENCE MARKS

| REFERENCE MARK | ELEVATION (FT. NGVD) | DESCRIPTION OF LOCATION |
|---|---|---|
| RM 4 | 15.45 | Chiseled Square, 325 ft north of bench mark B1016, on the top of concrete base of radio tower. |
| RM15 | 13.72 | West corner of concrete at proposed south bound Hwy. 73 bridge. |
| RM16 | 18.57 | PK nail in concrete at center of 2-48" RCP structure. |
| RM17 | 11.13 | PK nail at Wise Rd. |
| RM18 | 14.07 | Mark '+' at headwall of Hwy 124 culvert. |
| RM19 | 14.77 | PK nail in last AT&SF rail road center tie. |
| RM20 | 16.53 | PK nail in concrete at center line of 48" RCP @ Brush Island Rd. |
| RM21 | 21.12 | Box cut in center head wall of west bound I-10 bridge. |

JOINS PANEL 0240

APPROXIMATE SCALE

1000      0      1000 FEET

NATIONAL FLOOD INSURANCE PROGRAM

## FIRM
### FLOOD INSURANCE RATE MAP

JEFFERSON COUNTY, TEXAS
(UNINCORPORATED AREAS)

PANEL 355 OF 600
(SEE MAP INDEX FOR PANELS NOT PRINTED)

COMMUNITY-PANEL NUMBER
4803850355 C

MAP REVISED:
AUGUST 6, 2002

Federal Emergency Management Agency

This is an official copy of a portion of the above referenced flood map. It was extracted using F-MIT On-Line. This map does not reflect changes or amendments which may have been made subsequent to the date on the title block. For the latest product information about National Flood Insurance Program flood maps check the FEMA Flood Map Store at www.msc.fema.gov

STATE 05229

# APPENDIX A-1

# TXDOT CORRESPONDANCE FOR CULVERTS 3 AND 4

STATE 05230

## Veronica Hodge

| | |
|---|---|
| **From:** | Veronica Hodge |
| **Sent:** | Monday, August 15, 2016 8:49 AM |
| **To:** | Veronica Hodge |
| **Subject:** | FW: Floodplain Adminstration Notification - IH-10 At Mayhaw Bayou |

**From:** Kancherla, Anu [mailto:Anu.Kancherla@stantec.com]
**Sent:** Friday, July 29, 2016 1:26 PM
**To:** Veronica Hodge <hodgevn@hhresources.com>; Eric Friedrich <friedricher@hhresources.com>
**Subject:** FW: Floodplain Adminstration Notification - IH-10 At Mayhaw Bayou

FYI -

Best Regards,
Anu

**Anu Kancherla, P.E., DBIA**

Phone: (972) 813-2104
Anu.Kancherla@stantec.com

**From:** Adam Jack [mailto:Adam.Jack@txdot.gov]
**Sent:** Friday, July 29, 2016 12:00 PM
**To:** Kancherla, Anu
**Cc:** Ahmed Gaily; Stan Hopfe; Leanna Sheppard
**Subject:** RE: Floodplain Adminstration Notification - IH-10 At Mayhaw Bayou

Anu,

Stantec is directed to cease all design efforts to add capacity to culverts 3 & 4. Said bridge class culverts are only being "rehabilitated" as defined by Chapter 3, Section 2 of the 2015 and 2016 Hydraulic Design Manual, therefore improvements are not required. When considering Chapter 3, Section 3 - Evaluation of Risk, there does not appear to be evidence to support anything more than rehabilitation since:

- No culvert work is being proposed to extend the existing culvert systems
- There is no history of roadway flooding in these areas of the interstate from upstream flows
- Impacts to upstream flooding from added impervious runoff is negligible to the overall characteristics of the watershed
- There is no significant roadway profile increase in the roadway lowpoints
- Jefferson County, Drainage District 3 opposes additional capacity as downstream flooding would be aggravated during less frequent storm events
- Right-of-way, vertical freeboard, and groundwater elevations preclude reasonable detention facilities

Please confirm your vertical geometry designs will match the existing mainline roadway profile lowpoints in these areas and proceed accordingly.

Thank you,
Adam Jack

1

STATE 05231

TxDOT – Beaumont District
Director, Transportation Planning & Development
(409) 898-5740

TxDOT – Beaumont District

2

STATE 05232

**APPENDIX B**

**OVERALL DRAINAGE AREA MAP**

STATE 05233



**LEGEND**

- (H2O) DRAINAGE AREA DESIGNATOR
- – – – DRAINAGE AREA
- ⋈ EXIST STORM SEWER INLET
- ▨ BRIDGE DRAINAGE AREA
- ⬅ FLOW DIRECTION

CULVERT 1
EXIST 8'X 8'RCB
STA 1119+31.27

CULVERT 2
EXIST 5'X 3'RCB
STA 1135+80.96

CULVERT 5
EXIST 5'X 2'RCB
STA 1263+34.68

BEGIN PAVEMENT RECONSTRUCTION STA 1081+70.29

END PAVEMENT RECONSTRUCTION STA 1293+60.00

END CSJ Q739-02-160
BEGIN CSJ Q739-01-039

POWERS ROAD

BRUSH ISLAND RD

JEFFERSON COUNTY / CHAMBERS COUNTY

CHAMBERS COUNTY / JEFFERSON COUNTY

LEDOUX ROAD

BAKER STREET

FM 1663

IH 10

0    1000    2000
SCALE: 1"=2000'

VERONICA N. HODGE
92913
LICENSED PROFESSIONAL ENGINEER
STATE OF TEXAS

Veronica N. Hodge      8/4/2016

H & H RESOURCES
CIVIL ENGINEERS
TBPE REGISTRATION NO. F-3678

Texas Department of Transportation

IH-10

CULVERT DRAINAGE AREA MAP

SHEET 1 OF 1

| FED RD DIV NO | STATE | FEDERAL AID PROJECT NO | HIGHWAY |
|---|---|---|---|
| 6 | TEXAS | SEE TITLE SHEET | IH 10 |

| STATE DIST | COUNTY | CONT | SECT | JOB | SHEET NO |
|---|---|---|---|---|---|
| BMT | CHAMBERS,ETC | 0739 | 01 | 039, ETC | 280 |

HMS HYDROLOGY TABLE

| DA ID | CULVERT STATION | AREA (SQ MI) | IMPERVIOUS (%) | CURVE NUMBER | Tc (HRS) | R (STORAGE COEFFICIENT) (HRS) | $Q_{100}$ (CFS) | $Q_{50}$ (CFS) | $Q_{25}$ (CFS) | $Q_{10}$ (CFS) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1119+31.27 | 1.57 | 19.54 | 83.88 | 6.23 | 9.97 | 749.3 | 631.0 | 521.0 | 402.0 |

RATIONAL METHOD TABLE

| DA ID | CULVERT STATION | AREA (AC) | Tc (MIN) | RAINFALL INTENSITY (I) (IN/HR) | | | | | | RUNOFF COEFFICIENT C | PEAK FLOW (CFS) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr | | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr |
| 2 | 1135+80.96 | 56.82 | 93.92 | 1.35 | 1.74 | 2.08 | 2.54 | 2.97 | 3.33 | 0.39 | 29.86 | 38.66 | 46.04 | 56.27 | 65.89 | 73.87 |
| 5 | 1263+34.68 | 16.51 | 81.53 | 1.48 | 1.90 | 2.26 | 2.76 | 3.21 | 3.61 | 0.60 | 14.63 | 18.86 | 22.35 | 27.32 | 31.83 | 35.78 |

NOTES:
1. USGS ATLAS OF DEPTH-DURATION FREQUENCY OF PRECIPITATION ANNUAL MAXIMA FOR TEXAS, JEFFERSON COUNTY (2004-5041) USED FOR HYDROLOGY COMPUTATIONS

IH10-PDF-Grayscale.plt
cl-m1.evans
8/4/2016
9:39:59 AM
P:\PROJECTS\BR14105\1 - Beaumont IH 10\CADD\BASE\SHEETS\1100A01.dgn

STATE 05234

# APPENDIX C

# HYDROLOGY COMPUTATIONS

# RATIONAL AND HMS OUTPUT

STATE 05235

# RATIONAL METHOD

# HYDROLOGY COMPUTATIONS

STATE 05236

| CROSSING NO. | CULVERT STATION | AREA | Tc | RAINFALL INTENSITY (I) | | | | | | RUNOFF COEFFICIENT | PEAK FLOW | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | (IN/HR) | | | | | | | (CFS) | | | | | |
| | | (AC) | (MIN) | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr | C | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr |
| CC 5 | 1263+35 | 16.51 | 81.53 | 1.48 | 1.90 | 2.26 | 2.76 | 3.21 | 3.61 | 0.58 | 14.14 | 18.23 | 21.61 | 26.41 | 30.76 | 34.59 |
| CC 2 | 1135+80 | 56.82 | 93.92 | 1.35 | 1.74 | 2.08 | 2.54 | 2.97 | 3.33 | 0.38 | 29.09 | 37.67 | 44.86 | 54.82 | 64.20 | 71.97 |

EXISTING CONDITIONS

RATIONAL METHOD HYDRAULIC COMPUTATIONS

CC2 AND CC5

STATE 05237

| CROSSING NO. | CULVERT STATION | AREA (AC) | Tc (MIN) | RAINFALL INTENSITY (I) (IN/HR) | | | | | | RUNOFF COEFFICIENT | PEAK FLOW (CFS) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr | C | 2-yr | 5-yr | 10-yr | 25-yr | 50-yr | 100-yr |
| CC 5 | 1263+35 | 16.51 | 81.53 | 1.48 | 1.90 | 2.26 | 2.76 | 3.21 | 3.61 | 0.60 | 14.63 | 18.86 | 22.35 | 27.32 | 31.83 | 35.78 |
| CC 2 | 1135+80 | 56.82 | 93.92 | 1.35 | 1.74 | 2.08 | 2.54 | 2.97 | 3.33 | 0.39 | 29.86 | 38.66 | 46.04 | 56.27 | 65.89 | 73.87 |

(Table title: PROPOSED CONDITIONS)

RATIONAL METHOD HYDRAULIC COMPUTATIONS

CC2 AND CC5

STATE 05238

# HYDROLOGY COMPUTATIONS

# HMS OUTPUT

STATE 05239

| 100-yr frequency | | | | |
|---|---|---|---|---|
| Hydrologic Element | Drainage Area (mi2) | Peak Discharge (CFS) | Time of Peak | Volume (AC-ft) |
| Outfall 1 | 1.566 | 749.3 | 01Jan2000, 18:15 | 920.2 |

| 50-yr frequency | | | | |
|---|---|---|---|---|
| Hydrologic Element | Drainage Area (mi2) | Peak Discharge (CFS) | Time of Peak | Volume (AC-ft) |
| Outfall 1 | 1.566 | 631.2 | 01Jan2000, 18:30 | 777.7 |

| 25-yr frequency | | | | |
|---|---|---|---|---|
| Hydrologic Element | Drainage Area (mi2) | Peak Discharge (CFS) | Time of Peak | Volume (AC-ft) |
| Outfall 1 | 1.566 | 520.7 | 01Jan2000, 18:15 | 636.3 |

| 10-yr frequency | | | | |
|---|---|---|---|---|
| Hydrologic Element | Drainage Area (mi2) | Peak Discharge (CFS) | Time of Peak | Volume (AC-ft) |
| Outfall 1 | 1.566 | 402 | 01Jan2000, 18:15 | 495.6 |

STATE 05240

# APPENDIX D

# CULVERT HYDRAULIC DATA SHEETS

STATE 05241

EXISTING HYDRAULIC DATA SHEET FOR PIPES & NON-BRIDGE CLASS STRUCTURES

| CULVERT ID | STATION | FREQ. YEAR | METHOD USED TO DETERMINE "Q" | Q CFS | ALLOW HW (ELEV) | SLOPE (FT/FT) | N | EXISTING STRUCTURE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | SIZE, LENGTH & DESCRIPTION | HW (ELEV) | TW (ELEV) | V-OUT FT/SEC |
| 2 | 1135+80.96 | 50 (DESIGN) | RATIONAL METHOD | 64 | 20.90 | 0.0023 | 0.013 | EXISTING 5'X3' X 133' RCB, US: FW-15, DS: FW-15 | 18.02 | 16.35 | 5.04 |
| | | 100 | | 72 | | | | | 18.23 | 16.42 | 5.50 |
| 5 | 1263+34.68 | 50 (DESIGN) | RATIONAL METHOD | 31 | 24.79 | 0.0009 | 0.013 | EXISTING 5'X2' X 293' RCB, US: PW, DS: PW | 24.77 | 23.68 | 3.08 |
| | | 100 | | 35 | | | | | 25.02 | 23.78 | 3.46 |

PROPOSED HYDRAULIC DATA SHEET FOR PIPES & NON-BRIDGE CLASS STRUCTURES

| CULVERT ID | STATION | FREQ. YEAR | METHOD USED TO DETERMINE "Q" | Q CFS | ALLOW HW (ELEV) | SLOPE (FT/FT) | N | PROPOSED STRUCTURE | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | SIZE, LENGTH & DESCRIPTION | HW (ELEV) | TW (ELEV) | V-OUT FT/SEC |
| 2 | 1135+80.96 | 50 (DESIGN) | RATIONAL METHOD | 66 | 22.00 | 0.0023 | 0.013 | EXISTING 5'X3' X 133' RCB, US: FW-15, DS: FW-15 | 18.06 | 16.36 | 5.14 |
| | | 100 | | 74 | | | | | 18.28 | 16.43 | 5.61 |
| 5 | 1263+34.68 | 50 (DESIGN) | RATIONAL METHOD | 32 | 26.27 | 0.0009 | 0.013 | EXISTING 5'X2' X 293' RCB, US: PW, DS: PW | 24.83 | 23.70 | 3.18 |
| | | 100 | | 36 | | | | | 25.08 | 23.80 | 3.58 |

NOTES:
1. HYDRAULIC COMPUTATIONS DEVELOPED USING HY08
2. TAILWATER ELEVATION CALCULATED USING NORMAL DEPTH OF DOWNSTREAM CHANNEL.



