IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, ET AL. | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | Civil Action No. 3:20-CV-00223 |
| | § | |
| THE STATE OF TEXAS | § | |
| *Defendant* | § | |

**THE STATE OF TEXAS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FOR JUDGMENT ON THE PLEADINGS, AND MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ............................................................................................. ii

I.  SUMMARY ........................................................................................................... 1

II. REPLY TO COUNTER STATEMENT OF RELEVANT FACTS ........................ 2

   A. CSJ Nos. 508-03-062 and 508-03-066 (Construction from 1988 to 1994) .................................................................................................. 3

   B. CSJ Nos. 739-01-039, 739-02-160, and 739-02-161 (Construction ongoing from 2017 to Present) ....................................................... 6

III. INTENT .................................................................................................................. 7

   A. Plaintiffs fail to understand or provide the proper standard and examination of intent as it relates to what the State knew or was substantially certain would occur .................................................. 7

   B. Not one Plaintiff located along or near CSJ Nos. 508-03-062 and 508-03-066 provides evidence of the State's mental processes at the time the affirmative act occurred, thereby failing to prove the necessary element of intent in this case ........................................................... 9

   C. Plaintiffs' reliance on an argument of legal imputation of knowledge as it relates to the design of CSJ Nos. 739-01-039, 739-02-160, and 739-02-161 (construction ongoing from 2017 to present), is unsupported by the law as it relates to inverse condemnation and flooding .......................... 9

IV. CAUSATION .......................................................................................................... 11

V.  REQUEST FOR INDIVIDUAL RULINGS ........................................................... 12

VI. PRAYER AND CONCLUSION ............................................................................ 13

CERTIFICATE OF SERVICE ........................................................................................ 14

# INDEX OF AUTHORITIES

**CASES**            **Page**

*Brandywood Hous., Ltd. v. Texas Dep't of Transp.*,
    74 S.W.3d 421 (Tex. App.—Houston [1st Dist.] 2001) .................................. 11, 12

*City of San Antonio v. Pollock*,
    284 S.W.3d 809 (Tex. 2009) ............................................................. 1, 2, 7, 8, 10

*City of Socorro v. Campos*,
    510 S.W.3d 121 (Tex. App.—El Paso 2016, pet. denied) ............................... 1, 7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ........................................................................................ 11

*Harris Cnty. Flood Control Dist. v. Kerr*,
    499 S.W.3d 793 (Tex. 2016) ....................................................................... 2, 8, 10

*State v. Holland*,
    221 S.W. 3d 639 (Tex. 2007) .............................................................................. 1

*Tarrant Reg'l Water Dist. v. Gragg*,
    151 S.W.3d 546 (Tex. 2004) ............................................................................ 11

**STATUTES, RULES & REGULATIONS**

Tex. Const. art. I, § 17 ............................................................................................ 1

Defendant, the State of Texas (the State) acting by and through the Texas Department of Transportation (TxDOT), files this Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Judgment on the Pleadings, and Motion for Summary Judgment, and would respectfully show the following:

## I.   SUMMARY

Plaintiffs' response ECF 145 (Pls.' Resp.) demonstrates their fundamental misunderstanding of their burden and highlights the confusion they have created through their attempt to turn disparate and untenable allegations by multiple Plaintiffs into a single actionable claim. To succeed on their inverse claims, every single Plaintiff in this case must supply evidence of the following: (1) the State intentionally performed certain acts, (2) that resulted in a taking or damaging of property (3) for public use. *See State v. Holland,* 221 S.W.3d 639, 643 (Tex. 2007); *see also* Tex. Const. art. I, § 17. None has done so.

Plaintiffs consistently conflate the various and separate acts that TxDOT undertook—the five construction projects—with the flooding damages that allegedly ultimately occurred due to those projects. The dates of any flooding are not themselves acts upon which Plaintiffs can base a claim. They are only helpful as possible dates from which damages might theoretically be calculated if any successful claim was established. The certain and specific acts allegedly causing identifiable harm or the specific property damage that would result from the acts are properly assessed as of the projects' construction dates. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009); *see City of Socorro v. Campos*, 510 S.W.3d 121, 128–29 (Tex. App.—El Paso 2016, pet. denied). The government's knowledge as to the identifiable harm or substantial certainty

1

must not be determined with the benefit of hindsight, such as some date after the project had already been completed or the dates the alleged damages ultimately occurred. *See Pollock*, 284 S.W.3d at 821; *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 806 (Tex. 2016). In this case, both intent and causation are absent because Plaintiffs base their claims on incorrect or unidentified dates, as well as deficient facts and evidence.

