IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, ET AL. | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | Civil Action No. 3:20-CV-00223 |
| | § | |
| THE STATE OF TEXAS | § | |
| *Defendant* | § | |

**THE STATE OF TEXAS'S MOTION TO REMAND TO STATE COURT**

Defendant, the State of Texas (the State), acting by and through the Texas Department of Transportation (TxDOT), files this Motion to Remand to State Court, as no subject matter jurisdiction exists in this case, and would respectfully show the following:

**I.    Background**

Plaintiffs initially filed four separate class action cases against the State of Texas (the State) in various state courts, which were never certified. *See* Exs. A–D. In each case, Plaintiffs alleged a state law inverse condemnation claim under article I, section 17 of the Texas Constitution. *Id*. However, Plaintiffs also alternatively alleged an additional federal inverse condemnation claim based on the unsupported assertion that the U.S. Constitution itself creates a federal cause of action for takings without requiring a procedural vehicle. *Id*. In two of the four cases, some of the Plaintiffs added procedural and substantive due process claims. *See* Exs. C and D.

It seemed that Plaintiffs were attempting to bring a 42 U.S.C. § 1983 claim against the State, as they invoked no procedural vehicle for their federal takings claim other than an alleged general violation of the Takings Clause of the Fifth Amendment of the U.S.

1

Constitution, and so the State removed the cases to federal court. *See* Exs. A–D. Supplemental jurisdiction of the state law claim was also requested premised on the initial assumption—which the Supreme Court has now indicated is incorrect[1]—that a federal question was proffered that was necessary for the federal courts to answer. *Id*.

After the removal, the State sent a conference letter requesting Plaintiffs amend their complaint because it appeared that Plaintiffs were attempting to bring federal claims that could not be brought directly under the U.S. Constitution, and Plaintiffs had otherwise failed to adequately plead a federal inverse condemnation claim. *See* Ex. E. Plaintiffs indicated that they would not amend their petition, and while they believed the State's assumption was incorrect, they would not now move for remand because they believed the Fifth Amendment claim to be self-executing, making federal subject matter jurisdiction (and thus removal) proper under 28 U.S.C. § 1331. *See* Ex. F. The State filed a motion to dismiss for failure to state a federal constitutional claim or to bring valid federal and state inverse condemnation claims. The motion was denied.

All four cases were eventually consolidated under this cause, and Plaintiffs next filed an initial and first amended master complaint (encompassing the four consolidated cases), alleging four counts: (1) a state inverse condemnation claim under article I, § 17 of the Texas Constitution, (2) a federal inverse condemnation claim directly under the U.S. Constitution through the Fifth Amendment's Takings Clause, (3) a procedural due process claim under the Fourteenth Amendment, and (4) a substantive due process claim under the

---

[1] *DeVillier v. Texas*, 601 U.S. 285, 292 (2024) ("But, this case does not require us to resolve that question . . . [o]ur constitutional system assigns to state officers a coordinate responsibility to enforce [the Constitution] according to their regular modes of procedure.").

Fifth Amendment's Takings Clause (as incorporated through the Fourteenth Amendment). *See* Ex. G. The State renewed its motion to dismiss, which was denied, but this Court noted an immediate appeal might materially advance the ultimate termination of the litigation and allowed for a permissive interlocutory appeal under 28 U.S.C. § 1292(b).

On interlocutory appeal, the Fifth Circuit held "the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." *Devillier v. State*, 53 F.4th 904 (5th Cir. 2023) (per curiam). The Fifth Circuit remanded the case to the district court, noting "nothing in this opinion is intended to displace the Supreme Court of Texas's role as the sole determinant of Texas state law." *Devillier*, 53 F.4th at 904.

The Fifth Circuit later denied rehearing en banc. *See Devillier v. Texas*, 63 F.4th 416 (5th Cir. 2023) (per curiam). Concurring, Judge Higginbotham explained that neither the Fifth Amendment's Takings Clause nor § 1983 provides a federal cause of action for takings claims against States. *Id*. at 417. He further outlined that the Takings Clause does not inherently grant "direct access to federal courts, and for good reason." *Id*. at 418. He considered it "plain" that "self-executing speaks only to the completeness of the claim itself, the point at which a takings claim is ready for *a* court," which may be a state court. *Id*. In the absence of a federal cause of action, "[t]he pathway for enforcement in takings by the state is . . . through the state courts to the Supreme Court." *Id*. at 418–19. Because "[t]he Supreme Court of Texas recognizes takings claims under the federal and state constitutions," Texas fulfills its "obligations under the Takings Clause for takings by the state." *Id*. at 417 n.2, 418. Recognizing an implied cause of action "would reflect a distrust

of the state courts" who "take the same oath to faithfully apply the law as do federal judges." *Id*. at 419. Thus, whether there should be a federal cause of action to enforce the Fifth Amendment's Takings Clause is a question that the Constitution leaves to "Congress," which "wrote § 1983" but declined to allow suits against the States. *Id*. at 420.

