Case 3:20-cv-00223   Document 186   Filed on 01/05/26 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| RICHARD ALLEN DEVILLIER, *et al.*, | § § § § | |
| Plaintiffs. | § | |
| V. | § | CIVIL ACTION NO. 3:20-CV-00223 |
| | § | |
| STATE OF TEXAS, | § § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

I would not be surprised if one day there is a law school class devoted entirely to this case. That is because the instant matter presents a myriad of fascinating procedural and substantive legal issues. It is not every day that a case pending in Galveston, Texas ends up before the United States Supreme Court. But that is exactly what has happened here.

I have spent an enormous amount of time and effort over the past several years working on this case. The lawyering on both sides has been superb. I would love nothing more than to continue working on this case through its conclusion. Alas, I do not think this case can remain in federal court. After reviewing the Supreme Court's recent opinion in this case, as well as the parties' briefing on the jurisdictional issues, I am convinced that federal question jurisdiction is lacking. I must, therefore, recommend that the State of Texas's motion to remand be granted, and these consolidated cases be returned to the state courts from which they originated.

## BACKGROUND

United States Interstate Highway 10 is a major transportation corridor, providing the main connection between Houston and the Southeast portion of the United States. During heavy rainfall events, stormwater draining from north to south (toward the Gulf of Mexico) would inundate I-10 between Houston and

Beaumont, making it impassable. To facilitate the use of I-10's eastbound lanes as an evacuation route during periods of flooding, the Texas Department of Transportation installed a 32-inch impenetrable, solid concrete traffic barrier on the highway's centerline. The barrier was intended to act as a dam, protecting the southside of the freeway from flooding by keeping all rainfall on the northside. According to Plaintiffs, the barrier did its job. During Hurricane Harvey and Tropical Storm Imelda, two storms that hit the Gulf Coast over the last decade, rainfall that would otherwise run overtop the roadway and continue downstream towards the Gulf of Mexico instead was stopped by the barrier. This allowed the south side of the highway to remain open. But the barrier caused Plaintiffs' properties on the northside of I-10 to flood, ultimately displacing Plaintiffs from their homes, ruining crops, killing livestock, and destroying personal property.

Plaintiffs originally filed four putative class actions against the State in Texas state court—two in Chambers County, one in Jefferson County, and one in Liberty County. In each lawsuit, Plaintiffs argue that the State's construction of the solid concrete barrier along a stretch of I-10 caused their properties to be inundated, taken, destroyed, and damaged without their consent or compensation in violation of both the Texas and United States Constitutions.

The State removed the four cases to federal court, and they were eventually transferred to the Galveston Division of the Southern District of Texas. In the interests of judicial economy and efficiency, I consolidated all the actions into this case. After Plaintiffs filed an amended pleading, the State moved to dismiss Plaintiffs' Fifth Amendment Takings Clause claim for several independent reasons, including that Plaintiffs had no cause of action arising directly under the Takings Clause. The district court denied the motion to dismiss, but allowed for a permissive interlocutory appeal.

In a three-sentence opinion, the Fifth Circuit held "that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state."

*Devillier v. State*, 53 F.4th 904 (5th Cir. 2023). After the Fifth Circuit refused to hear the case *en banc*, the Supreme Court "granted certiorari to decide whether a property owner may sue for just compensation directly under the Takings Clause." *DeVillier v. Texas*, 601 U.S. 285, 290 (2024). Writing for a unanimous court, Justice Clarence Thomas declined to reach the question presented because it "would be imprudent to decide [what would happen if a property owner had no cause of action to vindicate his rights under the Takings Clause] without satisfying ourselves of the premise that there is no cause of action." *Id.* at 292. Noting "that constitutional concerns do not arise when property owners have other ways to seek just compensation," *id.* at 292, the Supreme Court explained that Texas's "state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause." *Id.* at 293. The Supreme Court concluded that, on remand, Plaintiffs "should be permitted to pursue their claims under the Takings Clause through the cause of action available under Texas law." *Id.*

After mandate issued, Plaintiffs filed a Second Amended Master Complaint ("Complaint"). *See* Dkt. 162. The Complaint advances six counts: (1) a state inverse condemnation claim under article 1, § 17 of the Texas Constitution; (2) a federal inverse condemnation claim under the United States Constitution's Fifth Amendment Takings Clause; (3) a Fourteenth Amendment procedural due process claim; (4) a Fourteenth Amendment substantive due process claim; (5) a request for declaratory and injunctive relief; and (6) a state common law cause of action seeking just compensation for violation of the United States Constitution's Fifth Amendment Takings Clause.