VERONICA N. HODGE
92913

8/4/2016



H & H RESOURCES
CIVIL ENGINEERS
TBPE REGISTRATION NO. F-3678



Texas Department of Transportation

IH-10

HYDRAULIC DATA SHEET
NON BRIDGE CLASS STRUCTURES

SHEET 1 OF 1

| FED RD DIV NO | STATE | FEDERAL AID PROJECT NO | HIGHWAY |
|---|---|---|---|
| 6 | TEXAS | SEE TITLE SHEET | IH 10 |

| STATE DIST | COUNTY | CONT | SECT | JOB | SHEET NO |
|---|---|---|---|---|---|
| BMT | CHAMBERS, ETC | 0739 | 01 | 039, ETC | 281 |

STATE 05242

## HYDRAULIC DATA SHEET FOR BRIDGE CLASS CULVERTS

LOCATION: 1119+31.27    STRUCTURE: 8'x8' RCB

| ITEMS | | DESIGN Q | Q 100 |
|---|---|---|---|
| FREQUENCY | | 50-YR | 100-YR |
| METHOD USED TO DETERMINE Q | | NRCS | NRCS |
| DRAINAGE AREA (SQ MI) | | 1.57 SQ MI | 1.57 SQ MI |
| NRCS CURVE NO. USED | | 83.88 | 83.88 |
| Q | | 631    C.F.S | 749    C.F.S |
| CHANNEL SLOPE  (IMMEDIATELY DOWNSTREAM OF THE CULVERT) | | 0.0048  FT/FT | 0.0048 FT/FT |
| ALLOW HW (EOP AT MAIN LANES) | | 22.59 | 22.59 |
| CALC. TW (ELEV. AT XS 60825) | | 16.92 | 17.07 |
| CALC. HW OR BACKWATER (ELEV. AT XS 61070) | | 21.03 | 22.67 |

EFFECTS OF Q 100

OTHER COMMENTS:
CULVERT US FLOW LINE= 11.18
CULVERT DS FLOW LINE= 11.13

| | | |
|---|---|---|
| DEPTH OF PONDING ON MAIN LANES: | 0.08 | FT. |
| WIDTH OF PONDING ON MAIN LANES: | 3.2 | FT. |
| Q OVER ROAD (main lanes): | 0.0 | % |
| Q THRU STRUCTURE: | 100.0 | % |

NOTE:
1. FLOWS OBTAINED FROM HEC HMS 3.5 ANALYSIS.
2. CROSSING LOCATED IN FEMA 100-YR
   FLOODPLAIN, PANEL NUMBER 4803850355C.
3. FLOODPLAIN ADMINISTRATOR COORDINATION/NOTIFICATION
   ON JULY 8, 2016.

**Legend**
- PR WS 100-YR
- PR WS 50-YR
- EX WS 100-YR
- EX WS 50-YR
- Ineff
- Bank Sta

PROP ℄ IH10

100-YR WSEL
EXIST EL= 22.67

100-YR WSEL
PROP EL= 22.67

50-YR WSEL
EXIST EL= 21.03

50-YR WSEL
PROP EL= 21.03

XS AT US FACE OF CULVERT - 61070

SCALE: 1"=500'
0    250    500

VERONICA N. HODGE
92913
LICENSED
PROFESSIONAL ENGINEER
STATE OF TEXAS

Veronica N. Hodge
8/4/2016

**H & H RESOURCES**
CIVIL ENGINEERS
TBPE REGISTRATION NO. F-3678

**Texas Department of Transportation**

IH-10

HYDRAULIC DATA SHEET
CROSS CULVERT 1
MAYHAW BAYOU
STA 1119+31.27

SHEET 1 OF 2

| FED RD DIV NO | STATE | FEDERAL AID PROJECT NO | HIGHWAY |
|---|---|---|---|
| 6 | TEXAS | SEE TITLE SHEET | IH 10 |

| STATE DIST | COUNTY | CONT | SECT | JOB | SHEET NO |
|---|---|---|---|---|---|
| BMT | CHAMBERS,ETC | 0739 | 01 | 039, ETC | 282 |

STATE 05243

HEC-RAS OUTPUT STANDARD TABLE

| Reach | River Sta | Profile | Plan | Q Total (cfs) | Min Ch El (ft) | W.S. Elev (ft) | Crit W.S. (ft) | E.G. Elev (ft) | E.G. Slope (ft/ft) | Vel Chnl (ft/s) | Flow Area (sq ft) | Top Width (ft) | Froude # Chl |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mayhaw | 61070 | 50 yr | PR REV CULV | 631.0 | 10.83 | 21.03 | 15.58 | 21.25 | 0.000518 | 3.82 | 165.32 | 376.67 | 0.23 |
| Mayhaw | 61070 | 50 yr | EX CULV | 631.0 | 10.83 | 21.03 | 15.58 | 21.25 | 0.000518 | 3.82 | 165.32 | 376.67 | 0.23 |
| Mayhaw | 61070 | 100 yr | PR REV CULV | 749.3 | 10.83 | 22.67 | 15.97 | 22.68 | 0.000046 | 0.9 | 1880.58 | 1033.10 | 0.07 |
| Mayhaw | 61070 | 100 yr | EX CULV | 749.3 | 10.83 | 22.67 | 15.97 | 22.68 | 0.000046 | 0.9 | 1880.58 | 1033.10 | 0.07 |
| | | | | | | | | | | | | | |
| Mayhaw | 60950 | | Culvert | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Mayhaw | 60825 | 50 yr | PR REV CULV | 631.0 | 10.29 | 16.92 | 14.71 | 17.53 | 0.001786 | 6.28 | 100.42 | 38.03 | 0.47 |
| Mayhaw | 60825 | 50 yr | EX CULV | 631.0 | 10.29 | 16.92 | 14.71 | 17.53 | 0.001786 | 6.28 | 100.42 | 38.03 | 0.47 |
| Mayhaw | 60825 | 100 yr | PR REV CULV | 749.3 | 10.29 | 17.07 | 15.11 | 17.89 | 0.002309 | 7.27 | 103.06 | 38.80 | 0.54 |
| Mayhaw | 60825 | 100 yr | EX CULV | 749.3 | 10.29 | 17.07 | 15.11 | 17.89 | 0.002309 | 7.27 | 103.06 | 38.80 | 0.54 |
| | | | | | | | | | | | | | |
| Mayhaw | 60717 | 50 yr | PR REV CULV | 631.0 | 10.95 | 16.79 | | 17.23 | 0.00234 | 5.32 | 118.67 | 33.45 | 0.50 |
| Mayhaw | 60717 | 50 yr | EX CULV | 631.0 | 10.95 | 16.79 | | 17.23 | 0.00234 | 5.32 | 118.67 | 33.45 | 0.50 |
| Mayhaw | 60717 | 100 yr | PR REV CULV | 749.3 | 10.95 | 16.90 | | 17.48 | 0.003026 | 6.11 | 122.57 | 33.99 | 0.57 |
| Mayhaw | 60717 | 100 yr | EX CULV | 749.3 | 10.95 | 16.90 | | 17.48 | 0.003026 | 6.11 | 122.57 | 33.99 | 0.57 |

HEC-RAS CULVERT PROFILE SUMMARY

| Reach | River Sta | | Profile | Plan | E.G. US. (ft) | W.S. US. (ft) | E.G. IC (ft) | E.G. OC (ft) | Min El Weir Flow (ft) | Q Culv Group (cfs) | Q Weir (cfs) | Delta WS (ft) | Culv Vel US (ft/s) | Culv Vel DS (ft/s) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mayhaw | 60950 | Culvert #1 | 50 yr | PR REV CULV | 21.26 | 21.03 | 20.66 | 21.26 | 22.01 | 631.00 | | 4.11 | 10.51 | 13.62 |
| Mayhaw | 60950 | Culvert #1 | 50 yr | EX CULV | 21.26 | 21.03 | 20.66 | 21.26 | 22.01 | 631.00 | | 4.11 | 10.51 | 13.62 |
| Mayhaw | 60950 | Culvert #1 | 100 yr | PR REV CULV | 22.68 | 22.67 | 22.64 | 22.68 | 22.01 | 748.92 | 0.38 | 5.6 | 11.7 | 14.45 |
| Mayhaw | 60950 | Culvert #1 | 100 yr | EX CULV | 22.68 | 22.67 | 22.64 | 22.68 | 22.01 | 748.92 | 0.38 | 5.6 | 11.7 | 14.45 |

NOTE:
HYDRAULIC COMPUTATIONS PERFORMED
USING HEC-RAS VERSION 4.1.0



VERONICA N. HODGE
92913

8/4/2016



H & H RESOURCES
CIVIL ENGINEERS
TBPE REGISTRATION NO. F-3678



Texas Department of Transportation

## IH-10

HYDRAULIC DATA SHEET
CROSS CULVERT 1
MAYHAW BAYOU
STA 1119+31.27

SHEET 2 OF 2

| FED RD DIV NO | STATE | FEDERAL AID PROJECT NO | HIGHWAY |
|---|---|---|---|
| 6 | TEXAS | SEE TITLE SHEET | IH 10 |

| STATE DIST | COUNTY | CONT | SECT | JOB | SHEET NO |
|---|---|---|---|---|---|
| BMT | CHAMBERS, ETC | 0739 | 01 | 039, ETC | 283 |

STATE 05244

**APPENDIX E**

**FLOODPLAIN FILL CALCULATIONS**

STATE 05245

FLOODPLAIN CUT CALCULATIONS                                                                                         APPENDIX E

| FLOODPLAIN ELEVATION | 21.9 |
|---|---|

| STATION | CL TO ML | WBML EDGE | FL AT CL | EBML EDGE | PGL | WB SS | EB SS | FLOODPLAIN ELEVATION | DEPTH | WB WIDTH | EB WIDTH | WB AREA (FT^2) | EB AREA (FT^2) | TOTAL AREA (FT^2) | AVERAGE AREA (FT^2) | DISTANCE (FT) | VOLUME (FT^3) | VOLUME (ACRE-FT) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1115+00.00 | 16.00 | 22.88 | 20.10 | 22.85 | 24.09 | 5.76 | 5.82 | 21.9 | 1.80 | 10.36 | 10.47 | 9.32 | 9.43 | 18.75 | 17.29 | 100.00 | 1728.89 | 0.04 |
| 1116+00.00 | 16.00 | 22.79 | 20.34 | 22.81 | 24.05 | 6.53 | 6.48 | 21.9 | 1.56 | 10.19 | 10.11 | 7.95 | 7.88 | 15.83 | 18.58 | 100.00 | 1858.30 | 0.04 |
| 1117+00.00 | 16.00 | 22.79 | 19.98 | 22.70 | 24.01 | 5.69 | 5.88 | 21.9 | 1.92 | 10.93 | 11.29 | 10.50 | 10.84 | 21.34 | 23.17 | 100.00 | 2317.32 | 0.05 |
| 1118+00.00 | 16.00 | 22.74 | 19.74 | 22.71 | 23.96 | 5.33 | 5.39 | 21.9 | 2.16 | 11.52 | 11.64 | 12.44 | 12.57 | 25.01 | 31.95 | 100.00 | 3194.58 | 0.07 |
| 1119+00.00 | 16.00 | 22.53 | 18.93 | 22.59 | 23.92 | 4.44 | 4.37 | 21.9 | 2.97 | 13.20 | 12.98 | 19.60 | 19.28 | 38.88 | 34.44 | 100.00 | 3443.76 | 0.08 |
| 1120+00.00 | 16.00 | 22.66 | 19.49 | 22.52 | 23.88 | 5.05 | 5.28 | 21.9 | 2.41 | 12.16 | 12.73 | 14.66 | 15.33 | 29.99 | 25.27 | 100.00 | 2526.88 | 0.06 |
| 1121+00.00 | 16.00 | 22.59 | 20.13 | 22.55 | 23.84 | 6.50 | 6.61 | 21.9 | 1.77 | 11.51 | 11.70 | 10.19 | 10.36 | 20.54 | | | | |

| TOTAL (ACRE-FT) | 0.35 |
|---|---|

STATE 05246

# APPENDIX F

# SEE ATTACHED CD WITH ELECTRONIC FILES

STATE 05247

**STATE'S EXHIBIT**

D



**Texas Department of Transportation**

# Wetland Delineation Report

I-10 from SH 73 to Hamshire Road;
CSJ: 0739-01-039 & 0739-02-160

Prepared by: TxDOT-Beaumont District

July 2016

The environmental review, consultation, and other actions required by applicable Federal environmental laws for this project are being, or have been, carried-out by TxDOT pursuant to 23 U.S.C. 327 and a Memorandum of Understanding dated December 16, 2014, and executed by FHWA and TxDOT.

STATE 02006

## 1.0 INTRODUCTION

The Texas Department of Transportation (TxDOT) proposes to improve Interstate Highway (I)-10 by adding one lane in each direction from State Highway (SH) 73 to Hamshire Road. The total proposed project length is 5.215 miles (Figure 1).

**Figure 1: Project Location Map**



### 1.1 Existing Facility

The existing facility is a four-lane, two lanes in each direction divided facility. Two-way frontage roads are present on both sides of the facility from Farm-to-Market Road (FM) 1663 to Brush Island Road; a two way frontage road continues on the westbound side north of Brush Island Road. The mainlanes overpass FM 1663 and the facility is overpassed by jug-handle intersections at Brush Island Road.

### 1.2 Proposed Project

The proposed project would improve the existing 4-lane divided facility with one lane in each direction to a 6-lane divided facility with three lanes in each direction from SH 73 to Hamshire Road. The proposed project would add one lane in each direction to the inside of the existing lanes; in the center of the existing facility. The FM 1663 mainlane bridge will be replaced and

STATE 02007

widened. The Brush Island Road bridge over the mainlanes will be replaced. All improvements would be within the median, inside the frontage road footprint or edge of main lane grading where no frontage roads are present. No new right-of-way (ROW) would be required for the proposed project.

## 2.0  SITE CHARACTERISTICS

The project site is located within the Atlantic and Gulf Coast Lowland Forest and Crop Region Land Resource Region (LRR-T), Gulf Coast Prairies Major Land Resource Area (MLRA-150A) and the Gulf Prairies and Marshes Ecoregion. Vegetation in the project vicinity consists of primarily of unimproved prairie pasture.