## II.     REPLY TO COUNTER STATEMENT OF RELEVANT FACTS

The State would encourage the Court to closely review the facts submitted in its original motion but will reiterate several important distinctions, particularly as relates to the alleged affirmative acts taken by the State—the construction projects. An understanding of the individual construction projects and their timing, combined with Plaintiffs' properties' locations relative to those projects, is the gravamen of this case. Rather than addressing head-on Defendant's stated facts, Plaintiffs deem those facts irrelevant and merge the intricacies of what should be individual lawsuits into one big suit.

But Plaintiffs' claims must be broken down into separate, affirmative acts (at minimum, two IH-10 projects undertaken from 1988 to 1994—CSJ Nos. 508-03-062 and 508-03-066—and three wholly separate IH-10 projects—CSJ Nos. 739-01-039, 739-02-160, and 739-02-161—undertaken from 2017 to present) that are alleged to be the cause of each Plaintiff's damages because the affirmative acts are not the same for each Plaintiff.



*See* ECF 136-3, at 7.[1] While Plaintiffs allege flooding damages that would have occurred on the same dates—the dates of the hurricanes—the dates of the affirmative acts are what must be examined.

A.   **CSJ Nos. 508-03-062 and 508-03-066 (Construction from 1988 to 1994).**[2]

In their response, Plaintiffs contend that no pre-2015 work created any claim in this case, and their claims arise only from flooding caused by the later Project, defined as CSJ Nos. 739-01-039, 739-02-160, and 739-02-161. Pls.' Resp. at 6. However, Plaintiffs' summary of their position is disjunctive from what they claim as damages. Dr. Slattery clearly alleged flooding, a/k/a ponding and pooling, caused by concrete barriers located on CSJ Nos. 508-03-062 and 508-03-066. But those projects pre-date 2015, having been constructed from 1988 to 1994, and are not the Plaintiff-defined Project. *See* ECF 136-3, at 7.

---

[1] All references to ECF documents will refer to the PDF page number based on the number of pages contained in the PDF document.
[2] *See* ECF 136-1; ECF 136-2.

3

Pooling allegedly caused by CSJ Nos. 508-03-062 and 508-03-066

Figure 9. Hankamer to Winnie Section – Harvey and Imelda.

*See* ECF 136-3, at 26 (Slattery Report).

The pooling boundary contemplated by Dr. Slattery above clearly comes directly from CSJ Nos. 508-03-062 and 508-03-066, and the figures in his report separate the projects into the earlier projects and the later projects. So, Plaintiffs either do not understand the contents of their expert's report, or they admit that many of them should properly be dismissed. If this case is considered in terms of the Project as it is defined by Plaintiffs, the majority of the Plaintiffs in this case should be dismissed, as there is no evidence establishing that any alleged pooling along CSJ Nos. 508-03-062 and 508-03-066 originated from CSJ Nos. 739-01-039, 739-02-160, and 739-02-161.

Locations of Plaintiffs' Properties near CSJ Nos. 508-03-062 and 508-03-066[3]



*See* ECF 136-8; *supra* at n.4 (relative locations of Plaintiffs depicted on map).

Further, as stated in Defendant's original motion, of the appraisals and damages provided by Plaintiffs' appraiser James T. Archibald, nineteen of the damage reports were supplied by various Plaintiffs[4] whose properties are located not on the Project, but instead are located near CSJ Nos. 508-03-062 and 508-03-066 (constructed 1988 to 1994). None of the above nineteen properties, including ten leases, are adjacent to, much less located anywhere near, the pooling allegedly caused by CSJ Nos. 739-01-039, 739-02-160, and 739-02-161, which Plaintiffs define as the Project that caused their flooding.

---

[3] These reports are contained in ECF 136-8 at the noted Bates numbers. Report 2 (Randy and Monica Brazil) 000038; Report 4, (Barbara Devillier) 000115; Report 5, (Richard and Wendy Devillier) 000133; Report 6, (Richard and Wendy Devillier) 000162; Report 7, (Richard Devillier, et ux) 000191; Report 8, (Richard and Wendy Devillier) 000220; Report 9, (Richard and Wendy Devillier) 000253; Report 10, (Steven Devillier) 000293; Report 11, (Steven and Rhonda Devillier) 000322; Report 12, (Steven Devillier) 000351; Report 13, (Steven Devillier) 000380; Report 14 (Steven Devillier) 000413; Report 15, (Steven Devillier) 000446; Report 16 (1 – 10), (Steven Devillier) 000486; Report 17, (Steven and Rhonda Devillier) 000509; Report 18, (Steven and Rhonda Devillier) 000538; Report 19, (Fesi Energy) 000567; Report 20, (Rhonda Glanzer) 000598; Report 21, (Gulf Coast Olive Investments, LLC) 000638.