The Supreme Court ultimately granted certiorari to consider whether the Fifth Amendment's Takings Clause itself creates a federal cause of action for takings in the event that the legislature has not otherwise affirmatively provided a cause of action. *DeVillier*, 601 U.S. at 290. However, the Supreme Court concluded there was no reason to reach that question in this case because Texas state law provides a vehicle by which property owners may seek just compensation against the State. *DeVillier*, 601 U.S. at 292–93. The Supreme Court concluded that, on remand, Plaintiffs should pursue their claims under the Takings Clause through the cause of action available under Texas law. *Id*. at 293. The only takings action under state law is through article I, § 17 of the Texas Constitution. The Supreme Court never in its opinion or order endorsed the idea that Plaintiffs' alleged self-executing federal takings claim could also continue, and Judge Higginbotham again concurred in the Fifth Circuit's order remanding the case back to the district court. *Devillier v. Texas*, No. 21-40750, 2024 U.S. App. LEXIS 28990, at *1-2 (5th Cir. Nov. 13, 2024). He concluded that remaining in federal court would improperly shadow the High Court and the only correct path is remand of the cases to state court. *Id*. at 1, 5.

Following the Supreme Court opinion, Plaintiffs filed their second amended complaint, which still included all four previous alleged counts, as well as two additional counts. *See* Ex. H. However, the new fifth count was simply a request for declaratory

judgment, and the sixth count alleged an additional state common law cause of action that includes no reference to a procedural vehicle other than a vague reference to this case and, assumedly, the Supreme Court opinion. *Id*.

## II.    Legal Standard – Federal Question Jurisdiction

A party is entitled to remove a matter if it could have been brought in federal district court originally. 28 U.S.C. § 1441(a). The district courts have original subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Although the constitutional meaning of "arising under" may extend to cases where a federal question is an ingredient of the action, the U.S. Supreme Court has long construed the statutory grant of federal-question jurisdiction as a limited power. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 807 (1986). Another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction extends to certain cases where federal-question jurisdiction will lie over state law claims that implicate significant federal issues. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, constitutional concerns do not arise in takings cases—and thus cannot represent a significant federal issue—when property owners have other ways to seek compensation, such as under state law. *See DeVillier*, 601 U.S. at 292.

A federal court must presume that a cause of action lies outside its limited jurisdiction, and the party asserting jurisdiction bears the burden of establishing the contrary. *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258–59 (5th Cir. 2014). Notably, "the mere presence of a federal issue in a state cause of action does not

automatically confer federal-question jurisdiction." *Id*. at 813; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 397 n. 11 (1987) ("Although occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, most courts correctly confine this practice to areas of the law pre-empted by federal substantive law."). The mere possibility of the existence of a federal question is insufficient to overcome state court jurisdiction where, as here:

> The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, too far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states . . . . If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible.

*Gully v. First Nat'l Bank*, 299 U.S. 109, 117–18 (1936).

Article III of the Constitution also limits the jurisdiction of federal courts to live cases and controversies. U.S. Const. art. III, § 2; *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). Ripeness is an essential prerequisite to subject matter jurisdiction, which means a case must not be speculative or premature. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."). Ripeness must be determined by the court, and the court "cannot be bound by the wishes of the parties."

*Id.* (citing *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 138 (1974)).