The State has moved to remand the case to state court. *See* Dkt. 174. Plaintiffs oppose. I held an oral argument to fully explore the relevant legal issues. I now explain why this case must be remanded to state court.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction" and in favor of remand. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Where Plaintiffs amend their "complaint following [the] suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).

The two primary sources of federal district courts' original jurisdiction are diversity jurisdiction and federal question jurisdiction. *See* U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Diversity jurisdiction allows district courts to decide cases that are between citizens of different states when the amount in controversy involves more than $75,000. *See* 28 U.S.C. § 1332(a). Federal question jurisdiction exists where a claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because the parties agree that diversity jurisdiction is lacking, this court's ability to hear this matter turns on whether there is federal question jurisdiction.

"The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (quotation omitted). An action arises under federal law "only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (cleaned up). The "test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties" is this: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a

federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Federal courts must presume "that a cause lies outside this limited jurisdiction" unless the party asserting federal jurisdiction carries its burden to establish otherwise. *Kokkonen*, 511 U.S. at 377.

## ANALYSIS

In a nutshell, the State's position is that the Supreme Court's *DeVillier* decision establishes "that where a Texas cause of action exists to vindicate federal takings rights, Plaintiffs must use it and cannot rely alternatively on an implied federal cause of action." Dkt. 174 at 13. Because "constitutional concerns do not arise" where, as here, Texas law provides a way "to seek just compensation," the State insists that federal question jurisdiction does not exist and this case must be remanded to state court. *DeVillier*, 601 U.S. at 292.

Plaintiffs strongly disagree. They argue that "[f]ederal subject matter jurisdiction over this case is provided by the general federal question jurisdiction statute for Counts 2 (federal Takings Clause), 3 (procedural due process), 4 (substantive due process), and 6" (a state-law cause of action grounded in the federal Takings Clause). Dkt. 175 at 9. In Plaintiffs' view, the jurisdictional issues are simple and straightforward: "This Court would be hard pressed to find a claim more squarely within its federal question jurisdiction than one based directly on the U.S. Constitution." *Id.* at 12.

Because it is settled law that a case properly belongs in federal court if there is a single federal question present in the Complaint, I must conduct a claim-by-claim inquiry. At the same time, I am mindful that any doubts or ambiguities I have concerning federal question jurisdiction must be resolved in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

**Count 2:** Count 2 purports to assert a claim directly under the Fifth Amendment's Takings Clause, which mandates the payment of just compensation

when a government takes private property for public use. *See* U.S. Const. amend. V. Plaintiffs argue that Count 2 falls squarely within federal question jurisdiction because it requires construction of federal law as applied under the Fifth Amendment. At first blush, Plaintiffs have a point. They plainly allege a Fifth Amendment Takings Claim on the face of the Complaint. But that is not the end of the story. Even though "a federal claim appears on the face of the complaint," federal question jurisdiction does not exist when there is "a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision." *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010) (quotation omitted).

It is worth repeating that the Supreme Court in *DeVillier* held "that constitutional concerns do not arise when property owners have other ways to seek just compensation." *DeVillier*, 601 U.S. at 292. Given that "Texas state law provides a[n inverse-condemnation] cause of action by which property owners may seek just compensation against the State," the Supreme Court instructed Plaintiffs "to pursue their claims under the Takings Clause through the cause of action available under Texas law." *Id.* at 293.

Justice Thomas recognized in *DeVillier* that the state court system is capable of handling those cases in which property owners advance a state-law inverse condemnation cause of action to vindicate their rights under the Fifth Amendment's Takings Clause:

> Our constitutional system assigns to state officers a coordinate responsibility to enforce the Constitution according to their regular modes of procedure. It therefore looks to the good faith of the States to provide an important assurance that "this Constitution, and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land." We should not assume the States will refuse to honor the Constitution, including the Takings Clause, because States and their officers are also bound by obligations imposed by the Constitution.