Normal annual precipitation as reported for Beaumont, TX is 60.42 inches. During the thirty days prior to the filed investigation 2.65 inches of rain fell in Beaumont. Normal monthly rainfall for November is 4.40 inches and 6.62 inches fell in November 2015.

The proposed project crosses Mayhaw Bayou and tributaries of Mayhaw Bayou. The streams are a part of the Sabine Lake Watershed (12040201) 8-digit Hydrologic Unit.

## 3.0  METHODS

### 3.1    Background Information

Initial investigations conducted for the project include a review of soil information from the Natural Resources Conservation Service (NRCS) Web Soil Survey, Unites States Geological Survey (USGS) 7.5-minute quadrangle maps, United States Fish and Wildlife Service (USFWS) National Wetland Inventory (NWI) maps, Federal Emergency Management Agency (FEMA) National Flood Insurance Program (NFIP) Floodplain Maps. This data was utilized to determine the potential presence of any watercourses, drainage patters, and potential wetlands.

### 3.2    On-Site Investigation

The project area was investigated and delineated pursuant to the United States Army Corps of Engineers (USACE) Wetland Delineation Manual (1987) and the USACE Regional Supplement to the Corps of Engineers Wetland Delineation Manual: Atlantic and Gulf Coastal Plain Region, Version 2.0 (2010) for the presence of wetland features and other waters of the U.S. The field investigation was conducted on December 8-9, 2015. The OHWM boundaries were surveyed using a Trimble Geo-7X GPS unit with on-board Satellite Based Augmentation System (SBAS).

The presence or absence of wetlands within the study area was determined using the three-parameter approach. Soil pits were dug to determine whether or not hydric soils or soils with hydric characteristics were present. A number of soil characteristics were checked including composition, texture, color, and odor. Vegetation species present were recorded; scientific names of plants were recorded following the USDA NRCS PLANTS database. The USFWS 2012 National Wetland Plant Indicator List was referenced for wetland indicator status of plant species. Site wetland hydrological characteristics were also recorded. The wetland boundaries were surveyed using a Trimble Geo-7X GPS unit with on-board Satellite Based Augmentation System (SBAS).

STATE 02008

## 4.0  RESULTS

The following provides a summary of the data collected and description of waters of the U.S. and wetlands. Table 1 provides a summary of stream characteristics. Table 2 provides a summary of waters and wetlands within the project area. The USACE Wetland Data Forms completed for each wetland are included in Appendix A of this report. Sample points, wetland boundaries, and OHWMs are shown in greater detail on an aerial background in Exhibit 2. A map showing the apparent OHWM and wetland boundaries observed in the project study area with a USGS topographic map background is provided as Exhibit 1.

### 4.1  Weather Conditions

The weather conditions observed during the field investigation ranged from mostly cloudy to mostly sunny, with temperatures the low 40 to middle 70 degree Fahrenheit range.

### 4.2  Waters of the U.S.

#### 4.2.1  Area 1 – Tributary of Mayhaw Bayou

Area 1 (Photo 1 and 2) is an intermittent, non-navigable tributary of Mayhaw Bayou, as shown on USGS topographic maps. Portions of this stream have been channelized. The Ordinary High Water Mark (OHWM) of this tributary varies between 10 to 40 feet in width. Approximately 0.20 acre of this stream is within the ROW. The stream is outside of the 100-year floodplain. The dominant vegetation on the banks consists of hackberry (*Celtis laevigata*), American bulrush (*Scirpus pungens*), giant ragweed (*Ambrosia trifida*) and Bermudagrass (*Cynodon dactylon*).

According to the Stream Impact Assessment Form, see Appendix B prepared in the field for this stream, the overall stream condition is Severe. The channel condition is poor; the channel has been excavated and over widened. Approximately 0.18 acre (90%) of the channel that is within the ROW flows through three 7-foot by 4-foot



**Photo 1: Area 1 from stream on the eastbound side of showing the box culvert and surrounding.**



**Photo 2 Area 1 on the westbound side of the box culvert and surrounding.**

3

concrete box culverts. The riparian buffer condition is poor and consists almost entirely of mowed or maintained ROW. Aquatic use is rated as severe because the stream is classified as intermittent and has not been assessed. The channel alteration is poor due to the high percentage of the stream flowing through culverts.

A wetland area, Wetland A, is present adjacent to this stream on the eastbound side of I-10 and is described below.

### 4.2.2   Area 2 - Tributary of Mayhaw Bayou

Area 2 (Photo 3) is a non-navigable intermittent tributary of Mayhaw Bayou, is an intermittent stream, as shown on USGS topographic maps. Portions of this stream have been channelized. The tributary has an OHWM width which isof approximately 9 feet. Approximately, and is 0.11 acre in sizeof this tributary is located below the OHWM w within the ROW. The stream is outside of the 100-year floodplain. The dominant vegetation on the banks consists of giant ragweed, smartweed (*Polgonum hydropiperoides*), Johnsongrass (*Sorghum halepense*) and Bermudagrass.



**Photo 3 Area 2 on the eastbound side of the box culvert, showing the box culvert.**

According to the Stream Impact Assessment Form, see Appendix B prepared in the field for this stream, the overall condition of this stream is Severe. The channel condition is poor; the channel been excavated and over widened, and 0.6 acre (55%) of the area within the ROW is culverted. The riparian buffer is poor and consists almost entirely of mowed or maintained ROW. Aquatic use condition is severe because the stream is classified as intermittent and has not been assessed. Channel alteration is poor due to the high percentage of the stream flowing through culverts. A wetland area, Wetland B, is present adjacent to this stream on the westbound side of the I-10 facility and is described below.



side.

4

4.2.3    Area 3 – Mayhaw Bayou

Mayhaw Bayou (Photo 4) is a non-navigable perennial stream, as shown on USGS topographic maps. Portions of Mayhaw Bayou have been channelized. The stream has an OHWM width which isof approximately 10 feet. Approximately, and is 0.07 acre in sizeof the bayo is located below the OHWM wiwithin the ROW. The stream is outside of the 100-year floodplain.

According to the Stream Impact Assessment Form, see Appendix B prepared in the field for this stream, the overall condition of this stream is Severe. The channel condition is poor; since the stream is incised with vertical walls and 0.04 acre (57%) the channel within the ROW crosses I-10 through an 8-foot by 8-foot concrete box culvert. The riparian buffer condition is poor and consists almost entirely of mowed or maintained ROW. Aquatic use condition is severe because the stream has not been assessed and does not have perennial pools. Channel alteration is poor due to the high percentage of the stream that is culverted.

No wetland areas are present at this crossing.

**Table 1: Stream Characteristics**

| Stream | Location Coordinates (WGS84) | Within FEMA's 100-Year Floodplain | Type | Length of Segment (feet) | OHWM to OHWM (width) | Area | Water Flow Direction |
|---|---|---|---|---|---|---|---|
| Unnamed Tributary of Mayhaw Bayou (Area 1) | 29.848664° N 94.368394° W | No | Intermittent | 423 | 10 to 40 | 0.20 | East |
| Unnamed Tributary of Mayhaw Bayou (Area 1) | 29.856363° N 94.359598° W | No | Intermittent | 311 | 9 | 0.11 | Southeast |
| Mayhaw Bayou | 29.866779° N 94.347859° W | Yes | Perennial | 305 | 10 | 0.07 | Southeast |

4.3    *Wetlands*

Two wetlands were found within the study area with an areal extent of 0.02 acre. The wetlands are riverine wetlands, adjacent to the unnamed tributaries of Mayhaw Bayou.

4.3.1    Wetland A

This area is a riverine, emergent 0.01 acre wetland, located below and above the OHWM of Area 1. The soils were saturated to the surface and the water table was present at the surface. Dominant vegetation consists of American bulrush, smartweed, johnsongrass, green flatsedge (*Cyperus virens*), dewberry, and Bermudagrass. According to the Web Soil Survey website this area is within the Aris-Spindletop complex. The soil texture is sandy clay in the upper 8 inches, and the soil color of 10YR 4/2. A soil layer with a clay texture and soil color 10YR 4/2 is present

5

STATE 02011

below 8 inches. Redox concentrations masses with a color of 10YR 6/4 are also present as 40% in the lower soil layer.

See: Data Sheet 1, Data Sheet 4, Photo 1, Exhibit 1, and Exhibit 2.

4.3.2    Wetland B

This area is a riverine, emergent 0.01 acre wetland, located below and above the OHWM of Area 2. The soils were saturated to the surface, the water table was present at the surface, and 1 inch of surface water was present. Dominant vegetation consists of smartweed, johnsongrass, and Bermudagrass. According to the Web Soil Survey website this area is within the Beaumont clay soil type. The soil texture is clay. Soil color of 10YR 4/2 is present. Redox concentrations masses with a color of 10YR 6/4 are also present as 40% in the soil layer.

See: Data Sheet 6, Photo 3, Exhibit 1, and Exhibit 2.

**Table 2: Summary of Waters of the U.S. and Wetlands Within the Study Area**

| Feature | Location Coordinates (WGS84) | Within FEMA's 100-Year Floodplain | Type | Area (Acres) |
|---|---|---|---|---|
| Area 1 | 29.848664° N 94.368394° W | No | Intermittent | 0.20 |
| Wetland A | 29.848839° N 94.367502° W & 29.848745° N 94.368873°W | No | Riverine | 0.01 |
| Area 2 | 29.856363° N 94.359598° W | No | Intermittent | 0.11 |
| Wetland B | 29.856756° N 94.359870° W | No | Riverine | 0.01 |
| Mayhaw Bayou | 29.866779° N 94.347859° W | Yes | Perennial | 0.07 |
| **Total Area of Waters of the U.S** | | | | **0.38** |
| **Total Wetland Area** | | | | **0.02** |

## 5.0  CONCLUSION

Based upon the delineation/determination performed within the study area, 5 sites appear to be wetlands or waters of the U.S. Mayhaw Bayou and tributaries of Mayhaw Bayou are Water of the U.S. and total 0.38 acre within the ROW. There are also two wetlands totaling 0.02 acre located adjacent to Area 1 and Area 2. A request for a Jurisdictional Determination from the USACE has not been sent.

6

STATE 02012

Exhibits

STATE 02013



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

1:2,400
1 inch = 200 feet

Page 1 of 10

**Legend**

— TxDOT Right-of-Way
— Culverts

Waters of the U.S.
Wetlands
○ Sample Points

STATE 02014



Construction Limit

**Exhibit 1**
Waters of the U.S. and Wetlands Aerial Map

Page 2 of 10

1:2,400
1 inch = 200 feet

Source: Esri, DigitalGlobe, GeoEye, Earthstar Geographics, CNES/Airbus DS, USDA, USGS, AeroGRID, IGN, and the GIS User Community, Esri, HERE, DeLorme, MapmyIndia

**Legend**

Waters of the U.S.
Wetlands
Sample Points

— TxDOT Right-of-Way
— Culverts

STATE 02015



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

1:2,400
1 inch = 200 feet

Page 3 of 10

**Legend**

Waters of the U.S.       ⎯⎯⎯ TxDOT Right-of-Way

Wetlands                ⎯⎯⎯ Culverts

Sample Points

STATE 02016



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 4 of 10

1:2,400

1 inch = 200 feet

**Legend**

Waters of the U.S.     —— TxDOT Right-of-Way

Wetlands     —— Culverts

Sample Points

Source: Esri, DigitalGlobe, GeoEye, Earthstar G
Community, Esri, HERE, DeLorme, MapmyInd

STATE 02017



**Exhibit 1**
Waters of the U.S. and Wetlands Aerial Map

Page 5 of 10

1:2,400
1 inch = 200 feet

**Legend**

Waters of the U.S.          TxDOT Right-of-Way

Wetlands                     Culverts

Sample Points

STATE 02018



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 6 of 10

1:2,400

1 inch = 200 feet

**Legend**

Waters of the U.S.

Wetlands

Sample Points

TxDOT Right-of-Way

Culverts

STATE 02019



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 7 of 10

1:2,400

1 inch = 200 feet

**Legend**

Waters of the U.S. — TxDOT Right-of-Way

Wetlands — Culverts

Sample Points

STATE 02020



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 8 of 10

1:2,400
1 inch = 200 feet

**Legend**

Waters of the U.S.

Wetlands

Sample Points

TxDOT Right-of-Way

Culverts

STATE 02021



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 9 of 10

STATE 02022



**Exhibit 1**

Waters of the U.S. and Wetlands Aerial Map

Page 10 of 10

1:2,400

1 inch = 200 feet

**Legend**

Waters of the U.S. — TxDOT Right-of-Way

Wetlands — Culverts

Sample Points

STATE 02023



**Exhibit 2**
Waters of the U.S. and Topographic Map

Page 1 of 6

Exhibit Quadrangles: Stowell, Hamshire, and Fannett West

1:6,000
1 inch = 500 feet



**Exhibit 2**

Waters of the U.S. and Topographic Map

Page 2 of 6

Exhibit Quadrangles: Stowell, Hamshire, and Fannett West

1:6,000
1 inch = 500 feet

**Legend**
Waters of the U.S.
Wetlands

STATE 02025



**Exhibit 2**
Waters of the U.S. and Topographic Map

Page 3 of 6

STATE 02026



STATE 02027



Exhibit Quadrangles: Stowell, Hamshire, and Fannett West

**Exhibit 2**

Waters of the U.S. and Topographic Map

Page 5 of 6

1:6,000
1 inch = 500 feet

**Legend**

Waters of the U.S.