[4] Randy and Monica Brazil; Barbara Devillier; Richard Devillier; Wendy Devillier; Steven Devillier; Rhonda Devillier; Fesi Energy; Rhonda Glanzer; and Gulf Coast Olive Investments. *See infra* n.2.

**B.     CSJ Nos. 739-01-039, 739-02-160, and 739-02-161 (Construction ongoing from 2017 to Present).[5]**

Considering only those Plaintiffs located within the area of pooling area allegedly caused by the three CSJ numbers Plaintiffs call the Project, for which construction occurred in various phases from 2017 and is still ongoing, this case would at most legitimately only concern four potential Plaintiffs: one located near CSJ 739-01-039, one near CSJ 739-02-160, and two near CSJ 739-02-161. Damage reports were supplied by the four Plaintiffs[6] whose properties are located near CSJ Nos. 739-01-039, 739-02-160, and 739-02-161.

Locations of Plaintiffs' Properties near CSJ Nos. 739-01-039, 739-02-160, and 739-02-161



*See* ECF 136-8; *supra* at n.7 (relative locations of Plaintiffs depicted on map).

Notably, Plaintiffs' only evidence that those three projects were completed or constructed to any degree as of the dates of Harvey or Imelda are citations to Dr. Slattery's report, in which he said he confirmed the phases of construction using Google maps. Yet, when challenged as part of the State's original motion, Plaintiffs have failed to produce any evidence from Dr. Slattery's work file supporting his conclusory assertions about the

---

[5] *See* ECF 136-4; ECF 136-5.
[6] These reports are contained in ECF 136-8 as the noted Bates numbers. Report 1 (Larry Barron) CSJ 739-01-039, 000003; Report 3 (Charles Carter) CSJ 739-02-161, 000078; Report 22 (Bruce Hinds) CSJ 739-02-160, 000670; and Report 23 (William Oliver) CSJ 739-02-161, 000705.

status of construction of these projects or dates upon which his examinations were made.

Pooling allegedly caused by CSJ Nos. 739-01-039, 739-02-160, and 739-02-161



*See* ECF 136-3, at 27–28 (Slattery Report).

### III.   INTENT

**A.   Plaintiffs fail to understand or provide the proper standard and examination of intent as it relates to what the State knew or was substantially certain would occur.**

Plaintiffs' characterization of *City of Socorro v. Campos* as a rejection of the proper standard of intent blatantly misstates the law. In *Campos,* subdivision residents sued the City alleging a takings when their properties were flooded after the City redirected water flow toward their neighborhood. *Campos*, 510 S.W.3d at 128 (citing *Pollock*, 284 S.W.3d at 821). In considering the citizens' claim that the City was substantially certain flooding would result due to its act of redirecting water, the court specifically said that the City correctly noted its "intent must be judged at the time of its actions." *Campos*, 510 S.W.3d

7

at 128 (citing *Pollock*, 284 S.W.3d at 821). Nowhere in the opinion does the court say that knowledge or substantial certainty for two separate actions can be established by showing evidence known as of the date of only one of the actions, especially the later one. Nor does the court opine that intent is assessed as of the date of the alleged taking. The "combined" effect referenced by the court of appeals concerned the structure of the pleadings, not the merits of the evidence discovered within those pleadings. *See Campos*, 510 S.W.3d at 128.

Plaintiffs provide no other case law to support their incorrect interpretation. Further, Plaintiffs' interpretation that intent is to be assessed as of the date of the alleged taking based on *Campos* directly conflicts with the Texas Supreme Court's holding in *Kerr*, which found the government's knowledge as to identifiable harm or substantial certainty must be determined as of the time it acted, not with benefit of hindsight. *Kerr*, 499 S.W.3d at 806.