The Supreme Court has recognized the need for careful judgments about exercising federal judicial power in an area of uncertain jurisdiction. *Thompson*, 478 U.S. at 814. If, at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 8 (1983) ("If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed."). "No matter the stage of the case, the [court] must be sure [subject matter jurisdiction] exists, even if the parties expect a decision on the merits." *See Bilello v. Kum & Go, LLC*, 374 F.3d 656, 659 (8th Cir. 2004). All doubts regarding whether removal jurisdiction is proper should be resolved against a finding of federal jurisdiction. *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

"To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002). "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *See Acuna*, 200 F.3d at 339. Federal jurisdiction cannot be based on an insubstantial federal question. *See Thompson*, 478 U.S. at 817. The

interrelation of federal and state authority and management of the federal judicial system would be ill-served by a rule that made the existence of federal-question jurisdiction depend on the novelty of the federal question asserted. *Id*.

## III.   Legal Standard – Supplemental Jurisdiction

The doctrine of supplemental jurisdiction—or pendent jurisdiction—permits federal courts to decide certain state law claims involved in cases raising federal questions. *See Ameritox, Ltd. v. Millennium Labs., Inc*., 803 F.3d 518, 530 (11th Cir. 2015). Now codified at 28 U.S.C. § 1367, the modern doctrine of supplemental jurisdiction derives from *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and *Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988). Those cases continue to guide federal courts as they determine whether to retain or relinquish jurisdiction over supplemental state law claims. *See City of Chicago*, 522 U.S. at 172–73. District courts possess the authority to dismiss or remand claims brought under § 1367(a) if a claim meets one of the § 1367(c) factors:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*See Ameritox,* 803 F.3d at 531.

Any one of the § 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims. *Id*. "Although the sharp distinction between remands authorized by § 1367(c) and remands authorized by § 1447(c) is often misunderstood, the reason behind their different treatment is clear." *Hudson United Bank*

*v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir. 1998). Section 1447(c) remands are warranted only when a federal court has no rightful authority to adjudicate a state case that has been removed from state court. *Id.* "Remands authorized by § 1367(c) may be entered only when federal subject matter jurisdiction has been affirmatively established, via 28 U.S.C. § 1367(a), and are entered independently of whether the case originated in state or federal court." *Id.* at 157–58 (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165. "[A] district court's decision to remand pursuant to § 1367(c) does not imply that the case was improperly filed in federal court. *Hudson*, 142 F.3d at 158. "Rather, it reflects the court's judgment, reviewable on appeal for abuse of discretion, that at the present stage of litigation it would be best for supplemental jurisdiction to be declined so that state issues may be adjudicated by a state court." *Id.* (citing *Gibbs*, 383 U.S. at 726–27).

The U.S. Supreme Court in *Gibbs* further warned courts that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726. One such needless decision would occur when a court decides issues of state law after the federal claims are dismissed before trial. *Id.* Another occurs where it appears that the "state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Id.* at 727. Specifically, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims should be left to the state for resolution. *Id.* at 726–27. In these situations, the state claims should either be dismissed without prejudice and left to be re-filed in state court or remanded to state court when the

statute of limitations over the plaintiff's state law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. *Id.*; *see also Cohill*, 484 U.S. at 353.

Pendent jurisdiction is "a doctrine of discretion, not of plaintiff's right." *Cohill*, 484 U.S. at 350. The issue of whether pendent jurisdiction has been properly assumed remains open throughout the entire litigation. *Gibbs*, 383 U.S. at 727. Pretrial procedures or the trial itself may reveal a substantial dominance of state law claims that could not have been anticipated earlier. *Id.* Dismissal or remand may be warranted even in the event of completed litigation. *Id.*

## IV.     Argument

The State initially sought removal to this Court because, at the time of removal, it seemed that Plainitffs were attempting to bring a federal claim, even if vaguely plead. That turned out to be correct, as Plaintiffs did not seek remand and quickly asserted upon removal that their references to the Fifth Amendment were, in fact, an alleged self-executing federal claim and question that would make federal subject matter jurisdiction (and thus removal) proper from their perspective under 28 U.S.C. § 1331. While the propriety of Plaintiffs' claims and self-proclaimed procedural vehicle were being considered by the Court, the State took the position that, if federal jurisdiction existed, that this case should be dismissed in its entirety on the merits. However, as is evident by the multitude of recommendations, opinions, concurrences, and dissents that have been filed in the various adjudications in this case, the State acknowledges that this case represents complicated legal and procedural issues, and the Supreme Court and Fifth Circuit have

expressed a clear preference that Plaintiffs should be allowed to continue to litigate their claims in the Texas state courts whose regular practice is to hear such claims. *See DeVillier*, 601 U.S. at 293; *Devillier*, 2024 U.S. App. LEXIS 28990, at *2 (Higginbotham, J., concurring on remand to district court that the claims should be remanded to state court).