6

*DeVillier*, 601 U.S. at 292-93 (quoting U.S. Const., art. VI) (cleaned up). In remanding this case to the district court for further proceedings consistent with the Supreme Court's decision, Fifth Circuit Judge Patrick E. Higginbotham offered his opinion: "It is now settled that in providing rights of action for takings by the state, Texas is discharging its obligations under the Fifth Amendment and the state removal is now without jurisdictional legs to stand on." *DeVillier v. Texas*, 132 F.4th 746, 747 (5th Cir. 2024) (Higginbotham J., concurring).

Federal question jurisdiction typically exists when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983). Plaintiffs' right to relief under a state-law inverse condemnation cause of action does not implicate a substantial question of federal law.

As Justice Benjamin Cardozo explained almost 90 years ago:

> The most one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, to far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states.
>
> . . .
>
> If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible.

*Gully v. First Nat. Bank*, 299 U.S. 109, 117–18 (1936). The same holds true here.

**Counts 3 and 4:** In Count 3, Plaintiffs allege a procedural due process claim in violation of the Fourteenth Amendment "[i]n the alternative to Count 1." Dkt. 162 at 29. Plaintiffs contend that if their claims under article 1, § 17 of the

7

Texas Constitution (Count 1) are "denied based on a determination that it must be shown that the State possessed actual knowledge that its actions were certain to inundate specific parcels of property," then Plaintiffs have been deprived of a property interest without procedural due process of law. *Id.* In Count 4, Plaintiffs allege—again "[i]n the alternative" to their takings claims—a substantive due process claim in violation of the Fourteenth Amendment. This claim is premised on the idea that if "Plaintiffs have no right to directly assert an inverse condemnation claim against the State of Texas for just compensation under the Fifth Amendment to the U.S. Constitution," then "their substantive rights to due process protection secured by the Fourteenth Amendment to the U.S. Constitution have been violated by the State's taking." *Id.* at 31.

Because I am obligated to strictly construe the removal statute in favor of remand, I conclude that neither Count 3 nor Count 4 provide subject matter jurisdiction. It is black-letter law that "a claim must be ripe for a federal court to have jurisdiction." *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2017). The "[r]ipeness doctrine enforces the Constitution's limit of federal court jurisdiction to 'cases or controversies' by preventing premature litigation." *Archbold-Garrett v. New Orleans City*, 893 F.3d 318, 321 (5th Cir. 2018). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation omitted). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (quotation omitted). In determining whether a case is ripe, there are two key considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quotation omitted).

Plaintiffs' procedural and substantive due process claims outlined in Counts 3 and 4 are abstract, hypothetical, and contingent. As Plaintiffs recognize, their procedural and substantive due process claims only arise if they do not prevail on

8

their underlying takings claim. But "where the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, [the court] cannot know whether the plaintiff suffered any injury until the takings claim has been adjudicated." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011). For that reason, Plaintiffs must allow their state-law inverse-condemnation claim to run its course before they can raise—and a court can adjudicate—their procedural and substantive due process claims. *See id.* at 89 ("Because the church does not allege a substantive due process claim that is independent of its procedural due process claim, and we cannot address the procedural due process claim without knowing the outcome of the takings claim, which is not before us, we dismiss the case as unripe."); *John Corp. v. City of Houston*, 214 F.3d 573, 585–86 (5th Cir. 2000) (holding that a district court cannot address a procedural due process claim until it has determined whether a taking has occurred).[1]

As the State points out, Plaintiffs offer their procedural and substantive due process claims "as a hedge bet in the event their" Counts 1 and 2 fail. Dkt. 176 at 19. Because Plaintiffs' procedural and substantive due process claims are entirely dependent on the outcome of their takings claims, the due process issues are not ripe. Thus, no federal question jurisdiction exists with respect to Counts 3 and 4.[2]

---

[1] Plaintiffs argue that *Rosedale* and *John Corp.* are inapposite because they are based on *Williamson County's* now-defunct state-court exhaustion requirement. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled in part by Knick v. Twp. of Scott*, 588 U.S. 180 (2019). This argument does not move me because the Fifth Circuit stated in *Rosedale* and *John Corp.* that it was relying on general ripeness principles, not *Williamson County*, to find procedural and substantive due process claims unripe in the taking context. *See Rosedale*, 641 F.3d at 89 ("[T]he church's due process claim is unripe based not on *Williamson County* but on general ripeness principles."); *John Corp.*, 214 F.3d at 586 ("In determining that Appellants' procedural due process claim is unripe, we do not apply *Williamson County* per se, but rather the general rule that a claim is not ripe if additional factual development is necessary.").