Wetlands

1 inch = 500 feet

STATE 02028



STATE 02029

Appendix A

Wetland Determination Forms

STATE 02030

**WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region**

Project/Site: I-10 (SH 73 to Hamshire Rd)    City/County: Chambers County    Sampling Date: 8-Dec-2015
Applicant/Owner: TxDOT    State: TX    Sampling Point: 7
Investigator(s): Wellman    Section, Township, Range:
Landform (hillslope, terrace, etc.): terrace    Local relief (concave, convex, none): convex    Slope (%): 1%
Subregion (LRR or MLRA): T, 150A    Lat: 29.856756°    Long: -94.359870°    Datum: WGS84
Soil Map Unit Name: BeaA - Beaumont clay, 0 to 1 percent slopes    NWI classification: None
Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)
Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?    Are "Normal Circumstances" present? Yes ✓ No _____
Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?    (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? | Yes _____ No ✓ | **Is the Sampled Area** |
| Hydric Soil Present? | Yes ✓ No _____ | **within a Wetland?** Yes _____ No ✓ |
| Wetland Hydrology Present? | Yes ✓ No _____ | |

Remarks:

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply) | | Secondary Indicators (minimum of two required)
--- | --- | ---
_ Surface Water (A1) | _ Aquatic Fauna (B13) | _ Surface Soil Cracks (B6)
_ High Water Table (A2) | _ Marl Deposits (B15) **(LRR U)** | _ Sparsely Vegetated Concave Surface (B8)
✓ Saturation (A3) | _ Hydrogen Sulfide Odor (C1) | _ Drainage Patterns (B10)
_ Water Marks (B1) | _ Oxidized Rhizospheres along Living Roots (C3) | _ Moss Trim Lines (B16)
_ Sediment Deposits (B2) | _ Presence of Reduced Iron (C4) | _ Dry-Season Water Table (C2)
_ Drift Deposits (B3) | _ Recent Iron Reduction in Tilled Soils (C6) | _ Crayfish Burrows (C8)
_ Algal Mat or Crust (B4) | _ Thin Muck Surface (C7) | _ Saturation Visible on Aerial Imagery (C9)
_ Iron Deposits (B5) | _ Other (Explain in Remarks) | _ Geomorphic Position (D2)
_ Inundation Visible on Aerial Imagery (B7) | | _ Shallow Aquitard (D3)
_ Water-Stained Leaves (B9) | | _ FAC-Neutral Test (D5)
| | _ Sphagnum moss (D8) **(LRR T, U)**

**Field Observations:**

Surface Water Present?    Yes _____ No ✓    Depth (inches): _____
Water Table Present?    Yes _____ No ✓    Depth (inches): _____
Saturation Present?    Yes ✓ No _____    Depth (inches): Surface    **Wetland Hydrology Present?**    Yes ✓ No _____
(includes capillary fringe)

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

STATE 02031

**VEGETATION (Five Strata) –** Use scientific names of plants.

Sampling Point: 7

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Tree Stratum (Plot size: 30m ) | | | |
| 1. Quercus virginiana | 5% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

5 = Total Cover

50% of total cover: 2.5%  20% of total cover: 1%

| Sapling Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

0 = Total Cover

50% of total cover: 1%  20% of total cover:

| Shrub Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Ilex vomitoria | 10% | yes | FAC |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

10 = Total Cover

50% of total cover: 5%  20% of total cover: 2%

| Herb Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Sorghum halepense | 10% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |

10 = Total Cover

50% of total cover: 5%  20% of total cover: 1%

| Woody Vine Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Rubus trivialis | 10% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

10 = Total Cover

50% of total cover: 5%  20% of total cover: 1%

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC: 1 (A)

Total Number of Dominant Species Across All Strata: 4 (B)

Percent of Dominant Species That Are OBL, FACW, or FAC: 25% (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | | x 1 = | |
| FACW species | | x 2 = | |
| FAC species | 10 | x 3 = | 30 |
| FACU species | 25 | x 4 = | 100 |
| UPL species | | x 5 = | |
| Column Totals: | 35 (A) | | 130 (B) |

Prevalence Index = B/A = 3.71

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

___ 2 - Dominance Test is >50%

___ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?**  Yes _____  No ✓

Remarks: (If observed, list morphological adaptations below).

STATE 02032

**SOIL**                                                                                          Sampling Point: 7

**Profile Description:  (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-13 | 10YR4/2 | 60% | 10YR6/4 | 40% | D | M | CI | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1]Type:  C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.     [2]Location:  PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators:  (Applicable to all LRRs, unless otherwise noted.)**     **Indicators for Problematic Hydric Soils[3]:**

- ___ Histosol (A1)
- ___ Histic Epipedon (A2)
- ___ Black Histic (A3)
- ___ Hydrogen Sulfide (A4)
- ___ Stratified Layers (A5)
- ___ Organic Bodies (A6) **(LRR P, T, U)**
- ___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
- ___ Muck Presence (A8) **(LRR U)**
- ___ 1 cm Muck (A9) **(LRR P, T)**
- ___ Depleted Below Dark Surface (A11)
- ___ Thick Dark Surface (A12)
- ___ Coast Prairie Redox (A16) **(MLRA 150A)**
- ___ Sandy Mucky Mineral (S1) **(LRR O, S)**
- ___ Sandy Gleyed Matrix (S4)
- ___ Sandy Redox (S5)
- ___ Stripped Matrix (S6)
- ___ Dark Surface (S7) **(LRR P, S, T, U)**

- ___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
- ___ Thin Dark Surface (S9) **(LRR S, T, U)**
- ___ Loamy Mucky Mineral (F1) **(LRR O)**
- ___ Loamy Gleyed Matrix (F2)
- ✓ Depleted Matrix (F3)
- ___ Redox Dark Surface (F6)
- ___ Depleted Dark Surface (F7)
- ___ Redox Depressions (F8)
- ___ Marl (F10) **(LRR U)**
- ___ Depleted Ochric (F11) **(MLRA 151)**
- ___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
- ___ Umbric Surface (F13) **(LRR P, T, U)**
- ___ Delta Ochric (F17) **(MLRA 151)**
- ___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
- ___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

- ___ 1 cm Muck (A9) **(LRR O)**
- ___ 2 cm Muck (A10) **(LRR S)**
- ___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
- ___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
- ___ Red Parent Material (TF2)
- ___ Very Shallow Dark Surface (TF12)
- ___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____

Depth (inches): _____

**Hydric Soil Present?    Yes __✓__    No _____**

Remarks:

STATE 02033

## WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region

Project/Site: I-10 (SH 73 to Hamshire Rd)     City/County: Chambers County     Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT     State: TX     Sampling Point: 6

Investigator(s): Wellman     Section, Township, Range:

Landform (hillslope, terrace, etc.): drainageway     Local relief (concave, convex, none): convergent     Slope (%): 1%

Subregion (LRR or MLRA): T, 150A     Lat: 29.856756°     Long: -94.359870°     Datum: WGS84

Soil Map Unit Name: BeaA - Beaumont clay, 0 to 1 percent slopes     NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)

Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?     Are "Normal Circumstances" present? Yes ✓ No _____

Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?     (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? | Yes ✓ No _____ | **Is the Sampled Area within a Wetland?** Yes ✓ No _____ |
| Hydric Soil Present? | Yes ✓ No _____ | |
| Wetland Hydrology Present? | Yes ✓ No _____ | |

Remarks:

This site is the area within the limits of the ditch. Area 4 westbound side.

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply)

| | | Secondary Indicators (minimum of two required) |
|---|---|---|
| ✓ Surface Water (A1) | _ Aquatic Fauna (B13) | _ Surface Soil Cracks (B6) |
| ✓ High Water Table (A2) | _ Marl Deposits (B15) **(LRR U)** | _ Sparsely Vegetated Concave Surface (B8) |
| ✓ Saturation (A3) | _ Hydrogen Sulfide Odor (C1) | _ Drainage Patterns (B10) |
| _ Water Marks (B1) | _ Oxidized Rhizospheres along Living Roots (C3) | _ Moss Trim Lines (B16) |
| _ Sediment Deposits (B2) | _ Presence of Reduced Iron (C4) | _ Dry-Season Water Table (C2) |
| _ Drift Deposits (B3) | _ Recent Iron Reduction in Tilled Soils (C6) | _ Crayfish Burrows (C8) |
| _ Algal Mat or Crust (B4) | _ Thin Muck Surface (C7) | _ Saturation Visible on Aerial Imagery (C9) |
| _ Iron Deposits (B5) | _ Other (Explain in Remarks) | _ Geomorphic Position (D2) |
| _ Inundation Visible on Aerial Imagery (B7) | | _ Shallow Aquitard (D3) |
| _ Water-Stained Leaves (B9) | | _ FAC-Neutral Test (D5) |
| | | _ Sphagnum moss (D8) **(LRR T, U)** |

**Field Observations:**

Surface Water Present? Yes ✓ No _____ Depth (inches): 1 in

Water Table Present? Yes ✓ No _____ Depth (inches): Surface

Saturation Present? Yes ✓ No _____ Depth (inches): Surface     **Wetland Hydrology Present? Yes ✓ No _____**
(includes capillary fringe)

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

US Army Corps of Engineers     Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02034

**VEGETATION (Five Strata) –** Use scientific names of plants.

Sampling Point: 6

| Tree Stratum (Plot size: Entire Site ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

0 = Total Cover

50% of total cover: _____  20% of total cover: _____

| Sapling Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

0 = Total Cover

50% of total cover: 1%  20% of total cover: _____

| Shrub Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

0 = Total Cover

50% of total cover: _____  20% of total cover: _____

| Herb Stratum (Plot size: Entire Site ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. Polygonum hydropiperoides | 70% | yes | OBL |
| 2. Cynodon dactylon | 10% | no | FACU |
| 3. Sorghum halepense | 5% | no | FACU |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |

85 = Total Cover

50% of total cover: 42.5%  20% of total cover: 17%

| Woody Vine Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

0 = Total Cover

50% of total cover: _____  20% of total cover: _____

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC:  1  (A)

Total Number of Dominant Species Across All Strata:  1  (B)

Percent of Dominant Species That Are OBL, FACW, or FAC:  100%  (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | 70 | x 1 = | 70 |
| FACW species | | x 2 = | |
| FAC species | 15 | x 3 = | 45 |
| FACU species | | x 4 = | |
| UPL species | | x 5 = | |
| Column Totals: | 85 (A) | | 115 (B) |

Prevalence Index = B/A = 1.35

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

✓ 2 - Dominance Test is >50%

✓ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?**  Yes ✓  No _____

Remarks: (If observed, list morphological adaptations below).

STATE 02035

**SOIL**                                                                                    Sampling Point: 6

**Profile Description: (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-13 | 10YR4/2 | 60% | 10YR6/4 | 40% | D | M | Cl | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1]Type: C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.      [2]Location: PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators: (Applicable to all LRRs, unless otherwise noted.)**

___ Histosol (A1)
___ Histic Epipedon (A2)
___ Black Histic (A3)
___ Hydrogen Sulfide (A4)
___ Stratified Layers (A5)
___ Organic Bodies (A6) **(LRR P, T, U)**
___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
___ Muck Presence (A8) **(LRR U)**
___ 1 cm Muck (A9) **(LRR P, T)**
___ Depleted Below Dark Surface (A11)
___ Thick Dark Surface (A12)
___ Coast Prairie Redox (A16) **(MLRA 150A)**
___ Sandy Mucky Mineral (S1) **(LRR O, S)**
___ Sandy Gleyed Matrix (S4)
___ Sandy Redox (S5)
___ Stripped Matrix (S6)
___ Dark Surface (S7) **(LRR P, S, T, U)**

___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
___ Thin Dark Surface (S9) **(LRR S, T, U)**
___ Loamy Mucky Mineral (F1) **(LRR O)**
___ Loamy Gleyed Matrix (F2)
✓ Depleted Matrix (F3)
___ Redox Dark Surface (F6)
___ Depleted Dark Surface (F7)
___ Redox Depressions (F8)
___ Marl (F10) **(LRR U)**
___ Depleted Ochric (F11) **(MLRA 151)**
___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
___ Umbric Surface (F13) **(LRR P, T, U)**
___ Delta Ochric (F17) **(MLRA 151)**
___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

**Indicators for Problematic Hydric Soils[3]:**

___ 1 cm Muck (A9) **(LRR O)**
___ 2 cm Muck (A10) **(LRR S)**
___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
___ Red Parent Material (TF2)
___ Very Shallow Dark Surface (TF12)
___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____

Depth (inches): _____

**Hydric Soil Present?   Yes __✓__   No _____**

Remarks:

STATE 02036

## WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region

Project/Site: I-10 (SH 73 to Hamshire Rd)    City/County: Chambers County    Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT    State: TX    Sampling Point: 5

Investigator(s): Wellman    Section, Township, Range:

Landform (hillslope, terrace, etc.): terrace    Local relief (concave, convex, none): convex    Slope (%): 1%

Subregion (LRR or MLRA): T, 150A    Lat: 29.848745°    Long: -94.368873°    Datum: WGS84

Soil Map Unit Name: AspA - Aris-Spindletop complex, 0 to 1 percent slopes    NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)

Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?    Are "Normal Circumstances" present? Yes ✓ No _____

Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?    (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | | |
|---|---|---|---|
| Hydrophytic Vegetation Present? | Yes ✓ No _____ | **Is the Sampled Area** | |
| Hydric Soil Present? | Yes ✓ No _____ | **within a Wetland?** | Yes _____ No ✓ |
| Wetland Hydrology Present? | Yes _____ No ✓ | | |

Remarks:

Area 3 westbound side.

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply)

| | | Secondary Indicators (minimum of two required) |
|---|---|---|
| ___ Surface Water (A1) | ___ Aquatic Fauna (B13) | ___ Surface Soil Cracks (B6) |
| ___ High Water Table (A2) | ___ Marl Deposits (B15) **(LRR U)** | ___ Sparsely Vegetated Concave Surface (B8) |
| ___ Saturation (A3) | ___ Hydrogen Sulfide Odor (C1) | ___ Drainage Patterns (B10) |
| ___ Water Marks (B1) | ___ Oxidized Rhizospheres along Living Roots (C3) | ___ Moss Trim Lines (B16) |
| ___ Sediment Deposits (B2) | ___ Presence of Reduced Iron (C4) | ___ Dry-Season Water Table (C2) |
| ___ Drift Deposits (B3) | ___ Recent Iron Reduction in Tilled Soils (C6) | ___ Crayfish Burrows (C8) |
| ___ Algal Mat or Crust (B4) | ___ Thin Muck Surface (C7) | ___ Saturation Visible on Aerial Imagery (C9) |
| ___ Iron Deposits (B5) | ___ Other (Explain in Remarks) | ___ Geomorphic Position (D2) |
| ___ Inundation Visible on Aerial Imagery (B7) | | ___ Shallow Aquitard (D3) |
| ___ Water-Stained Leaves (B9) | | ___ FAC-Neutral Test (D5) |
| | | ___ Sphagnum moss (D8) **(LRR T, U)** |

**Field Observations:**

| | | |
|---|---|---|
| Surface Water Present? | Yes _____ No ✓ Depth (inches): _____ | |
| Water Table Present? | Yes _____ No ✓ Depth (inches): _____ | |
| Saturation Present? (includes capillary fringe) | Yes _____ No ✓ Depth (inches): _____ | **Wetland Hydrology Present? Yes _____ No ✓** |

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

STATE 02037

**VEGETATION (Five Strata) –** Use scientific names of plants.　　　　Sampling Point: 5

| Tree Stratum (Plot size: 30m ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. Celtis laevigata | 5 | yes | FACW |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

5 = Total Cover
50% of total cover: 2.5%　20% of total cover: 1%

| Sapling Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. uercus virginiana | 2 | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

2 = Total Cover
50% of total cover: 1%　20% of total cover: 0.4

| Shrub Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Ilex vomitoria | 2 | yes | FACW |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |

2 = Total Cover
50% of total cover: 1%　20% of total cover: 0.4%

| Herb Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Sporobolus indicus | 2% | no | FACU |
| 2. Ambrosia trifida | 40% | yes | FAC |
| 3. Sorghum halepense | 10% | yes | FACU |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |

52 = Total Cover
50% of total cover: 26%　20% of total cover: 10.4%

| Woody Vine Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Rubus trivialis | 40% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

40 = Total Cover
50% of total cover: 20%　20% of total cover: 8%

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC: 3 (A)

Total Number of Dominant Species Across All Strata: 6 (B)

Percent of Dominant Species That Are OBL, FACW, or FAC: 50% (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | | x 1 = | |
| FACW species | 7 | x 2 = | 14 |
| FAC species | 40 | x 3 = | 120 |
| FACU species | 14 | x 4 = | 56 |
| UPL species | | x 5 = | |
| Column Totals: | 61 (A) | | 190 (B) |

Prevalence Index = B/A = 3.1

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

✓ 2 - Dominance Test is >50%

___ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?** Yes ✓ No ___

Remarks: (If observed, list morphological adaptations below).

US Army Corps of Engineers　　　　Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02038

**SOIL**                                                                      Sampling Point: 5

**Profile Description:  (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-5 | 10YR4/2 | 100% | | | | | SCl | |
| 5-18 | 10YR4/2 | 60% | 10YR6/4 | 40% | D | M | Cl | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1]Type:  C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.      [2]Location:  PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators:  (Applicable to all LRRs, unless otherwise noted.)**

Indicators for Problematic Hydric Soils[3]:

- ___ Histosol (A1)
- ___ Histic Epipedon (A2)
- ___ Black Histic (A3)
- ___ Hydrogen Sulfide (A4)
- ___ Stratified Layers (A5)
- ___ Organic Bodies (A6) **(LRR P, T, U)**
- ___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
- ___ Muck Presence (A8) **(LRR U)**
- ___ 1 cm Muck (A9) **(LRR P, T)**
- ___ Depleted Below Dark Surface (A11)
- ___ Thick Dark Surface (A12)
- ___ Coast Prairie Redox (A16) **(MLRA 150A)**
- ___ Sandy Mucky Mineral (S1) **(LRR O, S)**
- ___ Sandy Gleyed Matrix (S4)
- ___ Sandy Redox (S5)
- ___ Stripped Matrix (S6)
- ___ Dark Surface (S7) **(LRR P, S, T, U)**

- ___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
- ___ Thin Dark Surface (S9) **(LRR S, T, U)**
- ___ Loamy Mucky Mineral (F1) **(LRR O)**
- ___ Loamy Gleyed Matrix (F2)
- ✓ Depleted Matrix (F3)
- ___ Redox Dark Surface (F6)
- ___ Depleted Dark Surface (F7)
- ___ Redox Depressions (F8)
- ___ Marl (F10) **(LRR U)**
- ___ Depleted Ochric (F11) **(MLRA 151)**
- ___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
- ___ Umbric Surface (F13) **(LRR P, T, U)**
- ___ Delta Ochric (F17) **(MLRA 151)**
- ___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
- ___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

- ___ 1 cm Muck (A9) **(LRR O)**
- ___ 2 cm Muck (A10) **(LRR S)**
- ___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
- ___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
- ___ Red Parent Material (TF2)
- ___ Very Shallow Dark Surface (TF12)
- ___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____

Depth (inches): _____

**Hydric Soil Present?    Yes** ✓ **No** _____

Remarks:

STATE 02039

**WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region**

Project/Site: I-10 (SH 73 to Hamshire Rd)        City/County: Chambers County        Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT        State: TX        Sampling Point: 4

Investigator(s): Wellman        Section, Township, Range:

Landform (hillslope, terrace, etc.): drainageway        Local relief (concave, convex, none): convergent        Slope (%): 1%

Subregion (LRR or MLRA): T, 150A        Lat: 29.848745°        Long: -94.368873°        Datum: WGS84

Soil Map Unit Name: AspA - Aris-Spindletop complex, 0 to 1 percent slopes        NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)

Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?        Are "Normal Circumstances" present? Yes ✓ No _____

Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?        (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? Yes ✓ No _____ | **Is the Sampled Area** | |
| Hydric Soil Present? Yes ✓ No _____ | **within a Wetland?** | Yes ✓ No _____ |
| Wetland Hydrology Present? Yes ✓ No _____ | | |

Remarks:

This site is the area within the limits of the ditch. Area 3 Westbound side.

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply)

| | | Secondary Indicators (minimum of two required) |
|---|---|---|
| ✓ Surface Water (A1) | ___ Aquatic Fauna (B13) | ___ Surface Soil Cracks (B6) |
| ✓ High Water Table (A2) | ___ Marl Deposits (B15) **(LRR U)** | ___ Sparsely Vegetated Concave Surface (B8) |
| ✓ Saturation (A3) | ___ Hydrogen Sulfide Odor (C1) | ___ Drainage Patterns (B10) |
| ___ Water Marks (B1) | ___ Oxidized Rhizospheres along Living Roots (C3) | ___ Moss Trim Lines (B16) |
| ___ Sediment Deposits (B2) | ___ Presence of Reduced Iron (C4) | ___ Dry-Season Water Table (C2) |
| ___ Drift Deposits (B3) | ___ Recent Iron Reduction in Tilled Soils (C6) | ___ Crayfish Burrows (C8) |
| ___ Algal Mat or Crust (B4) | ___ Thin Muck Surface (C7) | ___ Saturation Visible on Aerial Imagery (C9) |
| ___ Iron Deposits (B5) | ___ Other (Explain in Remarks) | ___ Geomorphic Position (D2) |
| ___ Inundation Visible on Aerial Imagery (B7) | | ___ Shallow Aquitard (D3) |
| ___ Water-Stained Leaves (B9) | | ___ FAC-Neutral Test (D5) |
| | | ___ Sphagnum moss (D8) **(LRR T, U)** |

**Field Observations:**

Surface Water Present? Yes ✓ No _____ Depth (inches): 2 inches

Water Table Present? Yes ✓ No _____ Depth (inches): Surface

Saturation Present? Yes ✓ No _____ Depth (inches): Surface        **Wetland Hydrology Present? Yes ✓ No _____**
(includes capillary fringe)

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

STATE 02040

**VEGETATION (Five Strata)** – Use scientific names of plants.                                     Sampling Point: 4

| Tree Stratum (Plot size: Entire Site ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

| Sapling Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

| Shrub Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

| Herb Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. Cynodon dactylon | 20% | yes | FACU |
| 2. Polygonum hydropiperoides | 55% | yes | OBL |
| 3. Cyperus virens | 5% | no | FACW |
| 4. Sorghum halepense | 5% | no | FACU |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| | 85 = Total Cover | | |

50% of total cover: 45%   20% of total cover: 18%

| Woody Vine Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. Rubus trivialis | 5% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| | 5 = Total Cover | | |

50% of total cover: 2.5%   20% of total cover: 1%

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC: 1 (A)

Total Number of Dominant Species Across All Strata: 3 (B)

Percent of Dominant Species That Are OBL, FACW, or FAC: 33.3% (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | 55 | x 1 = | 55 |
| FACW species | 5 | x 2 = | 10 |
| FAC species | | x 3 = | |
| FACU species | 30 | x 4 = | 120 |
| UPL species | | x 5 = | |
| Column Totals: | 90 (A) | | 185 (B) |

Prevalence Index = B/A = 2.06

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

___ 2 - Dominance Test is >50%

✓ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?** Yes ✓ No _____

Remarks: (If observed, list morphological adaptations below).

STATE 02041

**SOIL**

Sampling Point: 4

**Profile Description:** (Describe to the depth needed to document the indicator or confirm the absence of indicators.)

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-8 | 10YR4/2 | 100% | | | | | SCl | |
| 8-18 | 10YR4/2 | 60% | 10YR6/4 | 40% | D | M | Cl | |

[1]Type: C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.    [2]Location: PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators:** (Applicable to all LRRs, unless otherwise noted.)

Indicators for Problematic Hydric Soils[3]:

- ___ Histosol (A1)
- ___ Histic Epipedon (A2)
- ___ Black Histic (A3)
- ___ Hydrogen Sulfide (A4)
- ___ Stratified Layers (A5)
- ___ Organic Bodies (A6) **(LRR P, T, U)**
- ___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
- ___ Muck Presence (A8) **(LRR U)**
- ___ 1 cm Muck (A9) **(LRR P, T)**
- ___ Depleted Below Dark Surface (A11)
- ___ Thick Dark Surface (A12)
- ___ Coast Prairie Redox (A16) **(MLRA 150A)**
- ___ Sandy Mucky Mineral (S1) **(LRR O, S)**
- ___ Sandy Gleyed Matrix (S4)
- ___ Sandy Redox (S5)
- ___ Stripped Matrix (S6)
- ___ Dark Surface (S7) **(LRR P, S, T, U)**

- ___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
- ___ Thin Dark Surface (S9) **(LRR S, T, U)**
- ___ Loamy Mucky Mineral (F1) **(LRR O)**
- ___ Loamy Gleyed Matrix (F2)
- ✓ Depleted Matrix (F3)
- ___ Redox Dark Surface (F6)
- ___ Depleted Dark Surface (F7)
- ___ Redox Depressions (F8)
- ___ Marl (F10) **(LRR U)**
- ___ Depleted Ochric (F11) **(MLRA 151)**
- ___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
- ___ Umbric Surface (F13) **(LRR P, T, U)**
- ___ Delta Ochric (F17) **(MLRA 151)**
- ___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
- ___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

- ___ 1 cm Muck (A9) **(LRR O)**
- ___ 2 cm Muck (A10) **(LRR S)**
- ___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
- ___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
- ___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
- ___ Red Parent Material (TF2)
- ___ Very Shallow Dark Surface (TF12)
- ___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____

Depth (inches): _____

**Hydric Soil Present?    Yes __✓__    No _____**

Remarks:

US Army Corps of Engineers

Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02042

**WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region**

Project/Site: I-10 (SH 73 to Hamshire Rd)    City/County: Chambers County    Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT    State: TX    Sampling Point: 3

Investigator(s): Wellman    Section, Township, Range: _____

Landform (hillslope, terrace, etc.): drainageway    Local relief (concave, convex, none): convergent    Slope (%): 1%

Subregion (LRR or MLRA): T, 150A    Lat: 29.855972°    Long: -94.359426°    Datum: WGS84

Soil Map Unit Name: BeaA - Beaumont clay, 0 to 1 percent slopes    NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No ___ (If no, explain in Remarks.)

Are Vegetation ___, Soil ___, or Hydrology ___ significantly disturbed?    Are "Normal Circumstances" present? Yes ✓ No ___

Are Vegetation ___, Soil ___, or Hydrology ___ naturally problematic?    (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? | Yes ___ No ✓ | **Is the Sampled Area** |
| Hydric Soil Present? | Yes ✓ No ___ | **within a Wetland?**    Yes ___ No ✓ |
| Wetland Hydrology Present? | Yes ___ No ✓ | |

Remarks:

This site is the area within the limits of the ditch.

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply)

___ Surface Water (A1)
___ High Water Table (A2)
___ Saturation (A3)
___ Water Marks (B1)
___ Sediment Deposits (B2)
___ Drift Deposits (B3)
___ Algal Mat or Crust (B4)
___ Iron Deposits (B5)
___ Inundation Visible on Aerial Imagery (B7)
___ Water-Stained Leaves (B9)

___ Aquatic Fauna (B13)
___ Marl Deposits (B15) **(LRR U)**
___ Hydrogen Sulfide Odor (C1)
___ Oxidized Rhizospheres along Living Roots (C3)
___ Presence of Reduced Iron (C4)
___ Recent Iron Reduction in Tilled Soils (C6)
___ Thin Muck Surface (C7)
___ Other (Explain in Remarks)

Secondary Indicators (minimum of two required)

___ Surface Soil Cracks (B6)
___ Sparsely Vegetated Concave Surface (B8)
___ Drainage Patterns (B10)
___ Moss Trim Lines (B16)
___ Dry-Season Water Table (C2)
___ Crayfish Burrows (C8)
___ Saturation Visible on Aerial Imagery (C9)
___ Geomorphic Position (D2)
___ Shallow Aquitard (D3)
___ FAC-Neutral Test (D5)
___ Sphagnum moss (D8) **(LRR T, U)**

**Field Observations:**

| | | | |
|---|---|---|---|
| Surface Water Present? | Yes ___ No ✓ | Depth (inches): ___ | |
| Water Table Present? | Yes ___ No ✓ | Depth (inches): ___ | |
| Saturation Present? (includes capillary fringe) | Yes ___ No ✓ | Depth (inches): ___ | **Wetland Hydrology Present?** Yes ___ No ✓ |

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

US Army Corps of Engineers      Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02043

**VEGETATION (Five Strata) –** Use scientific names of plants.                    Sampling Point: 3

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Tree Stratum (Plot size: Entire Site ) | | | |
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____  20% of total cover: _____

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Sapling Stratum (Plot size: Entire Site ) | | | |
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____  20% of total cover: _____

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Shrub Stratum (Plot size: Entire Site ) | | | |
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____  20% of total cover: _____

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Herb Stratum (Plot size: Entire Site ) | | | |
| 1. Cynodon dactylon | 80% | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| | 80 = Total Cover | | |

50% of total cover: 40%  20% of total cover: 16%

| | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| Woody Vine Stratum (Plot size: Entire Site ) | | | |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____  20% of total cover: _____

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC:    0    (A)

Total Number of Dominant Species Across All Strata:    1    (B)

Percent of Dominant Species That Are OBL, FACW, or FAC:    0%    (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: |
|---|---|---|
| OBL species | _____ | x 1 = _____ |
| FACW species | _____ | x 2 = _____ |
| FAC species | _____ | x 3 = _____ |
| FACU species | 80 | x 4 = 320 |
| UPL species | _____ | x 5 = _____ |
| Column Totals: | 80 (A) | 320 (B) |

Prevalence Index = B/A = 4

**Hydrophytic Vegetation Indicators:**

__ 1 - Rapid Test for Hydrophytic Vegetation

__ 2 - Dominance Test is >50%

__ 3 - Prevalence Index is ≤3.0[1]

__ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?**    Yes _____    No ✓

Remarks: (If observed, list morphological adaptations below).

STATE 02044

**SOIL**                                                                    Sampling Point: 3

**Profile Description: (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-4 | 10YR4/2 | 55% | 5YR5/2 | 45% | D | M | Cl | |
| 4-14 | 10YR5/2 | 95% | 5YR6/4 | 5% | C | PL | Cl | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1]Type:  C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.          [2]Location:  PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators:  (Applicable to all LRRs, unless otherwise noted.)**          **Indicators for Problematic Hydric Soils[3]:**

___ Histosol (A1)
___ Histic Epipedon (A2)
___ Black Histic (A3)
___ Hydrogen Sulfide (A4)
___ Stratified Layers (A5)
___ Organic Bodies (A6) **(LRR P, T, U)**
___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
___ Muck Presence (A8) **(LRR U)**
___ 1 cm Muck (A9) **(LRR P, T)**
___ Depleted Below Dark Surface (A11)
___ Thick Dark Surface (A12)
✓ Coast Prairie Redox (A16) **(MLRA 150A)**
___ Sandy Mucky Mineral (S1) **(LRR O, S)**
___ Sandy Gleyed Matrix (S4)
___ Sandy Redox (S5)
___ Stripped Matrix (S6)
___ Dark Surface (S7) **(LRR P, S, T, U)**

___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
___ Thin Dark Surface (S9) **(LRR S, T, U)**
___ Loamy Mucky Mineral (F1) **(LRR O)**
___ Loamy Gleyed Matrix (F2)
___ Depleted Matrix (F3)
___ Redox Dark Surface (F6)
___ Depleted Dark Surface (F7)
___ Redox Depressions (F8)
___ Marl (F10) **(LRR U)**
___ Depleted Ochric (F11) **(MLRA 151)**
___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
___ Umbric Surface (F13) **(LRR P, T, U)**
___ Delta Ochric (F17) **(MLRA 151)**
___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

___ 1 cm Muck (A9) **(LRR O)**
___ 2 cm Muck (A10) **(LRR S)**
___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
___ Red Parent Material (TF2)
___ Very Shallow Dark Surface (TF12)
___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**
   Type: _____
   Depth (inches): _____

**Hydric Soil Present?    Yes** ✓ **    No** _____

Remarks:

STATE 02045

## WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region

Project/Site: I-10 (SH 73 to Hamshire Rd)    City/County: Chambers County    Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT    State: TX    Sampling Point: 2

Investigator(s): Wellman    Section, Township, Range: _____

Landform (hillslope, terrace, etc.): terrace    Local relief (concave, convex, none): convex    Slope (%): 1%

Subregion (LRR or MLRA): T, 150A    Lat: 29.848839°    Long: -94.367502°    Datum: WGS84

Soil Map Unit Name: AspA - Aris-Spindletop complex, 0 to 1 percent slopes    NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)

Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?    Are "Normal Circumstances" present? Yes ✓ No _____

Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?    (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | | | |
|---|---|---|---|---|
| Hydrophytic Vegetation Present? | Yes _____ | No ✓ | **Is the Sampled Area** | |
| Hydric Soil Present? | Yes _____ | No ✓ | **within a Wetland?** | Yes _____ No ✓ |
| Wetland Hydrology Present? | Yes _____ | No ✓ | | |

Remarks:

## HYDROLOGY

**Wetland Hydrology Indicators:**

Primary Indicators (minimum of one is required; check all that apply)

| | | Secondary Indicators (minimum of two required) |
|---|---|---|
| ___ Surface Water (A1) | ___ Aquatic Fauna (B13) | ___ Surface Soil Cracks (B6) |
| ___ High Water Table (A2) | ___ Marl Deposits (B15) **(LRR U)** | ___ Sparsely Vegetated Concave Surface (B8) |
| ___ Saturation (A3) | ___ Hydrogen Sulfide Odor (C1) | ___ Drainage Patterns (B10) |
| ___ Water Marks (B1) | ___ Oxidized Rhizospheres along Living Roots (C3) | ___ Moss Trim Lines (B16) |
| ___ Sediment Deposits (B2) | ___ Presence of Reduced Iron (C4) | ___ Dry-Season Water Table (C2) |
| ___ Drift Deposits (B3) | ___ Recent Iron Reduction in Tilled Soils (C6) | ___ Crayfish Burrows (C8) |
| ___ Algal Mat or Crust (B4) | ___ Thin Muck Surface (C7) | ___ Saturation Visible on Aerial Imagery (C9) |
| ___ Iron Deposits (B5) | ___ Other (Explain in Remarks) | ___ Geomorphic Position (D2) |
| ___ Inundation Visible on Aerial Imagery (B7) | | ___ Shallow Aquitard (D3) |
| ___ Water-Stained Leaves (B9) | | ___ FAC-Neutral Test (D5) |
| | | ___ Sphagnum moss (D8) **(LRR T, U)** |

**Field Observations:**

| | | | |
|---|---|---|---|
| Surface Water Present? | Yes ___ No ✓ | Depth (inches): _____ | |
| Water Table Present? | Yes ___ No ✓ | Depth (inches): _____ | |
| Saturation Present? (includes capillary fringe) | Yes ___ No ✓ | Depth (inches): _____ | **Wetland Hydrology Present? Yes _____ No ✓** |

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

STATE 02046

**VEGETATION (Five Strata) –** Use scientific names of plants.                    Sampling Point: 2

| Tree Stratum (Plot size: 30m ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____    20% of total cover: _____

| Sapling Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____    20% of total cover: _____

| Shrub Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____    20% of total cover: _____

| Herb Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Ambrosia trifida | 50 | yes | FAC |
| 2. ernonia baldwinii | 1 | no | UPL |
| 3. Helianthus maximiliani | 1 | no | UPL |
| 4. Cynodon dactylon | 5 | no | FACU |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| | 57 = Total Cover | | |

50% of total cover: 28.5    20% of total cover: 12

| Woody Vine Stratum (Plot size: 30m ) | | | |
|---|---|---|---|
| 1. Rubus trivialis | 35 | yes | FACU |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| | 35 = Total Cover | | |

50% of total cover: 17.5    20% of total cover: 7

---

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC:  1  (A)

Total Number of Dominant Species Across All Strata:  4  (B)

Percent of Dominant Species That Are OBL, FACW, or FAC:  25%  (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | _____ | x 1 = | _____ |
| FACW species | _____ | x 2 = | _____ |
| FAC species | 50 | x 3 = | 150 |
| FACU species | 40 | x 4 = | 160 |
| UPL species | 2 | x 5 = | 10 |
| Column Totals: | 81 (A) | | 320 (B) |

Prevalence Index = B/A = 3.95

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

___ 2 - Dominance Test is >50%

___ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?**    Yes _____    No ✓

Remarks: (If observed, list morphological adaptations below).

US Army Corps of Engineers                    Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02047

**SOIL**

Sampling Point: 2

**Profile Description: (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-5 | 10YR4/3 | 100% | | | | | SCl | |
| 5-14 | 10YR5/4 | 100% | | | | | SCl | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[1]Type:  C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.     [2]Location:  PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators:  (Applicable to all LRRs, unless otherwise noted.)**

___ Histosol (A1)
___ Histic Epipedon (A2)
___ Black Histic (A3)
___ Hydrogen Sulfide (A4)
___ Stratified Layers (A5)
___ Organic Bodies (A6) **(LRR P, T, U)**
___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
___ Muck Presence (A8) **(LRR U)**
___ 1 cm Muck (A9) **(LRR P, T)**
___ Depleted Below Dark Surface (A11)
___ Thick Dark Surface (A12)
___ Coast Prairie Redox (A16) **(MLRA 150A)**
___ Sandy Mucky Mineral (S1) **(LRR O, S)**
___ Sandy Gleyed Matrix (S4)
___ Sandy Redox (S5)
___ Stripped Matrix (S6)
___ Dark Surface (S7) **(LRR P, S, T, U)**

___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
___ Thin Dark Surface (S9) **(LRR S, T, U)**
___ Loamy Mucky Mineral (F1) **(LRR O)**
___ Loamy Gleyed Matrix (F2)
___ Depleted Matrix (F3)
___ Redox Dark Surface (F6)
___ Depleted Dark Surface (F7)
___ Redox Depressions (F8)
___ Marl (F10) **(LRR U)**
___ Depleted Ochric (F11) **(MLRA 151)**
___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
___ Umbric Surface (F13) **(LRR P, T, U)**
___ Delta Ochric (F17) **(MLRA 151)**
___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

**Indicators for Problematic Hydric Soils[3]:**

___ 1 cm Muck (A9) **(LRR O)**
___ 2 cm Muck (A10) **(LRR S)**
___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
___ Anomalous Bright Loamy Soils (F20)
    **(MLRA 153B)**
___ Red Parent Material (TF2)
___ Very Shallow Dark Surface (TF12)
___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and
    wetland hydrology must be present,
    unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____

Depth (inches): _____

**Hydric Soil Present?     Yes _____     No __✓__**

Remarks:

STATE 02048

**WETLAND DETERMINATION DATA FORM – Atlantic and Gulf Coastal Plain Region**

Project/Site: I-10 (SH 73 to Hamshire Rd)        City/County: Chambers County        Sampling Date: 8-Dec-2015

Applicant/Owner: TxDOT        State: TX        Sampling Point: 1

Investigator(s): Wellman        Section, Township, Range: _____

Landform (hillslope, terrace, etc.): drainageway        Local relief (concave, convex, none): convergent        Slope (%): 0%

Subregion (LRR or MLRA): T, 150A        Lat: 29.848839°        Long: -94.367502°        Datum: WGS84

Soil Map Unit Name: AspA - Aris-Spindletop complex, 0 to 1 percent slopes        NWI classification: None

Are climatic / hydrologic conditions on the site typical for this time of year? Yes ✓ No _____ (If no, explain in Remarks.)

Are Vegetation _____, Soil _____, or Hydrology _____ significantly disturbed?        Are "Normal Circumstances" present? Yes ✓ No _____

Are Vegetation _____, Soil _____, or Hydrology _____ naturally problematic?        (If needed, explain any answers in Remarks.)

## SUMMARY OF FINDINGS – Attach site map showing sampling point locations, transects, important features, etc.

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? | Yes ✓ No _____ | **Is the Sampled Area** |
| Hydric Soil Present? | Yes ✓ No _____ | **within a Wetland?**        Yes ✓ No _____ |
| Wetland Hydrology Present? | Yes ✓ No _____ | |

Remarks:

This site is the area within the ditch.

## HYDROLOGY

**Wetland Hydrology Indicators:**                                  Secondary Indicators (minimum of two required)

Primary Indicators (minimum of one is required; check all that apply)    ___ Surface Soil Cracks (B6)

| | | |
|---|---|---|
| ___ Surface Water (A1) | ___ Aquatic Fauna (B13) | ___ Sparsely Vegetated Concave Surface (B8) |
| ✓ High Water Table (A2) | ___ Marl Deposits (B15) **(LRR U)** | ___ Drainage Patterns (B10) |
| ✓ Saturation (A3) | ___ Hydrogen Sulfide Odor (C1) | ___ Moss Trim Lines (B16) |
| ___ Water Marks (B1) | ___ Oxidized Rhizospheres along Living Roots (C3) | ___ Dry-Season Water Table (C2) |
| ___ Sediment Deposits (B2) | ___ Presence of Reduced Iron (C4) | ___ Crayfish Burrows (C8) |
| ___ Drift Deposits (B3) | ___ Recent Iron Reduction in Tilled Soils (C6) | ___ Saturation Visible on Aerial Imagery (C9) |
| ___ Algal Mat or Crust (B4) | ___ Thin Muck Surface (C7) | ___ Geomorphic Position (D2) |
| ___ Iron Deposits (B5) | ___ Other (Explain in Remarks) | ___ Shallow Aquitard (D3) |
| ___ Inundation Visible on Aerial Imagery (B7) | | ___ FAC-Neutral Test (D5) |
| ___ Water-Stained Leaves (B9) | | ___ Sphagnum moss (D8) **(LRR T, U)** |

**Field Observations:**

Surface Water Present?        Yes _____ No ✓ Depth (inches): none

Water Table Present?        Yes ✓ No _____ Depth (inches): surface

Saturation Present?        Yes ✓ No _____ Depth (inches): surface        **Wetland Hydrology Present?**  Yes ✓ No _____
(includes capillary fringe)

Describe Recorded Data (stream gauge, monitoring well, aerial photos, previous inspections), if available:

Remarks:

STATE 02049

**VEGETATION (Five Strata)** – Use scientific names of plants.

Sampling Point: 1

| Tree Stratum (Plot size: Enitre Site ) | Absolute % Cover | Dominant Species? | Indicator Status |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

| Sapling Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. Celtis laevigata | 10 | yes | UPL |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 10 = Total Cover | | |

50% of total cover: 5%   20% of total cover: 1%

| Shrub Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

| Herb Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. Scirpus pungens | 20 | yes | OBL |
| 2. Cynodon dactylon | 5 | yes | FACU |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | | | |
| | 25 = Total Cover | | |

50% of total cover: 12.5   20% of total cover: 5

| Woody Vine Stratum (Plot size: Entire Site ) | | | |
|---|---|---|---|
| 1. None | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| | 0 = Total Cover | | |

50% of total cover: _____   20% of total cover: _____

**Dominance Test worksheet:**

Number of Dominant Species That Are OBL, FACW, or FAC: 1 (A)

Total Number of Dominant Species Across All Strata: 3 (B)

Percent of Dominant Species That Are OBL, FACW, or FAC: 33.3% (A/B)

**Prevalence Index worksheet:**

| Total % Cover of: | | Multiply by: | |
|---|---|---|---|
| OBL species | 20 | x 1 = | 20 |
| FACW species | | x 2 = | |
| FAC species | | x 3 = | |
| FACU species | 5 | x 4 = | 20 |
| UPL species | 10 | x 5 = | 50 |
| Column Totals: | 35 (A) | | 90 (B) |

Prevalence Index = B/A = 2.57

**Hydrophytic Vegetation Indicators:**

___ 1 - Rapid Test for Hydrophytic Vegetation

___ 2 - Dominance Test is >50%

✓ 3 - Prevalence Index is ≤3.0[1]

___ Problematic Hydrophytic Vegetation[1] (Explain)

[1]Indicators of hydric soil and wetland hydrology must be present, unless disturbed or problematic.

**Definitions of Five Vegetation Strata:**

**Tree** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and 3 in. (7.6 cm) or larger in diameter at breast height (DBH).

**Sapling** – Woody plants, excluding woody vines, approximately 20 ft (6 m) or more in height and less than 3 in. (7.6 cm) DBH.

**Shrub** – Woody plants, excluding woody vines, approximately 3 to 20 ft (1 to 6 m) in height.

**Herb** – All herbaceous (non-woody) plants, including herbaceous vines, regardless of size, and woody plants, except woody vines, less than approximately 3 ft (1 m) in height.

**Woody vine** – All woody vines, regardless of height.

**Hydrophytic Vegetation Present?**   Yes ✓   No _____

Remarks: (If observed, list morphological adaptations below).

US Army Corps of Engineers

Atlantic and Gulf Coastal Plain Region – Version 2.0

STATE 02050

**SOIL**

Sampling Point: 1

**Profile Description: (Describe to the depth needed to document the indicator or confirm the absence of indicators.)**

| Depth (inches) | Matrix Color (moist) | % | Redox Features Color (moist) | % | Type[1] | Loc[2] | Texture | Remarks |
|---|---|---|---|---|---|---|---|---|
| 0-8 | 10YR4/2 | 100% | | | | | SCl | |
| 8-18 | 10YR4/2 | 60% | 10YR6/4 | 40% | D | M | C | |

[1]Type: C=Concentration, D=Depletion, RM=Reduced Matrix, MS=Masked Sand Grains.     [2]Location: PL=Pore Lining, M=Matrix.

**Hydric Soil Indicators: (Applicable to all LRRs, unless otherwise noted.)**

___ Histosol (A1)
___ Histic Epipedon (A2)
___ Black Histic (A3)
___ Hydrogen Sulfide (A4)
___ Stratified Layers (A5)
___ Organic Bodies (A6) **(LRR P, T, U)**
___ 5 cm Mucky Mineral (A7) **(LRR P, T, U)**
___ Muck Presence (A8) **(LRR U)**
___ 1 cm Muck (A9) **(LRR P, T)**
___ Depleted Below Dark Surface (A11)
___ Thick Dark Surface (A12)
___ Coast Prairie Redox (A16) **(MLRA 150A)**
___ Sandy Mucky Mineral (S1) **(LRR O, S)**
___ Sandy Gleyed Matrix (S4)
___ Sandy Redox (S5)
___ Stripped Matrix (S6)
___ Dark Surface (S7) **(LRR P, S, T, U)**

___ Polyvalue Below Surface (S8) **(LRR S, T, U)**
___ Thin Dark Surface (S9) **(LRR S, T, U)**
___ Loamy Mucky Mineral (F1) **(LRR O)**
___ Loamy Gleyed Matrix (F2)
✓ Depleted Matrix (F3)
___ Redox Dark Surface (F6)
___ Depleted Dark Surface (F7)
___ Redox Depressions (F8)
___ Marl (F10) **(LRR U)**
___ Depleted Ochric (F11) **(MLRA 151)**
___ Iron-Manganese Masses (F12) **(LRR O, P, T)**
___ Umbric Surface (F13) **(LRR P, T, U)**
___ Delta Ochric (F17) **(MLRA 151)**
___ Reduced Vertic (F18) **(MLRA 150A, 150B)**
___ Piedmont Floodplain Soils (F19) **(MLRA 149A)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 149A, 153C, 153D)**

**Indicators for Problematic Hydric Soils[3]:**

___ 1 cm Muck (A9) **(LRR O)**
___ 2 cm Muck (A10) **(LRR S)**
___ Reduced Vertic (F18) **(outside MLRA 150A,B)**
___ Piedmont Floodplain Soils (F19) **(LRR P, S, T)**
___ Anomalous Bright Loamy Soils (F20) **(MLRA 153B)**
___ Red Parent Material (TF2)
___ Very Shallow Dark Surface (TF12)
___ Other (Explain in Remarks)

[3]Indicators of hydrophytic vegetation and wetland hydrology must be present, unless disturbed or problematic.

**Restrictive Layer (if observed):**

Type: _____
Depth (inches): _____

**Hydric Soil Present?     Yes __✓__     No _____**

Remarks:

STATE 02051

Appendix B

USACE-Galveston District Level 1 Stream
Assessment Data Forms

STATE 02052

# Stream Assessment Data Form for Level 1

## U.S. Army Corps of Engineers Galveston District

| File Number | Applicant | Stahler Stream Order | 8 Digit HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|
| | TxDOT-BMT | 2 | 12040201 | 8-Dec-2015 | Area 1 | Trib of Mayhaw Bayou |

| Name(s) of Evaluator(s) | Steam Name and Type |
|---|---|
| Jeff Wellman | Trib of Mayhaw Bayou - Intermittent |

### 1. Channel Condition: Assess the cross-section of the stream and prevailing condition (erosion, aggradation).

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Visual Channel Condition Parameter | Channel shows very little incision or widening and little or no evidence of erosion or unprotected banks. Indicators of stability include greater than 80% vegetative cover on the banks, stable point bars and bankfull benches may be present, mid-channel and transverse bars are rare or transient. The stream has access to active floodplain or fully developed bankfull benches. No bulkheading or riprap may be present. | Channel is slightly incised and contains a few areas of active erosion. Indicators of instability include vegetative cover or natural rock protection only present along 60-80% of the Transect, point bars and bankfull benches are likely present and transient sediment is present along 10-40% of the stream bottom. The stream has access to bankfull benches or developed floodplains along portions of the reach. Channel may show evidence of past channel alteration, but should be exhibiting notable recovery of a natural channel. Bulkhead and riprap are limited to 1-25% of the Transect. | Channel is incised or has had its course widened. Indicators of instability include the presence of erosional scars on 40-60% of the Transect, vegetative cover or natural rock only found on 40-60% of the Transect, vertical or undercut banks, or nickpoints associated with headcuts may be present and portions of the channel may be widening while other portions of the channel are narrowing, and transient sediments are found in 40-60% of the natural stream bed or bottom. The stream does not have access to the active floodplain. Bulkheading or riprap is found along 25-50% of the Transect. | Channel is over-widened or incised with vertically or laterally unstable banks. Visual indicators of over-widening and incision include near vertical banks with shallow root depths, erosional scars present along 60-80% of the Transect, vegetative cover or natural rock is limited to 20-40% of the Transect, substantial sediment deposition of uniformed-size material is present along 60-80% of the Transect and bankfull benches are absent. The stream does not have access to an active floodplain. Bulkheading and riprap are present along 50-80% of the Transect. | Channel is deeply incised or excavated with vertical or lateral instability in the stream bank. Indicators of instability include the streambed elevation located below the rooting depth, both banks are vertical or undercut, vegetative surface protection or natural rock is only found along 20% or less of the Transect, the bank is sloughing and erosional scars or raw banks present on 80-100% of the Transect and 80% or more of the natural streambed is covered by substantial sediment resulting in threaded channels. The stream does not have access to an active floodplain. | CV |
| Score | 5 | 4 | 3 | 2 | 1 | 2.0 |

Notes:

### 2. RIPARIAN BUFFERS: Assess both banks' 100-foot riparian areas along the entire Transect.

| | Optimal | Suboptimal | | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|---|
| Riparian Buffers | Native woody species represent greater than 60% of the coverage and wetlands are present. | Native woody community species represent greater than 60% coverage with NO wetlands present within the buffer OR native woody community species represent 30-60% coverage with wetlands present. No maintenance or grazing activities. | Native woody community species represent between 30-60% coverage with NO wetlands present. No maintenance or grazing activities. | Native woody community represents less than 30% coverage with no maintenance or grazing activities. | The buffer is dominated by one or more of the following: lawns, mowed or maintained right-of-way, no-till cropland, actively grazed pasture, sparsely vegetated non-maintained area, recently seeded and stabilized or other comparable condition. | The area is dominated by impervious surfaces, mine spoil lands, denuded surfaces, conventional tillage row crops, active feed lots or comparable conditions. | |
| Condition Scores | 5 | High = 4.5 | Low = 4 | 3 | 2 | 1 | |

Notes:

| Right Bank | % Riparian Area> | 95% | 3% | 2% | | | 100% | | |
| | Score > | 2 | 4.5 | 4 | | | | | |
| | | | | | | | | CI= (Sum % RA * Scores*0.01)/2 | |
| Left Bank | % Riparian Area> | 95% | 3% | 2% | | | 100% | Rt Bank CI > | 2.12 | BV |
| | Score > | 2 | 4.5 | 4 | | | | Lt Bank CI > | 2.12 | 2.12 |

### 3. AQUATIC USE: The Transect is assessed based on the aquatic life use category score assigned to the stream segment by the TCEQ.

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| AQUATIC USE | Aquatic Life Score of Exceptional. | Aquatic Life Score of High. Perennial streams that have not been assessed are also assumed to have an Aquatic Life Score of High. | Aquatic Life Score of Intermediate. | Aquatic Life Score of Limited. Intermittent Streams with Perennial Pools that have not been assessed are also assumed to have an Aquatic Life Score of Limited. | Aquatic Life Score of Minimal. Intermittent and ephemeral streams that have not been assessed are also assumed to have an Aquatic Life Score of Minimal. | UV |
| Score | 5 | 4 | 3 | 2 | 1 | 1.00 |

Notes

1 of 2

STATE 02053

## Stream Impact Assessment Form Page 2

| Project # | Applicant | Locality | Cowardin Class. | HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**4. CHANNEL ALTERATION:** Stream crossings, riprap, concrete, gabions, or concrete blocks, straightening of channel, channelization, embankments, spoil piles, constrictions, livestock

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Channel Alteration | Channelization, dredging, alteration or hardening absent. Stream has unaltered pattern or has normalized. No dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures within the Transect. | Less than 30% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability have recovered. Withdrawals, if present, have no observable affect on flow. | Between 30-60% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability are beginning to recover. Withdrawals, if present, may have an observable affect on flow, but no observable affect on habitat or biota. | Between 60-90% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration is present, and stream pattern and stability are not recovering. Withdrawals, if present, may have an observable affect on both flow and habitat or biota. | Between 90-100% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Withdrawals, if present, are large enough to have severe loss of flow and cause little to no habitat or biota. | AV |
| SCORE | 5 | 4 | 3 | 2 | 1 | 2.00 |

Notes

| REACH CONDITION INDEX and STREAM CONDITION UNITS FOR THIS REACH | |
|---|---|
| THE CONDITION INDEX (CI) >> | 1.78 |

INSERT PHOTOS:

2 of 2

STATE 02054

# Stream Assessment Data Form for Level 1

## U.S. Army Corps of Engineers Galveston District

| File Number | Applicant | Stahler Stream Order | 8 Digit HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|
| | TxDOT-BMT | 2 | 12040201 | 8-Dec-2015 | Area 2 | Trib of Mayhaw Bayou |

| Name(s) of Evaluator(s) | Steam Name and Type |
|---|---|
| Jeff Wellman | Trib of Mayhaw Bayou - Intermittent |

### 1. Channel Condition: Assess the cross-section of the stream and prevailing condition (erosion, aggradation).

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Visual Channel Condition Parameter | Channel shows very little incision or widening and little or no evidence of erosion or unprotected banks. Indicators of stability include greater than 80% vegetative cover on the banks, stable point bars and bankfull benches may be present, mid-channel and transverse bars are rare or transient. The stream has access to active floodplain or fully developed bankfull benches. No bulkheading or riprap may be present. | Channel is slightly incised and contains a few areas of active erosion. Indicators of instability include vegetative cover or natural rock protection only present along 60-80% of the Transect, point bars and bankfull benches are likely present and transient sediment is present along 10-40% of the stream bottom. The stream has access to bankfull benches or developed floodplains along portions of the reach. Channel may show evidence of past channel alteration, but should be exhibiting notable recovery of a natural channel. Bulkhead and riprap are limited to 1-25% of the Transect. | Channel is incised or has had its course widened. Indicators of instability include the presence of erosional scars on 40-60% of the Transect, vegetative cover or natural rock only found on 40-60% of the Transect, vertical or undercut banks, or nickpoints associated with headcuts may be present and portions of the channel may be widening while other portions of the channel are narrowing, and transient sediments are found in 40-60% of the natural stream bed or bottom. The stream does not have access to the active floodplain. Bulkheading or riprap is found along 25-50% of the Transect. | Channel is over-widened or incised with vertically or laterally unstable banks. Visual indicators of over-widening and incision include near vertical banks with shallow root depths, erosional scars present along 60-80% of the Transect, vegetative cover or natural rock is limited to 20-40% of the Transect, substantial sediment deposition of uniformed-size material is present along 60-80% of the Transect and point bars and bankfull benches are absent. The stream does not have access to an active floodplain. Bulkheading and riprap are present along 50-80% of the Transect. | Channel is deeply incised or excavated with vertical or lateral instability in the stream bank. Indicators of instability include the streambed elevation located below the rooting depth, both banks are vertical or undercut, vegetative surface protection or natural rock is only found along 20% or less of the Transect, the bank is sloughing and erosional scars or raw banks present on 80-100% of the Transect and 80% or more of the natural streambed is covered by substantial sediment resulting in threaded channels. The stream does not have access to an active floodplain. | CV |
| Score | 5 | 4 | 3 | 2 | 1 | 2.0 |

Notes:

### 2. RIPARIAN BUFFERS: Assess both banks' 100-foot riparian areas along the entire Transect.

| | Optimal | Suboptimal | | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|---|
| Riparian Buffers | Native woody species represent greater than 60% of the coverage and wetlands are present. | Native woody community species represent greater than 60% coverage with NO wetlands present within the buffer OR native woody community species represent 30-60% coverage with wetlands present. No maintenance or grazing activities. | Native woody community species represent between 30-60% coverage with NO wetlands present. No maintenance or grazing activities. | Native woody community represents less than 30% coverage with no maintenance or grazing activities. | The buffer is dominated by one or more of the following: lawns, mowed or maintained right-of-way, no-till cropland, actively grazed pasture, sparsely vegetated non-maintained area, recently seeded and stabilized or other comparable condition. | The area is dominated by impervious surfaces, mine spoil lands, denuded surfaces, conventional tillage row crops, active feed lots or comparable conditions. | |
| Condition Scores | 5 | High = 4.5 | Low = 4 | 3 | 2 | 1 | |

Notes: Wetlands present on westbound side.

| Right Bank | % Riparian Area> | 95% | 2% | 3% | | | 100% | |
| | Score > | 2 | 4.5 | 4 | | | | |
| | | | | | | | CI= (Sum % RA * Scores*0.01)/2 | |
| Left Bank | % Riparian Area> | 95% | 2% | 3% | | | 100% | Rt Bank CI > | 2.11 | BV |
| | Score > | 2 | 4.5 | 4 | | | | Lt Bank CI > | 2.11 | 2.11 |

### 3. AQUATIC USE: The Transect is assessed based on the aquatic life use category score assigned to the stream segment by the TCEQ.

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| AQUATIC USE | Aquatic Life Score of Exceptional. | Aquatic Life Score of High. Perennial streams that have not been assessed are also assumed to have an Aquatic Life Score of High. | Aquatic Life Score of Intermediate. | Aquatic Life Score of Limited. Intermittent Streams with Perennial Pools that have not been assessed are also assumed to have an Aquatic Life Score of Limited. | Aquatic Life Score of Minimal. Intermittent and ephemeral streams that have not been assessed are also assumed to have an Aquatic Life Score of Minimal. | UV |
| Score | 5 | 4 | 3 | 2 | 1 | 1.00 |

Notes

1 of 2

STATE 02055

## Stream Impact Assessment Form Page 2

| Project # | Applicant | Locality | Cowardin Class. | HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**4. CHANNEL ALTERATION:** Stream crossings, riprap, concrete, gabions, or concrete blocks, straightening of channel, channelization, embankments, spoil piles, constrictions, livestock

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Channel Alteration | Channelization, dredging, alteration or hardening absent. Stream has unaltered pattern or has normalized. No dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures within the Transect. | Less than 30% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability have recovered. Withdrawals, if present, have no observable affect on flow. | Between 30-60% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability are beginning to recover. Withdrawals, if present, may have an observable affect on flow, but no observable affect on habitat or biota. | Between 60-90% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration is present, and stream pattern and stability are not recovering. Withdrawals, if present, may have an observable affect on both flow and habitat or biota. | Between 90-100% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Withdrawals, if present, are large enough to have severe loss of flow and cause little to no habitat or biota. | AV |
| SCORE | 5 | 4 | 3 | 2 | 1 | 2.00 |

Notes

| REACH CONDITION INDEX and STREAM CONDITION UNITS FOR THIS REACH | |
|---|---|
| THE CONDITION INDEX (CI) >> | 1.78 |

INSERT PHOTOS:

2 of 2

STATE 02056

# Stream Assessment Data Form for Level 1

## U.S. Army Corps of Engineers Galveston District

| File Number | Applicant | Stahler Stream Order | 8 Digit HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|
| | TxDOT-BMT | 2 | 12040201 | 8-Dec-2015 | Area 3 | Mayhaw Bayou |

| Name(s) of Evaluator(s) | Steam Name and Type |
|---|---|
| Jeff Wellman | Mayhaw Bayou - perennial |

### 1. Channel Condition: Assess the cross-section of the stream and prevailing condition (erosion, aggradation).

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Visual Channel Condition Parameter | Channel shows very little incision or widening and little or no evidence of erosion or unprotected banks. Indicators of stability include greater than 80% vegetative cover on the banks, stable point bars and bankfull benches may be present, mid-channel and transverse bars are rare or transient. The stream has access to active floodplain or fully developed bankfull benches. No bulkheading or riprap may be present. | Channel is slightly incised and contains a few areas of active erosion. Indicators of instability include vegetative cover or natural rock protection only present along 60-80% of the Transect, point bars and bankfull benches are likely present and transient sediment is present along 10-40% of the stream bottom. The stream has access to bankfull benches or developed floodplains along portions of the reach. Channel may show evidence of past channel alteration, but should be exhibiting notable recovery of a natural channel. Bulkhead and riprap are limited to 1-25% of the Transect. | Channel is incised or has had its course widened. Indicators of instability include the presence of erosional scars on 40-60% of the Transect, vegetative cover or natural rock only found on 40-60% of the Transect, vertical or undercut banks, or nickpoints associated with headcuts may be present and portions of the channel may be widening while other portions of the channel are narrowing, and transient sediments are found in 40-60% of the natural stream bed or bottom. The stream does not have access to the active floodplain. Bulkheading or riprap is found along 25-50% of the Transect. | Channel is over-widened or incised with vertically or laterally unstable banks. Visual indicators of over-widening and incision include near vertical banks with shallow root depths, erosional scars present along 60-80% of the Transect, vegetative cover or natural rock is limited to 20-40% of the Transect, substantial sediment deposition of uniformed-size material is present along 60-80% of the Transect and bankfull benches are absent. The stream does not have access to an active floodplain. Bulkheading and riprap are present along 50-80% of the Transect. | Channel is deeply incised or excavated with vertical or lateral instability in the stream bank. Indicators of instability include the streambed elevation located below the rooting depth, both banks are vertical or undercut, vegetative surface protection or natural rock is only found along 20% or less of the Transect, the bank is sloughing and erosional scars or raw banks present on 80-100% of the Transect and 80% or more of the natural streambed is covered by substantial sediment resulting in threaded channels. The stream does not have access to an active floodplain. | CV |
| Score | 5 | 4 | 3 | 2 | 1 | 2.0 |

Notes:

### 2. RIPARIAN BUFFERS: Assess both banks' 100-foot riparian areas along the entire Transect.

| | Optimal | Suboptimal | | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|---|
| Riparian Buffers | Native woody species represent greater than 60% of the coverage and wetlands are present. | Native woody community species represent greater than 60% coverage with NO wetlands present in the buffer OR native woody community species represent 30-60% coverage with wetlands present. No maintenance or grazing activities. | Native woody community species represent between 30-60% coverage with NO wetlands present. No maintenance or grazing activities. | Native woody community represents less than 30% coverage with no maintenance or grazing activities. | The buffer is dominated by one or more of the following: lawns, mowed or maintained right-of-way, no-till cropland, actively grazed pasture, sparsely vegetated non-maintained area, recently seeded and stabilized or other comparable condition. | The area is dominated by impervious surfaces, mine spoil lands, denuded surfaces, conventional tillage row crops, active feed lots or comparable conditions. | |
| Condition Scores | 5 | High = 4.5 | Low = 4 | 3 | 2 | 1 | |

Notes: Wetlands present on westbound side.

| Right Bank | % Riparian Area> | 95% | 2% | 3% | | | 100% | | |
|---|---|---|---|---|---|---|---|---|---|
| | Score > | 2 | 4.5 | 4 | | | | | |
| | | | | | | | | CI= (Sum % RA * Scores*0.01)/2 | |
| Left Bank | % Riparian Area> | 95% | 2% | 3% | | | 100% | Rt Bank CI > | 2.11 | BV |
| | Score > | 2 | 4.5 | 4 | | | | Lt Bank CI > | 2.11 | 2.11 |

### 3. AQUATIC USE: The Transect is assessed based on the aquatic life use category score assigned to the stream segment by the TCEQ.

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| AQUATIC USE | Aquatic Life Score of Exceptional. | Aquatic Life Score of High. Perennial streams that have not been assessed are also assumed to have an Aquatic Life Score of High. | Aquatic Life Score of Intermediate. | Aquatic Life Score of Limited. Intermittent Streams with Perennial Pools that have not been assessed are also assumed to have an Aquatic Life Score of Limited. | Aquatic Life Score of Minimal. Intermittent and ephemeral streams that have not been assessed are also assumed to have an Aquatic Life Score of Minimal. | UV |
| Score | 5 | 4 | 3 | 2 | 1 | 1.00 |

Notes

1 of 2

STATE 02057

## Stream Impact Assessment Form Page 2

| Project # | Applicant | Locality | Cowardin Class. | HUC | Date | Transect # | Transect Description |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**4. CHANNEL ALTERATION:** Stream crossings, riprap, concrete, gabions, or concrete blocks, straightening of channel, channelization, embankments, spoil piles, constrictions, livestock

| | Optimal | Suboptimal | Marginal | Poor | Severe | |
|---|---|---|---|---|---|---|
| Channel Alteration | Channelization, dredging, alteration or hardening absent. Stream has unaltered pattern or has normalized. No dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures within the Transect. | Less than 30% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability have recovered. Withdrawals, if present, have no observable affect on flow. | Between 30-60% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration may be present, but stream pattern and stability are beginning to recover. Withdrawals, if present, may have an observable affect on flow, but no observable affect on habitat or biota. | Between 60-90% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Evidence of past alteration is present, and stream pattern and stability are not recovering. Withdrawals, if present, may have an observable affect on both flow and habitat or biota. | Between 90-100% of the Transect is impacted by dredging, dams, dikes, levees, culverts, riprap, bulkheads, armor, drop structures or withdrawal structures. Withdrawals, if present, are large enough to have severe loss of flow and cause little to no habitat or biota. | AV |
| SCORE | 5 | 4 | 3 | 2 | 1 | 2.00 |

Notes

| REACH CONDITION INDEX and STREAM CONDITION UNITS FOR THIS REACH | |
|---|---|
| THE CONDITION INDEX (CI) >> | 1.78 |

INSERT PHOTOS:

2 of 2

STATE 02058

This report was written on behalf of the Texas Department of Transportation by



500 Jefferson St.
Houston, TX 7002-7300
www.stantec.com

STATE 02059

STATE'S
EXHIBIT

E
_____



**U.S. Department
of Transportation**

**Federal Highway
Administration**

**Texas Division Office**

April 21, 2017

300 E. 8th Street, Room 826
Austin, TX 78701
Phone: (512) 536-5900
Fax: (512) 536-5990
texas.fhwa@dot.gov

In Reply Refer To:
HB-TX

Jefferson and Chambers Counties
IH-10: From FM 1663 to FM 365
CSJ: 0739-01-039, 0739-02-161
Interstate Access Justification Report and Design Schematics

Mr. Thomas D. Beeman, P.E.
Director of Field Coordination
Design Division
Texas Department of Transportation
125 E. 11th Street
Austin, TX 78701-2483

Dear Mr. Beeman:

The Federal Highway Administration has reviewed the Interstate Access Justification Report (IAJR) for the modification of the subject interchanges. This report was transmitted to the Federal Highway Administration on April 11, 2017. This IAJR combines an IAJR that was approved on August 8, 2016 for the 0739-01-039 section (From Brush Island Rd to FM 1663) and a draft IAJR submitted for review on January 10, 2017 for the 0739-02-161 section (From Hampshire Rd to FM 365).

The proposed modification would widen the mainlanes from four lanes to six lanes, reconstruct the on and off ramps to/from FM 1663 in the eastbound and westbound directions respectively, reconstruct the interchanges to standard diamond and change the underpass to overpasses at the Hampshire Rd and the FM 365 interchanges, add a new diamond interchange at the Brush Island crossing and add a westbound off ramp and a westbound to eastbound U-turn at North Folk Taylor Bayou.

The IAJR has been found to be engineering and operationally acceptable. Final approval cannot be granted until the NEPA process has been completed. This approval is subject to reevaluation if significant changes occur in the final design or if construction is delayed (as specified in 23 CFR 771.129).

FHWA has also reviewed the design schematics provided to us via letters from Design Division dated April 11, 2017. The revised schematics are hereby approved as acceptable for this degree of completion in the design process.

If you should have any questions, please contact Semme Yilma, P.E. at (512) 536-5975.

Sincerely,

Gregory Punske, P.E.
District Engineer

cc:  Adam Jack, P.E., Director of Transportation Planning and Development, Beaumont District

STATE 010621

**STATE'S EXHIBIT**

F

| | |
|---|---|
| **From:** | Larry Vincent |
| **To:** | Glorieni Azeredo |
| **Cc:** | TX-DOT-TT; TX-DOT-OC |
| **Subject:** | Defendant"s expert disclosures |
| **Date:** | Wednesday, December 21, 2022 10:22:20 AM |

Glori,

Plaintiffs will be moving to strike the disclosures served by the State yesterday and an order precluding opinion testimony from any witness called by the State at trial.

Does the State oppose that motion?

**Larry Vincent**
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469.904.4557 direct
214.680.1668 cell
469.444.5002 fax

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient(s). If you are not an intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify me by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Thank you.