Additionally, while the court in *Campos* did not assess the merits of the intent claim, noting its problem with the City's plea to the jurisdiction was only that the issue before them was a challenge of the pleadings on their face, the court again highlighted the standard of examining each affirmative act at the times they occurred: "We appreciate that the denial of Socorro's plea to the jurisdiction will subject it to the expense and burden of discovery into its mental processes for the 2009 diversion ditch project, and for its decision to funnel water across Thunder Road in 2013." *Campos*, 510 S.W.3d at 129. Thus, the court makes it plain that had it evaluated the case on its merits, the party's mental process and knowledge would have been judged as of the separate dates of the alleged affirmative acts. In this case, those acts are separated by roughly 30 years.

**B.     Not one Plaintiff[7] located along or near CSJ Nos. 508-03-062 and 508-03-066 provides evidence of the State's mental processes at the time the affirmative act occurred, thereby failing to prove the necessary element of intent in this case.**

As stated above, the barriers located on CSJ Nos. 508-03-062 and 508-03-066 were constructed from 1988 to 1994. *See* ECF 136-1; 136-2. No evidence is provided or referenced that demonstrates the State's mental processes at the time the alleged affirmative act, the construction of CSJ Nos. 508-03-062 and 508-03-066—three decades ago, was contemplated and planned. While Plaintiffs provided various TxDOT emails, deposition statements, and documents in their response, even a cursory review of the evidence reveals that none of that evidence is dated prior to 2015, and none of the quoted employees discuss any involvement with the design or construction of CSJ Nos. 508-03-062 and 508-03-066, much less knowledge of flooding related to those two CSJ numbers. That absence highlights the deficiency in Plaintiffs' intent argument and establishes the dismissal of the individual Plaintiffs referenced *supra* at notes 2 and 3.

**C.     Plaintiffs' reliance on an argument of legal imputation of knowledge as it relates to the design of CSJ Nos. 739-01-039, 739-02-160, and 739-02-161 (construction ongoing from 2017 to present), is unsupported by the law as it relates to inverse condemnation and flooding.**

Regarding CSJ Nos. 739-01-039, 739-02-160, and 739-02-161, constructed from 2017 to 2019, Plaintiffs allege that a legal imputation of knowledge and an alleged failure to adhere various federal standards should be equivalent to the knowledge or substantial certainty requirement in inverse condemnation cases. Pls.' Resp. at 17–19. However, all three cases cited in support of those allegations are easily distinguishable on their facts

---

[7] Randy and Monica Brazil; Barbara Devillier; Richard Devillier; Wendy Devillier; Steven Devillier; Rhonda Devillier; Fesi Energy; Rhonda Glanzer; and Gulf Coast Olive Investments. *See infra* Footnote 2.

because they concern tort-related claims and not inverse or flooding claims. *Id.* at 19.

While Plaintiffs attempt to re-frame their case to assert that the State's knowledge would have also included the actual knowledge of the flooding in Harvey prior to Imelda, Plaintiffs seemingly argue instead a failure of the State to act once it became aware of new information. *Id.* at 20. Yet, a taking cannot be established by proof of mere negligent conduct by the government or a failure to perform an act. *Kerr*, 499 S.W.3d at 800. Awareness of the possibility of damage is similarly no evidence of intent. *Pollock*, 284 S.W.3d at 821; *Kerr*, 499 S.W.3d at 799.

Plaintiffs string together various statements taken during the development of the drainage analysis reports to frame their own narrative that TxDOT ignored the opinions of its own hydraulic engineers. Pls.' Resp. at 23–26. That attempt is thwarted because the State supplied its final Drainage Analysis Reports for CSJ Nos. 739-01-039, 739-02-160, and 739-02-161, which concluded the projects met the necessary criteria for approval. *See* ECF 136-12; 136-13. Plaintiffs have not designated any hydraulics engineering expert to contest those conclusions.

Finally, any assertion by Plaintiffs that Adam Jack's testimony, or emails between Mr. Jack and the consultants, establish that TxDOT purposefully intended to flood properties should be rejected. First, Mr. Jack's testimony, read in context and in its entirety, makes clear that Plaintiffs have cherry-picked responses to their own questions of Mr. Jack to paint the picture they wish to be true. As to the emails, rather than ignoring the engineering consultants' concerns that the project might increase the likelihood of flooding, Pls.' Resp. at 23–26, Mr. Jack responded to the consulting engineers that they did

not calibrate their work for the pre-existing flooding and pre-existing highway design, which directly affected the reliability of their conclusions. *See* ECF 136-7, at 221–26.

## IV. CAUSATION

The State incorporates into this reply its motions to exclude both Dr. Slattery and James T. Archibald, as well as the associated replies and responses, as their ultimate exclusion will further support the State's motion for summary judgment. But even if either expert is deemed qualified, that does not establish that they provided the evidence necessary to waive the State's sovereign immunity or survive summary judgment.

Plaintiffs must still prove that the State's intentional acts proximately caused their damages by proving that the same damaging floods, up to the 50-year design and 100-year check flood requirements to which TxDOT is required to design, would not have occurred under the same heavy rainfall conditions had the highway projects not been constructed. *See Tarrant Reg'l Water Dist. v. Gragg,* 151 S.W.3d 546, 554 (Tex. 2004); *Brandywood Hous., Ltd. v. Tex. Dep't of Transp.*, 74 S.W.3d 421, 427 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Plaintiffs' response to the State's motions can essentially be summarized as: Well, Slattery said he did show that in his report so the State's motion to exclude him fails. *See* Pls.' Resp. at 29.[8] Yet, Plaintiffs' response was not their opportunity to get into a debate over what anyone has said or for further unsupported and conclusory statements from their expert. Dr. Slattery must show his work, which is entirely absent from the record and their

---

[8] "Plaintiffs' *Daubert* response also refutes the State's charge that Dr. Slattery's work is not reliable and explains that he did perform the "before and after" analysis the State asserts is required," but Slattery fails to point to where that analysis is located in his report.

11

response. This case is not a scavenger hunt. Plaintiffs should be able to plainly point to Dr. Slattery's report or work file and show what would have flooded before each separate and independent act by the State, and what would flood after each of the State's separate and independent acts. Similar to *Brandywood,* all that Plaintiffs show through Dr. Slattery is that intensity of the rainfall events associated with Harvey and Imelda was worse than maybe had been seen before, not that the design and construction of the Project caused any increase in flooding.

Further, in an attempt to salvage at least some part of Slattery's opinion from being excluded, Plaintiffs now say that Slattery is not analyzing the impacts of the roadway design on the flooding that occurred during Tropical Storms Harvey and Imelda; his focus is not on the engineering of the roadway but simply on the water. Pls.' Resp. at 29. Thus, Plaintiffs admit that they have no witness and no expert for trial who is qualified to say that TxDOT's design and construction were deficient in any way or who analyzed the in-place roadway construction at all. Without an examination of the construction project to any degree, Plaintiffs ask the Court to examine the rainfall, and the resulting flooding, and simply assume that the construction project was the cause, which is in direct contravention of their burden in this case to prove causation, and as such warrants summary judgment.

## V.     REQUEST FOR INDIVIDUAL RULINGS

The State received during discovery nineteen reports of damages based on claims brought by fourteen separate Plaintiffs. *See supra* ns. 2 and 4. Each Plaintiff individually bears the burden of establishing that: (1) the State intentionally performed certain acts, (2) that resulted in a taking or damaging of property (3) for public use. All three factors are

necessary, and failure to provide evidence of any single factor warrants summary judgment and does not result in a waiver of the State's sovereign immunity. As each Plaintiff is considered separately, the State requests that the Court consider the evidence as it is shown to be applicable to each particular Plaintiff and rule on each Plaintiff's claim.

## VI.   PRAYER AND CONCLUSION

WHEREFORE PREMISES CONSIDERED, the State prays that the Court enter judgment because Plaintiffs' claims fail to establish the requisite elements of a 'taking' and are thus barred by the State's sovereign immunity and prays for all further relief to which the State may show itself justly entitled.

Respectfully Submitted,

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

NANETTE M. DINUNZIO
Chief, Transportation Division

/s/ Lisa McClain Mitchell
LISA MCCLAIN MITCHELL
Attorney-in-Charge
Assistant Attorney General
Southern Dist. No. 572948
Texas Bar No. 90001724

JOHN ZUERCHER
Southern Dist. No. 3573677
Texas Bar No. 24102689
PORTIA LUTZ
Texas Bar. No. 24132528
*Admitted Pro Hac Vice*
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548
512-936-1431 (Mitchell)
512-936-0888 – Fax
Email: lisa.mitchell@oag.texas.gov

COUNSEL FOR DEFENDANT
THE STATE OF TEXAS

**CERTIFICATE OF SERVICE**

I certify that that on June 9, 2023, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ Lisa McClain Mitchell
LISA MCCLAIN MITCHELL