If there was some question as to whether a court should remand or dismiss federal claims, Texas Courts have offered a way forward, particularly if a litigant is being remanded to state court involuntarily, allowing the preservation of their federal claims on remand to state court. *See VRC, L.L.C. v. City of Dall.*, 391 F. Supp. 2d 437, 440 (N.D. Tex. 2005) (remanding state law claim as federal substantive due process claims considered not ripe); *Milliken v. Town of Addison*, No. Civ.A.3:02-CV-1164-D, 2002 WL 31059802, at *4 (N.D. Tex. Sept. 13, 2002) (remanding state claim and unripe federal claim to state court); *Guetersloh v. State*, 930 S.W.2d 284, 289 (Tex. App.—Austin 1996, writ denied) (describing process of reserving federal claims on remand to pursue state court litigation). The Fifth Circuit has approved of such an approach. *See John Corp. v. City of Houston,* 214 F.3d 573, 581 n. 13 (5th Cir. 2000) ("In bringing their claim for compensation to the state court, [litigants] may be able to avail themselves of the steps outlined in *Guetersloh* and reserve their right to have their takings claim litigated in federal court.").

## A.    Plaintiffs have failed to establish claims over which this Court could have original federal subject matter jurisdiction.

The Court should remand this case pursuant to 28 U.S.C. § 1447, as only a state cause of action was ever ripe and adequately asserted through a proper procedural vehicle. Plaintiffs' remaining claims either do not have a proper procedural vehicle or are otherwise

not ripe, and are speculative and premature. While the State acknowledges that it initially pursued removal, given its incorrect assumption that Plaintiffs were making a 42 U.S.C. § 1983 claim and Plaintiffs' novel assertion of a federal cause of action without a procedural vehicle to support the claim, it is clear that novelty and ambiguity are not enough to create a federal question as would support original subject matter jurisdiction in this Court. *See DeVillier,* 601 U.S. at 292 (2024); *see also Thompson*, 478 U.S. 817. ("The interrelation of federal and state authority and management of the federal judicial system would be ill-served by a rule that made the existence of federal-question jurisdiction depend on the novelty of the federal question asserted."). Further, even if the parties agreed now that jurisdiction was proper—which they plainly do not—the parties' concessions at any point in this case do not in and of themselves create jurisdiction. *See Blanchette v. Conn. Gen. Ins. Corps*., 419 U.S. 102, 138 (1974) ("[W]e cannot rely upon concessions of the parties and must determine whether the issues are ripe for decision . . . to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties.").

Similarly, while Plaintiffs have argued that their state law claim implicates significant federal issues, mainly Constitutional issues, the Supreme Court did not reverse the Fifth Circuit judgment that a federal takings claim did not exist but instead vacated and remanded with instructions for Plaintiffs to pursue their state law cause of action. *DeVillier*, 601 U.S. at 293. To stay in federal court, Plaintiffs needed the Supreme Court to affirmatively say that their alleged procedural vehicle existed and that their federal takings

claim could continue, yet the Supreme Court affirmatively held that "constitutional concerns do not arise" where, as here, and the state provides a vehicle via a cause of action for takings claims. *DeVillier,* 601 U.S. at 292.

Notably, the Supreme Court did not agree with any of Plaintiffs' arguments. It explained that (1) even self-executing constitutional rights like the Takings Clause do not necessarily come with their own federal causes of action; (2) the *First English* case— Plaintiffs' primary authority—does not hold that the Takings Clause creates a federal cause of action for takings; and, critically, (3) "constitutional concerns do not arise when property owners have other ways to seek just compensation," including via state causes of action. *Id*. at 291–92. Instead, the Supreme Court embraced classic federalism, confirmed its faith in the state courts, and ordered Plaintiffs "to pursue their claims under the Takings Clause through the cause of action available under Texas Law." *DeVillier*, 601 U.S. at 292–93. It did not say Plaintiffs were to pursue those claims in addition to their alleged federal takings claim. Thus, any claim of an original or continued substantial federal issue in this case is clearly at odds with the Supreme Court's opinion.

Given the holding, the only way to read the Supreme Court's decision is that it is now settled that where a Texas cause of action exists to vindicate federal takings rights, Plaintiffs must use it and cannot attempt to rely alternatively on an implied federal cause of action. *See* Ex. H; *see also DeVillier*, 601 U.S. at 292–93; *cf. Wilson v. Midland County*, 116 F.4th 384 (5th Cir. 2024) (en banc) (faulting § 1983 plaintiff for not pursuing available state remedy). There is no other conceivable reason why the Court would have also taken such care to provide the following indictment of pursuing claims in State court:

> Our constitutional system assigns to state officers a coordinate responsibility to enforce the Constitution according to their regular modes of procedure. It therefore looks to the good faith of the States to provide an important assurance that this Constitution, and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land. We should not assume the States will refuse to honor the Constitution, including the Takings Clause, because States and their officers are also bound by obligations imposed by the Constitution.

*DeVillier*, 601 U.S. at 292–93 (cleaned up, internal citations omitted).  The State's position

mirrors the Fifth Circuit's, which stated in its concurring opinion:

> It is now settled that in providing rights of action for takings by the state, Texas is discharging its obligations under the Fifth Amendment and the state removal is now without jurisdictional legs to stand on . . . . A unanimous Supreme Court has relied upon the state pathway, enabling it to not to reach the difficult issue of implied federal jurisdiction. As its decision makes plain, this pathway—available to all states—is in classic service to federalism. It would be perverse to not return these cases to the state courts from which they were removed so they may travel on the Supreme Court's predicate pathway.

*Devillier*, 2024 U.S. App. LEXIS 28990, at *3-4.

1. **Plaintiffs' takings claims under the Texas Constitution do not support federal original and independent subject matter jurisdiction.**

In their Count 1, Plaintiffs allege takings claims under article I, § 17 of the Texas

Constitution. *See* Exs. A–D. There should be no dispute in this case that this count is a state

law cause of action, and it substantially predominates the issues before the court, in terms

of required proof, the scope of the issues raised, and the comprehensiveness of the remedy

sought. The Supreme Court stated in no uncertain terms that it trusts the state courts of

Texas to honor the Constitution and the "state-law inverse-condemnation cause of action

provides a vehicle for takings claims based on both the Texas Constitution and the Takings

Clause." *Id*. at 292–93. Thus, this claim can only be properly adjudicated by the state courts

of Texas. This claim does not provide original subject matter jurisdiction as would support independent jurisdiction to pursue the claim in federal court.

### 2. Plaintiffs' takings claims under the Fifth Amendment do not support federal original and independent subject matter jurisdiction.

Plaintiffs' Count 2 alleges a taking without just compensation under Fifth Amendment of the United States Constitution. *See* Exs. A–D. Plaintiffs cite no basis for this claim and such a claim currently does not exist under the law, and is, therefore, speculative and unconvincingly novel. The Supreme Court chose not to recognize the claim as a legitimate federal question that needed answering or as otherwise raising a federal issue such that state law cannot be separated from federal law. *Id.* at 292–93. The Supreme Court clearly stated it trusts the Texas courts to honor the Constitution, and a "state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause." *Id.*

To maintain this action, Plaintiffs needed the Supreme Court to conclude that the Takings Clause came built-in with its own implied cause of action and procedural vehicle authorizing suits for compensation, which the Supreme Court refused to do, noting that "Constitutional rights do not typically come with a built-in cause of action" but instead "are generally invoked defensively" absent "an independent cause of action designed for that purpose" by Congress or by state law. *DeVillier*, 601 U.S. at 291.

As is evident from Plaintiffs' Second Amended Master Complaint[2], since the issuance of the Supreme Court opinion, Plaintiffs have maintained that the Supreme Court

---

[2] *See* Ex. H.

15

validated their alleged federal question, yet such language is notably absent from the Court's opinion and order. At most, the Supreme Court noted that its "precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause." *Id*. at 292; *see Acuna*, 200 F.3d at 339 ("All doubts regarding whether removal jurisdiction is proper should be resolved against a finding of federal jurisdiction."). But Plaintiffs willfully ignore that the Supreme Court concluded "this case does not require us to resolve that question," and that "[o]n remand, DeVillier and the other property owners should be permitted to pursue their claims under the Takings Clause through the cause of action available under Texas law." *Id*. at 292–93.

This claim does not provide original subject matter jurisdiction as would support independent jurisdiction to pursue the claim in federal court.

### 3. Plaintiffs' procedural due process claims under the Fourteenth Amendment are not ripe and do presently support original and independent federal subject matter jurisdiction.

In Count 3, Plaintiffs allege procedural due process claims in violation of the Fourteenth Amendment to the U.S. Constitution. *See* Exs. C and D. These claims are not ripe, as they are both speculative and premature, so they cannot stand as a basis of subject matter jurisdiction. *See Norton*, 289 F.3d at 835. A takings claim must be adjudicated before a claim of procedural deprivation of due process can be made. *See Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011) ("[W]here the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, we cannot know whether the plaintiff suffered any injury until the takings claim has been adjudicated . . . . We must therefore allow state takings

procedures to run their course before we can adjudicate the procedural due process claim.").

These claims do not provide original subject matter jurisdiction as would support independent jurisdiction to pursue the claims in federal court. Plaintiffs' claims of procedural due process may be remanded along with the state claims and reserved to the degree that they may become ripe later. *See John Corp*., 214 F.3d at 581 n. 13 (explaining litigants may avail themselves of the steps outlined in *Guetersloh* and reserve their right to later litigate their federal claims in federal court.)

**4.    Plaintiffs' substantive due process claims under the Fourteenth Amendment are not ripe and do presently support original and independent federal subject matter jurisdiction.**

Plaintiffs' Count 4 claims allege substantive due process violative of the Fourteenth Amendment to the U.S. Constitution. *See* Exs. C and D. These claims are also not ripe, as they are both speculative or premature, and so they cannot stand as a basis of subject matter jurisdiction. *See Norton*, 289 F.3d 832, 835 (5th Cir. 2002). A substantive due process claim is only ripe for review if it is sufficiently independent of the takings claim and is not "subsumed" by it, and that is not the case here. *See Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013) (citing *John Corp.,* 214 F.3d at 583). Substantive due process claims that rest on the same protections that are afforded by the Takings Clause are subsumed by them. *See John Corp.*, 214 F.3d at 583.

Here, Plaintiffs do not allege any facts or cite to any law or regulation to support that their substantive due process claim is separate from the takings or procedural due process claims. Plaintiffs' concern is only with their substantive right to just compensation,

which the Supreme Court assured Plaintiffs that they could pursue through a state law inverse-condemnation action. *See DeVillier*, 601 U.S. at 293. Plaintiffs further allege only that they are dissatisfied with the level of protection provided under Texas law regarding takings and inverse condemnation in general as to the intent element. *See* Exs. A and B.

Plaintiffs have yet to litigate their claims under the state law standard, and there is no law to suggest that the inability to meet the current legal standard as set out by the courts creates a ripe due process concern pre-litigation. Further, regarding the "rationally related" standard referenced by the Plaintiffs' pleadings, rationally related is in reference to a government action, not a complaint about the legal standard set by the courts. *See* Exs. A and B; *see generally Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006) (explaining a substantive due process claim has two elements: (1) whether the plaintiff has been deprived of a constitutionally protected right, and (2) whether the governmental action is rationally related to a legitimate governmental interest); *see also Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998) (highlighting the limited range of substantive due process analysis). Plaintiffs' fail to argue that any actions by the State are not rationally related to a legitimate State interest, and in fact, they allege that TxDOT's actions were taken "to enhance public safety and the capacity of IH-10, and to provide an evacuation route via its eastbound lanes . . . ." *See* Exs. A and B.

To the extent Count 4 even alleges a violation of substantive due process, it is simply a takings claim under a substantive due process label and would not represent a claim that could be made independent of the takings claim in this Court at this time. This claim does not provide original subject matter jurisdiction as would support independent

jurisdiction to pursue the claim in federal court. Plaintiffs' claims of denial of substantive due process may be remanded along with the State claims and reserved to the degree that they may become ripe later. *See John Corp.*, 214 F.3d at 581 n. 13.

**B.     Plaintiffs have failed to establish federal claims as necessary to support the exercise of supplemental jurisdiction, but even if they had, remand to state court under 28 U.S.C. § 1367(c) is appropriate.**

If this Court never had subject matter jurisdiction as would independently support removal, it cannot properly exercise supplemental jurisdiction. *See Hudson*, 142 F.3d at 157–58 (3d Cir. 1998) (citing *City of Chicago*, 522 U.S. at 165). However, to the degree the Court concludes it obtained subject matter jurisdiction over an independent federal claim, 28 U.S.C. § 1367(c) supports a remand to state court. At a minimum, two of the four factors listed § 1367(c) clearly apply—and this Court only needs one to justify remand. *See Ameritox*, 803 F.3d at 531.

**1.     Plaintiffs' state law claims raise a novel or complex issue of state law and should be remanded pursuant to § 1367(c)(1).**

Not only are all state inverse condemnation cases under Texas law generally complex, but this is an extraordinary case predicated upon extraordinary legal theories, the resolution of which will have a wide-ranging impact. Plaintiffs comprise at least 72 individuals, one corporation, and four limited liability companies, located across four separate counties, alleging impact and damages to varying degrees, stemming from two historic rainfall events to the extent the State of Texas has rarely seen. Further, at no point in this case have the parties agreed on how the law surrounding intent, a necessary element under an inverse condemnation case in Texas, should apply. *See Harris Cnty. Flood*

19

*Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016) ("Generally, plaintiffs seeking recovery for a taking must prove the government "intentionally took or damaged their property for public use, or was substantially certain that would be the result.").

If the Court were to retain this case, it would, at minimum, be tasked with weighing multiple Texas Supreme Court opinions on intent—which the parties have both briefed on multiple occasions and put forward drastically conflicting interpretations—and likely need to provide its own wholly separate interpretation of Texas law. *See e.g.*, *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12 (Tex. 2024); *Kerr,* 499 S.W.3d at 799; *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004); *City of Dall. v. Jennings,* 142 S.W.3d 310, 313 n.2 (Tex. 2004). While the State appreciates the effort this Court has put forth in navigating this complex case, ultimately, "[s]tate courts, not federal courts, should be the final arbiters of state law." *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997); *see also Hardy v. Birmingham Bd. of Educ*., 954 F.2d 1546, 1553 (11th Cir. 1992) (noting that "[s]tate courts, not federal courts, are the final expositors of state law" in its decision not to exercise pendent jurisdiction); *Ameritox*, 803 F.3d at 540 ("Federal courts are (and should be) loath to wade into uncharted waters of state law"). And as noted by Judge Higginbotham, "[t]he issues of Texas law remain both controlling and complex, and its law of inverse condemnation here is uncertain in its application, and retaining the cases places the district court in the position of making an *Erie* guess or certifying questions of law to the state court." *Devillier*, No. 21-40750, 2024 U.S. App. LEXIS 28990, at *4.

The Court should remand Plaintiffs' state law claims to state court. To the degree

necessary, Plaintiffs' federal claims, whether ripe or not, may be remanded along with the State claims and reserved. *See John Corp*., 214 F.3d at 581 n. 13.

> **2.    Plaintiffs' state law claims substantially predominate over any other claim over which the federal district court might have original jurisdiction and should be remanded pursuant to § 1367(c)(2).**

Clearly Plaintiffs' Count 1 in each underlying case is a state law cause of action that substantially predominates the issues before the court, in terms of required proof, scope of the issues raised, and comprehensiveness of the remedy sought. The Supreme Court announced it trusts the state courts of Texas to honor the Constitution, and that a "state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause," which is the core of each of the four consolidated cases. *Id*. at 292–93. The proper procedure for each case is for Plaintiffs' inverse condemnation claims against the State of Texas to be heard by the state courts of Texas.

To the degree necessary, Plaintiffs' federal claims, whether ripe or not, may be remanded along with the State claims and reserved. *See John Corp*., 214 F.3d at 581 n. 13.

## V.    PRAYER

This Court does not have subject matter jurisdiction, thus this case must be remanded pursuant to 28 U.S.C. § 1447(c). The State respectfully requests that the Court grant its Motion to Remand to State Court and for all other relief to which it might show itself entitled.

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

NANETTE M. DINUNZIO
Chief, Transportation Division

*/s/ John Zuercher*
JOHN ZUERCHER
Attorney-in-Charge
Southern Dist. No. 3573677
Texas Bar No. 24102689
LISA MCCLAIN MITCHELL
Assistant Attorney General
Southern Dist. No. 572948
Texas Bar No. 90001724
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548
512-936-1170 (Zuercher)
512-936-0888 – Fax
Email: john.zuercher@oag.texas.gov

COUNSEL FOR DEFENDANT
THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

I certify that on December 13, 2024, this document was filed electronically via the

Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ John Zuercher*
JOHN ZUERCHER