[2] I acknowledge that the State has previously taken the position that Counts 3 and 4 independently provide federal subject matter jurisdiction. *See* Dkt. 175 at 20. Although Plaintiffs are quick to highlight those prior statements, "no action of the parties can confer subject-matter jurisdiction." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456

9

**Count 6:** In Count 6, Plaintiffs bring a state common law cause of action seeking just compensation for violation of the Fifth Amendment. This is the state-law inverse-condemnation claim that the Supreme Court noted in *DeVillier* provides a vehicle for takings claims based on both the Texas Constitution and the federal Takings Clause. This state-law claim does not give rise to federal question jurisdiction.

There is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). "Federal jurisdiction is not shown by this test, for [Plaintiffs] allege[] an asserted cause of action created by Texas law." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1167 (5th Cir. 1988).

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quotation omitted).

None of these elements are satisfied here. To begin, there is no federal issue necessarily raised in this case. That is because the State has "honor[ed] its obligations under the Fifth Amendment" by providing a cause of action for inverse condemnation. *DeVillier*, 132 F.4th at 748 (Higginbotham J., concurring). "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages

---

U.S. 694, 702 (1982). "Courts have an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. Even if there is a federal issue at stake, Plaintiffs' right to relief on the state-law inverse condemnation cause of action does not depend on the resolution of a substantial and disputed question of federal law. Finally, there is no reason to think that a federal court is uniquely positioned to address a state-law inverse condemnation claim simply because such a claim allows Plaintiffs to vindicate their rights under the federal Takings Clause. Indeed, the Supreme Court has already opined in this case that it has no constitutional concerns with state courts handling such claims "according to their regular modes of procedure." *DeVillier*, 601 U.S. at 292 (quotation omitted).

A mere invocation of the federal Takings Clause in the Complaint does not, by itself, give rise to federal question jurisdiction, especially when the underlying cause of action—in this case, an inverse condemnation claim—is brought under state law. As pointed out by the State, the logical extension of Plaintiffs' argument is that

> every single taking case that exists across the entire U.S., in every state, which all, to some degree, can trace their way back to the Constitution, can be filed in federal court. The allowance of this position would strip the states' judiciar[ies] of their powers to govern the actions and the laws of their state[s]. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States entered the federal system with their sovereignty intact. Various textual provisions of the Constitution assume the States' continued existence and active participation in the fundamental processes of governance.").

Dkt. 176 at 22.

I am sympathetic to Plaintiffs' argument that "[r]eturning to state courts would erase years of effort and return a near-trial-ready case to a disorganized infancy." Dkt. 175 at 10. I have no doubt that Plaintiffs are correct in their assessment. But my task is not to select the most convenient forum for the parties to litigate their dispute. I am "duty-bound" to examine whether subject-matter jurisdiction exists and I may not proceed where it is apparent that jurisdiction does not exist. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir.

2004); *see also Wullschleger*, 604 U.S. at 26 ("If the complaint presents no federal question, a federal court may not hear the suit."). It is apparent that jurisdiction does not exist here.

* * *

In sum, Plaintiffs' only ripe claims are their claims under article 1, § 17 of the Texas Constitution (Count 1) and their state common law cause of action seeking just compensation for violation of the Fifth Amendment (Count 6). Although Count 6 implicates the federal Takings Clause, the cause of action is created by state law. Plaintiffs' claim for procedural and substantive due process would be a source of federal question jurisdiction if they were ripe, but they are not. Accordingly, there is no ripe claim that gives rise to federal question jurisdiction.

## CONCLUSION

Construing all doubts and ambiguities in favor of remand, as I am required to do, I conclude that this court does not possess subject matter jurisdiction. I thus recommend that the State of Texas's Motion to Remand to State Court (Dkt. 174) be granted. These four consolidated cases—No. 3:20-cv-223; No. 3:20-cv-379; No. 3:21-cv-104; and No. 4:21-cv-1521—should be remanded to the state courts of Chambers, Jefferson, and Liberty Counties from which they were removed.

The parties have 14 days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 5th day of January 2026.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE